JAYASHRI SRIKANTIAH (CA Bar No. 189556)
JENNIFER STARK (CA Bar No. 267062)
IMMIGRANTS' RIGHTS CLINIC
Mills Legal Clinic at Stanford Law School
Crown Quadrangle, 559 Nathan Abbott Way
Stanford, California 94305-8610
Telephone: (650) 724-2442
Facsimile: (650) 723-4426
jsrikantiah@law.stanford.edu
jstark@law.stanford.edu

HOLLY S. COOPER (CA Bar No. 197626)
UC DAVIS SCHOOL OF LAW
IMMIGRATION LAW CLINIC
One Shields Ave. TB-30
Davis, California 95616
Telephone: (530) 754-4833
Facsimile: (530) 752-0822
hscooper@ucdavis.edu


Attorneys for Plaintiff Asian Americans
Advancing Justice – Asian Law Caucus

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### (San Francisco Division)

|  |  |
|---|---|
| ASIAN AMERICANS ADVANCING JUSTICE – ASIAN LAW CAUCUS,<br><br>          Plaintiff,<br><br>     v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY; UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>          Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. § 552** |

1. The United States Immigration and Customs Enforcement ("ICE"), the agency within the Department of Homeland Security ("DHS") that oversees the nation's immigration detention bond program (collectively, "Defendants"), is improperly withholding records pertaining to the government's immigration bond policies and practices. Plaintiff Asian Americans Advancing Justice – Asian Law Caucus ("Plaintiff" or the "Asian Law Caucus") seeks the immediate release of these records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and other appropriate relief.

2. Upon information and belief, every year Defendants grant immigration bond to tens of thousands of noncitizens and collect hundreds of millions of dollars in the process. Defendants have not publicly disclosed how much of the bond money that they collect is ultimately returned to noncitizens, or what Defendants do with the unclaimed bond money. With the Trump Administration's emphasis on expanding immigration enforcement and detention, Defendants are likely to increase their collection of bond money from detained noncitizens and their families.

3. Despite the significant number of noncitizens who are affected by Defendants' bond system and the large amount of money at issue, the public knows very little about Defendants' immigration bond program. Defendants do not make public most of their policies related to immigration bond administration. Nor do Defendants publicly release data about the program. Defendants do not disclose publicly their policies for making bond determinations, how much total bond money they collect annually, or how much unclaimed bond money they hold.

4. The Asian Law Caucus sent Defendants a FOIA request in February 2016 in order to address the lack of public knowledge and growing public concern about Defendants' immigration bond practices. The request sought records over a five-year period regarding Defendants' policies and practices governing the management of their nationwide bond system,

the number of bonds they administers in a year, and the amount of bond payments flowing in and out of DHS annually.

5. For the last year and a half, Defendants have repeatedly refused to produce the vast majority of documents responsive to the Asian Law Caucus's FOIA request. Defendants have failed to conduct reasonable searches in response to Plaintiff's FOIA request. Defendants have unlawfully withheld portions of the documents that were produced. The Asian Law Caucus has been forced to file three administrative appeals, none of which has proved successful in obtaining from Defendants the majority of responsive documents. Because there is a compelling and urgent need to inform the public about Defendants' bond policies and practices, the Asian Law Caucus is compelled to now file suit.

## JURISDICTION, VENUE & INTRADISTRICT ASSIGNMENT

6. This Court has subject matter jurisdiction of this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B). This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

7. Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B), because the Asian Law Caucus has its principal place of business in this district. Venue is also proper under 28 U.S.C. § 1391(e), because a substantial part of the events or omissions giving rise to this action occurred in this district.

8. Assignment to the San Francisco Division is proper pursuant to Civil Local Rule 3-2(c) and (d), because a substantial portion of the events giving rise to this action occurred in San Francisco County, where Plaintiff Asian Americans Advancing Justice – Asian Law Caucus is headquartered.

## PARTIES

9. Plaintiff Asian Americans Advancing Justice – Asian Law Caucus is a non-profit legal and civil rights organization serving low-income Asian and Pacific Islander communities. Immigration policy is a major concern of the nonprofit, since the vast majority of Asians and Pacific Islanders in the United States are immigrants and refugees. The Asian Law Caucus

provides free legal services to hundreds of immigrants facing deportation each year, with a specialty in deportation cases involving criminal convictions. The Asian Law Caucus also maintains a detention visitation program to provide legal representation and information for detained Asian and Pacific Islander immigrants facing deportation.

10.     Defendant United States Department of Homeland Security is a department of the executive branch of the United States government that is tasked with, among other things, administering and enforcing the federal immigration laws. Defendant Immigration and Customs Enforcement is the agency within DHS that is specifically responsible for managing the immigration detention bond program.

## FACTS

## I.     DEFENDANTS MAINTAIN AN EXTENSIVE IMMIGRATION BOND SYSTEM.

11.     As of 2015, Defendants detained more than 350,000 individuals pending resolution of their immigration proceedings. TRAC Immigration, *New Data on 637 Detention Facilities Used by ICE in FY 2015* (Apr. 12, 2016), http://trac.syr.edu/immigration/reports/422/#f1.

12.     If a noncitizen is not a threat to public safety, presents a low flight risk, and is not required to be detained, Defendants have discretion to release the detained noncitizen on: (1) bond of at least $1,500, or (2) an order of recognizance that requires the noncitizen to abide by specific release conditions but does not require the noncitizen to post bond. Gov't Accountability Office, GAO-15-26, Alternatives to Detention: Improved Data Collection and Analyses Needed to Better Assess Program Effectiveness 7 (Nov. 2014), http://www.gao.gov/assets/670/666911.pdf, attached hereto as **Exhibit A**; *see* 8 U.S.C. § 1103(a)(3); 8 C.F.R. § 103.6.

13.     Upon information and belief, Defendants generally release approximately 40,000 noncitizens per year on bond pending their immigration hearings. *See* Ex. A at 16.

14.     Just as in criminal proceedings, immigration bonds serve as formal guarantees of money by an individual or third-party obligor to ensure that a noncitizen will comply with bond

conditions. However, unlike in criminal proceedings, those noncitizens that are detained by ICE generally are not facing criminal charges.

15. Immigration bonds may be secured by cash or cash equivalent or by a surety company authorized by the Department of Treasury to post bonds on behalf of the Federal government. *See* Enforcement and Removal Operations, ICE, *Bond Management Handbook*, ERO No. 11301.1 at 13 of 81 (Aug. 19, 2014), attached hereto as **Exhibit B**.

       a. In cash bond transactions, an obligor—typically a family member of the detainee—brings a cashier's check or money order to an ICE field office and deposits the money with an ICE agent, who then arranges for the detained noncitizen's release. *Id.* at 13-14 of 81. Upon information and belief, ICE agents are responsible for providing the obligor a receipt (through a standardized Form I-305), notifying the obligor of any breach of bond or cancelling the bond if a noncitizen is ordered removed or wins his or her removal case.

       b. In surety bond transactions, a bail bondsman logs into ICE's Bonds Online System (eBonds) web application, fills out the necessary bond paperwork (including Form I-352, the immigration bond contract), and digitally signs to guarantee the bond. DHS, *Privacy Impact Assessment Update for the Bonds Online System (eBonds)* 2 (July 14, 2009) (hereinafter "eBonds Privacy Assessment"), https://www.dhs.gov/xlibrary/assets/privacy/privacy_pia_ice_ebonds.pdf, attached hereto as **Exhibit C**. Upon information and belief, ICE agents review and verify the electronic documentation and communicate with the bail bondsman to provide receipts and other information. *Id.*

16. Unlike in criminal proceedings, 90% of bonds used in the immigration system are generally cash bonds. *See* Ex. B at 14 of 81.

17. If Defendants decide to deny a given noncitizen's bond or to impose a bond amount that he or she cannot pay, the noncitizen may, in many circumstances, request a bond redetermination hearing before an immigration judge. 8 C.F.R. § 1003.19. If the immigration judge orders the individual to be released on bond or on a lower bond amount, Defendants are responsible for administering the bond process. 8 U.S.C. § 1103(a)(3): 8 C.F.R. § 103.6.

18. Upon information and belief, over the life of the bond, ICE agents are responsible for tracking compliance with the terms of release so that Defendants can take appropriate action in the event a noncitizen satisfies all terms of the bond or breaches the bond.

19. If the bond conditions are fully met, "the bond is cancelled and the cash deposit is returned to the obligor." Ex. B at 14 of 81. If the conditions are not fulfilled, "the bond is breached and ICE retains the cash deposit." *Id*.

20. Defendants have specifically stated that one benefit of their bond program is that, "by statute, the amounts collected on breached bonds are deposited into a special fund called the Breached Bond Detention Fund (BBDF)." *Id*. at 11 of 81. Defendants claim that they are entitled to "use money deposited in the BBDF," such as "to pay for detention bed space and costs incurred in collecting amounts due on breached bonds." *Id*.

21. According to Defendants' Bond Management Handbook, in Fiscal Year 2013, Defendants collected approximately $243 million in bond payments. Ex. B at 10-11 of 81. Upon information and belief, both before and after 2013, Defendants have not publicly disclosed how many bond payments they have accepted, the total monetary value of those bonds, or how much money they have retained.

22. The Asian Law Caucus's FOIA request was designed to address the substantial and growing public concern with Defendants' immigration bond practices, including concerns about how financially hard Defendants' bond system impacts immigrant communities, concerns about unclaimed bond money that should be returned to noncitizens and their family members, and concerns that private companies—and perhaps Defendants—are profiting from the current immigration bond system, *see, e.g.*, Michael E. Miller, *This company is making millions from America's broken immigration system*, Wash. Post (Mar. 9, 2016), attached hereto as **Exhibit D**.

## II. DEFENDANTS HAVE FORMAL ENTITIES, WRITTEN POLICIES, AND NUMEROUS RECORDS AND COMMUNICATIONS THAT FACILITATE THE ADMINISTRATION OF THE NATIONWIDE IMMIGRATION BOND SYSTEM.

23. Upon information and belief, Defendants have at least three different entities within ICE that are directly involved with immigration bond management. *See* Ex. B at 11 of 81.

5

a. ICE Enforcement and Removal Operations, one of ICE's constituent units, is charged with identifying, apprehending, and detaining allegedly removable noncitizens. Upon information and belief, Enforcement and Removal Operations also administers immigration bonds from the beginning of the bond process, including determining whether a person is eligible for bond, to its conclusion, including reimbursing cancelled bonds. ICE Enforcement and Removal Operations has approximately 5,700 deportation officers at 24 field offices across the country. ICE, *Enforcement and Removal Operations*, https://www.ice.gov/ero (follow "Leadership" hyperlink).

b. ICE's Bond Management Unit "supports field operations by providing guidance related to immigration bond management to achieve uniformity in bond processes and procedures." *See* Ex. B at 11 of 81.

c. Upon information and belief, part of the Office of Financial Management also "oversee[s] the financial aspects of bonds, such as refunding cash deposits on canceled bonds, issuing invoices for breached surety bonds, and issuing interest payments on breached or canceled cash bonds." *Id.*

d. In addition, attorneys from the Office of the Principal Legal Advisor "support all three of these entities by providing legal advice in the performance of their functions." *Id.*

24. Upon information and belief, to ensure coordination across offices and to guide individual bond agents' discretion, Defendants have established formal policies and written guidance governing the process for administering, recording, and tracking immigration bonds, including policies as to determining whether a person is eligible for bond, setting bond amounts, tracking compliance with conditions of release, and returning bond principals to obligors. *See, e.g.*, *id.* at 12 of 81 (discussing "ICE guidance for … detailed information about making custody determinations.").

25. According to Defendants' public statements, Defendants also maintain at least four databases and modules in which ICE agents are supposed to record, among other things, bond-related financial transactions, including bond amounts, cancellations, and breaches. These

6

bond-related databases and modules include: (1) the Bond Online System (eBonds), (2) the ENFORCE Alien Removal Module, (3) the Bond Management Information System/Web Version, and (4) the Federal Financial Management System.

a.  The **Bond Online System ("eBonds")** is a web-based application used primarily by ICE and surety agents to facilitate the application for and granting of immigration bonds for detained noncitizens.  *See* eBonds Privacy Assessment, Ex. C at 1.  Using the eBonds web application, a bail bondsman registered with the U.S. Department of the Treasury may complete the relevant bond forms and send the information electronically to an ICE agent, who reviews the forms and completes the transaction.  *See* eBonds Privacy Assessment, Ex. C at 3.  Upon information and belief, eBonds collects other data including information about the bond (such as the bond date and amount), information about the noncitizen who posts bond (including name, alien number, current location, and date of birth), and information about the obligor (including name, citizenship status, address, phone, number, and Social Security Number).  *Id*. at 4.

b.  Upon information and belief, the **ENFORCE Alien Removal Module ("EARM")** is a software application that also contains information about bond amounts, dates of bond issuance, and the ICE officer who determines whether a person should be granted bond. *See* DHS, *Privacy Act Assessment Update for the Enforcement Integrated Database, ENFORCE Alien Removal Module (EARM)* 3-4 (May 20, 2011) (hereinafter "EARM Privacy Assessment"), https://www.dhs.gov/xlibrary/assets/privacy/privacy_pia_ice_eidupdate(15b).pdf, attached hereto as **Exhibit E**.

c.  The **Bond Management Information System/Web Version** is another immigration bond database used by ICE to record and maintain bonds that are posted for noncitizens in removal proceedings as well as disbursements to individuals who have posted bond.  DHS, *Privacy Act Assessment Update for the Bond Management Information System Web Version (BMIS Web)* 1 (Nov. 20, 2009) (hereinafter "BMIS Privacy Assessment"), https://www.dhs.gov/xlibrary/assets/privacy/privacy_pia_ice_bmisweb_update.pdf, attached hereto as **Exhibit F**.

d. The **Federal Financial Management System ("FFMS")** is a "web-based, core financial transaction system used to record and process financial transactions for ICE and five other DHS components." DHS, *Privacy Impact Assessment for the Federal Financial Management System* 3 (Mar. 23, 2011), https://www.dhs.gov/sites/default/files/publications/privacy_pia_26_ice_ffms.pdf, attached hereto as **Exhibit G**. ICE uses FFMS to conduct financial transactions with individuals or entities that post cash or surety bonds for the release of detained noncitizens. *Id*. at 5.

e. In addition, upon information and belief, Defendants also maintain a Bond Document Repository, which is an electronic storage for bond related documents.

26. Upon information and belief, Defendants also maintain other memoranda, guidelines, worksheets, policies, training materials, communications, and/or other records that pertain to their nationally administered immigration and bond system.

## III. PLAINTIFF SUBMITTED A FOIA REQUEST TO DEFENDANTS FOR RECORDS REGARDING THE IMMIGRATION BOND SYSTEM.

27. On February 16, 2016, the Asian Law Caucus filed a request for records pursuant to the Freedom of Information Act, 5 U.S.C. §552, pertaining to Defendants' immigration bond system, policies, and practices over a five-year period (2010-2015). A copy of this request is attached hereto as **Exhibit H**, and is incorporated by reference.

28. Plaintiff's FOIA request sought information about Defendants' policies and practices related to the use of bonds, including determinations of bond amounts, the number of bond denials, the amount and number of bonds posted, the amount and number of bonds breached, the amount and number of bonds cancelled, and the amounts and receivers of unclaimed bond money. *Id*. at 1-5.

29. Plaintiff specifically sought, *inter alia*, records created or dated in Fiscal Years 2010-2015 pertaining to: (1) the number of persons granted and denied bond by ICE and the Executive Office for Immigration Review ("EOIR"); (2) the average bond amount set by ICE by detainee gender, nationality, and date of detainee's arrest; (3) the average bond amount set by

8

ICE for detainees represented and not represented by counsel; (4) the average bound amount set by ICE for detainees who passed Credible Fear Interviews or Reasonable Fear Interviews; and (5) the average length of detention at the time a detainee paid bond. *Id*. at 4.

30.     Plaintiff further sought "[a]ll records describing or including look-up tables, guidance, policies, or other information defining database fields and maintenance protocols for the eBONDS, Bond Management Information System, BMIS Web, and Bond Document Repository." *Id*. at 4.

31.     Plaintiff also requested, for the period of October 2014 to October 2015, the number of respondents in whose cases ICE issued a Form I-352 (an immigration bond contract), a Form I-391 (a notice of bond cancellation), a Form I-323 (a notice of bond breach), and/or a Form I-340 (a bond demand notice). *Id*. at 1-3. Additionally, Plaintiff requested records concerning the number of instances in which ICE failed to secure delivery of one of these forms due to a change of address, and any guidelines ICE agents use to determine the delivery method and how to proceed if delivery is not completed. Ex. H at 5.

32.     Plaintiff also requested records containing guidance, policies, or communications regarding how ICE agents make various bond determinations, including declaring that a bond should be issued, cancelled, or breached. *Id*. at 4-5.

33.     Plaintiff further requested records concerning how ICE should and/or does notify bond obligors that an immigration bond has been cancelled, forfeited, or breached. *Id*. at 5.

34.     The Asian Law Caucus based its FOIA request on disclosures made within ICE's Privacy Impact Assessments for the eBonds, BMIS, BMIS Web, and Enforce databases, among others, as well as the limited public documents in which Defendants describe the bond information they retain in their electronic databases and elsewhere.

35.     The Asian Law Caucus also sought a waiver of fees associated with its request. *Id*. at 6.

**IV.    DEFENDANTS FAILED TO MAKE A TIMELY DETERMINATION OF PLAINTIFF'S FOIA REQUEST, FAILED TO CONDUCT A REASONABLE SEARCH, AND WITHHELD DOCUMENTS IMPROPERLY.**

**A.    Defendants Failed to Make a Timely FOIA Determination.**

36.    Despite acknowledging receipt of Plaintiff's FOIA request on February 19, 2016, Defendants failed to respond to the Asian Law Caucus's request within the twenty days afforded under the FOIA statute, 5 U.S.C. §552(a)(6)(A)(i), or the additional 10 days provided for "unusual circumstance," 5 U.S.C. §552(a)(6)(B), 28 C.F.R 16.5(c).

37.    In a letter dated April 18, 2016, the Asian Law Caucus appealed Defendants' constructive denial of the request.  A copy of this letter is attached as **Exhibit I.**

38.    On May 3, 2016, Defendants finally responded to Plaintiff's FOIA.  *See* Ex. B at 1-2.

39.    In a letter dated May 18, 2016, Defendants acknowledged that they received Plaintiff's April 18, 2016 appeal letter on April 21, 2016, and administratively closed the appeal through their response to the Request on May 3, 2016.  This letter is attached as **Exhibit J.**

40.    Defendants have never responded to Plaintiff's fee waiver request and have never charged Plaintiff fees for the records because the records produced have not exceeded the $14 minimum.  *See, e.g.*, Ex. B at 2 (citing 6 C.F.R. § 5.11(d)(4)).

**B.    Defendants Failed to Conduct a Reasonable Search for Documents.**

41.    Defendants' May 3, 2017 response to Plaintiff's FOIA revealed an utter failure to conduct a reasonable search for documents and an improper reliance on certain FOIA exemptions.  *See* Ex. B.

42.    Despite the Asian Law Caucus's thorough request for records pertaining to Defendants' nationwide bond policies and practices and Defendants' numerous databases and sub-agencies, Defendants stated that their "search of the ICE Office of Enforcement and Removal Operations (ERO) and Office of Detention Policy and Planning (ODPP)" produced only "81 pages that [we]re responsive to [Plaintiff's] request."  *Id.* at 1.  These pages consisted of only three documents: (1) instructions for completing Form I-352, which is publicly available;

(2) a blank copy of Form I-352, which is publicly available; and (3) a copy of the ERO Bond Management Handbook for ERO Field Office Personnel, Ex. B. at 6-81, much of which is also publicly available.

43.     Defendants' production failed to include records responsive to the overwhelming majority of the Asian Law Caucus's FOIA request.  For example, Defendants' initial FOIA response was entirely devoid of correspondence, communication, memoranda, and policy documents, even though the Bond Management Handbook that they did produce specifically references records that contain this information, such as "[d]etailed instructions for posting cash bonds and handling the cash," *id*. at 15 of 81, "[d]etailed instructions for issuing surety bonds," *id*., "procedures for  increasing and decreasing the amount of a cash bond," *id*. at 16 of 81, and "[d]etailed instructions for issuing a cancelation notice (Form I-391), *id*. at 17 of 81.  Defendants also refused to produce the bond data maintained in their various databases and modules, even though according to Privacy Impact Assessments for the eBONDS, BMIS, BMIS Web, EID, EARM, and ENFORCE databases, Defendants maintain information about every one of the thousands of noncitizens for whom ICE grants bond.  *See* Exs. C, E, F & G.  Upon information and belief, Defendants should maintain responsive records pertaining to the look-up tables, guidance, policies, manuals, and other records relating to its use of these databases and modules. Additionally, Defendants largely failed to produce records relating to the amount of money flowing through Defendants' bond system.

44.     Upon information and belief, Defendants wholly failed to undertake a search in response to Plaintiff's FOIA request that was reasonably calculated to uncover all relevant documents.

### C.     Defendants Relied Improperly on FOIA Exemptions to Withhold Documents.

45.     Although the majority of the documents that Defendants did produce were already publicly available in whole or in part, Defendants asserted that "portions of 81 pages w[ould] be

withheld pursuant to exemptions of the FOIA," including FOIA Exemption 6, 7(C), and 7(E). Ex. B at 1-2 (citing 5 U.S.C. §§552(b)(6), (b)(7)(C), and (b)(7)(E)).

46.     Defendants first asserted that they would withhold responsive records due to Exemption 6, 5 U.S.C. § 552(b)(6), which applies to "personnel and medical files and similar files the release of which would cause a clearly unwarranted invasion of personal privacy."  *Id.*

47.     Upon information and belief, Exemption 6 does not in fact apply to the withheld information because the information does not actually constitute "personnel or medical files or similar files."  Upon information and belief, Exemption 6 also does not apply to the withheld information because the privacy interests at issue are not "more palpable than mere possibilities," *Dep't of Air Force v. Rose*, 425 U.S. 352, 380 n.19 (1976), and are not "substantial," *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1229 (D.C. Cir. 2008).

48.     Defendants also asserted that they would withhold responsive records due to Exemption 7(c), 5 U.S.C. § 552(b)(7)(C), which protects "records or information compiled for law enforcement purposes" that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  *Id.*, *see* Ex. B at 1.  Defendants' letter stated that this exemption "takes particular note of the strong interest of individuals … in not being associated with alleged criminal activity" and that, "[b]ased upon the traditional recognition of strong privacy interest in law enforcement records, categorical withholding of information that identifies third parties in law enforcement records is ordinarily appropriate."  Ex. B at 1.

49.     Exemption 7(C) does not apply to the withheld information because, upon information and belief, the withheld information identifies high-level federal employees who have a weaker claim to non-disclosure based on privacy interests than lower-level federal employees.  *See, e.g.*, *Perlman v. Dep't of Justice*, 312 F.3d 100, 107 (2d Cir. 2002), *vacated*, 541 U.S. 970 (2004), *aff'd*, 380 F.3d 110 (2d Cir. 2004); *see also Stern v. FBI*, 737 F.2d 84, 92 (D.C. Cir. 1984) (opining that the status of federal employees "diminished their privacy interests … because of the corresponding public interest in knowing how public employees are performing their jobs," and "agree[ing] that the level of responsibility held by a federal

12

employee" is an appropriate consideration "for determining the extent of the public's interest in knowing the identity" of that employee). For example, Defendants redacted the name of the ICE Enforcement and Removal Operations Assistant Director of Custody Management, whose profile appears publicly on ICE's website. Ex. B at 9 of 81; *see* ICE, *Enforcement and Removal Operations Custody Management*, https://www.ice.gov/custody-management (follow "Leadership" hyperlink).

50. Even if Exemptions 6 and 7(C) applied to protect a cognizable privacy interest, that interest is outweighed by the public interest in the information and the need "to open agency action to the light of public scrutiny." *Rose*, 425 U.S. at 372 (citation omitted). Upon information and belief, the information that Defendants withheld under Exemptions 6 and 7(C) can also be cleansed of personally identifiable information.

51. Defendants also withheld portions of the training manual they produced pursuant to Exemption 7(E). 5 U.S.C. § 552(b)(7)(E). Defendants claimed to apply this exemption to prevent the disclosure of law enforcement prosecution and investigation "techniques and/or procedures" that "are not well-known to the public." Ex. B at 2. Defendants also claimed to apply Exemption 7(E) to prevent the disclosure of "guidelines for law enforcement investigations or prosecutions," the release of which could risk circumvention of the law. *Id*. Defendants redacted links to websites that appear to contain "detailed instructions" for issuing a bond cancellation notice, Ex. B at 19 of 81; procedures for increasing or decreasing the amount of a cash bond, *id*. at 16 of 81; instructions for issuing surety bonds, *id*. at 15 of 81; and instructions for processing cash bond deposits, *id*. at 48-50. Defendants also redacted the link to a website that informs noncitizens of the status of their cases, *id*. at 74 of 81.

52. Upon information and belief, disclosure of the information Defendants withheld under Exemption 7(E) does not risk circumvention of the law because the information concerns processes that are controlled by ICE agents and cannot be circumvented by the public.

53. Upon information and belief, the information Defendants withheld under Exemption 7(E) also is not exempt because it falls within the scope of 5 U.S.C. §552(a)(2),

13

"administrative staff manuals and instructions to staff," information which FOIA requires agencies to "make available for public inspection."

## V.    PLAINTIFF EXHAUSTED ALL AVAILABLE ADMINISTRATIVE REMEDIES.

### A.    Plaintiff Filed an Administrative Appeal with the ICE Office of Principal Legal Advisor.

54.    Because Defendants failed to produce records responsive to the overwhelming majority of Plaintiff's FOIA request, and improperly applied FOIA Exemptions 6, 7(C), and 7(E) to withhold portions of the response, the Asian Law Caucus appealed Defendants' May 3, 2016 FOIA response on June 30, 2016.  A copy of this appeal letter is attached as **Exhibit K.**

55.    Defendants subsequently acknowledged receipt of Plaintiff's June 30, 2016 appeal.  A copy of this acknowledgement letter is attached as **Exhibit L.**

56.    Defendants then responded to the Asian Law Caucus's appeal in a letter dated July 26, 2016.  A copy of this letter is attached as **Exhibit M**.  In this letter, Defendants affirmed their withholdings, claiming that Exemptions 6, 7(C), and 7(E) were applied to protect "the privacy interests of individuals in the records" and to prevent the release of information that would "disclose law enforcement techniques and/or procedures" that are not well known to the public and could risk circumvention of the law.  *Id*. at 1-2.

57.    The letter also stated that the June 30, 2016 appeal had been remanded "to ICE FOIA for processing and re-tasking," and that "ICE has determined that a new search(s) or modifications to the existing search(s) could be made."  *Id.* at 2.

58.    No information was received from Defendants about the new search for weeks. The Asian Law Caucus notified Defendants of the delay in an e-mail dated September 7, 2016. A copy of this e-mail is attached as **Exhibit N**.  At this point, over six months had passed since Plaintiff's FOIA request was sent to ICE.  The Asian Law Caucus asked about the status of the new search and requested ICE to "complete its search as soon as possible" because "the public has an urgent and ongoing need to know about ICE bond policies, which affect thousands of individuals and likely millions of dollars in bond amounts."  *Id*. at 1.

14

59. On September 8, 2016, Defendants sent the Asian Law Caucus an e-mail stating that the appeal "has been tasked to the appropriate agencies within ICE to conduct searches for potentially responsive documents." This e-mail is attached as **Exhibit O**.

**B.      Defendants Failed to Perform an Adequate Search For and Produce Documents Responsive to Plaintiff's FOIA Request.**

60. Defendants did not respond to the Asian Law Caucus's June 30, 2016 appeal until November 29, 2016. The response letter is attached as **Exhibit P**. In this response, Defendants produced only seven pages of blank copies of Forms I-352, I-323, and I-391, and instructions for completing Form I-352. Ex. P at 1-7. All of these documents, except for Form I-391, are publicly available. *See* ICE Form I-323 and Instructions, https://www.ice.gov/sites/default/files/documents/Document/2016/i352.pdf ; ICE Notice-Immigration Bond Breached, https://www.usimmigrationbonds.com/wp-content/uploads/2014/03/ICE-Form-I-323.pdf.

61. Defendants' response also contained a single-page spreadsheet showing the total number and value of cash and surety bonds posted, breached, and cancelled in Fiscal Year 2015. Ex. P at 8. This document indicated that, in Fiscal Year 2015, Defendants posted 37,258 bonds with a value of $277,278,275. *Id.* More than 85% of these bonds were cash bonds worth a total of $233,535,125. *Id.* Approximately 8,566 of these bonds were breached, totaling more than $42 million that went to Defendants. *Id.* Defendants have failed to account for approximately 3,774 of the bonds posted during this year that were neither breached nor cancelled. *Id.*

62. Defendants' second production again failed to include records responsive to the overwhelming majority of Plaintiff's FOIA request. Defendants' search was again wholly inadequate. For example, Defendants' production did not include the underlying individual data used to calculate the total bond amounts and values or related bond data maintained in Defendants' electronic databases and modules. Defendants' production was also limited to Fiscal Year 2015, even though the Asian Law Caucus requested data from Fiscal Years 2010-2015. Moreover, Defendants failed to produce records relating to the policies and guidelines

15

ICE agents follow when managing the bond system. Defendants produced very few documents related to their communications and policies pertaining to management of their multi-million dollar nationwide bond system.

63. Additionally, Defendants withheld under FOIA Exemptions 6 and 7(C), 5 U.S.C. §§552(b)(6) and (b)(7)(C), "the names, e-mail addresses, and phone numbers of DHS employees" contained in the single page of bond data it produced in an excel spreadsheet. Ex. P at 1-2.

64. Upon information and belief, Exemptions 6 and 7(C) do not apply to the withheld information in the excel spreadsheet because this document does not constitute "personnel or medical files or similar files" or "law enforcement records or information."

65. Upon information and belief, Exemption 6 also does not apply to the withheld information because the privacy interests at issue are not "more palpable than mere possibilities," *Dep't of Air Force*, 425 U.S. at 380 n.19, or "substantial," *Multi Ag Media LLC*, 515 F.3d at 1229.

66. Upon information and belief, the DHS employees identified in conjunction with the Fiscal Year 2015 aggregate bond data produced are high-level federal employees. Exemption 7(C) does not apply to the withheld information because high-level federal employees have a weaker claim to non-disclosure based on privacy interests than lower-level federal employees. *See, e.g.*, *Perlman*, 312 F.3d at 107; *Stern*, 737 F.2d at 92.

67. Even if Exemptions 6 and 7(C) applied to protect a cognizable privacy interest, that interest is outweighed by the public interest in the information and the need "to open agency action to the light of public scrutiny." *Rose*, 425 U.S. at 372.

**C.      Plaintiff Filed Another Administrative Appeal with the ICE Office of Principal Legal Advisor.**

68. The Asian Law Caucus appealed Defendants' inadequate determination and final response (dated November 29, 2016) in an e-mail dated February 21, 2017, more than one year after the initial FOIA request was sent. This letter is attached as **Exhibit Q**. The letter notes that

16

Defendants failed to respond to the majority of the request and failed to release relevant information that public records indicate Defendants maintain in their databases. *Id.* at 1. The Asian Law Caucus also appealed Defendants' application of FOIA Exemptions 5 U.S.C. §§552(b)(6) and (b)(7)(C), since no data related to specific cases or investigations was produced in the records. *Id.*

69.     In a letter dated March 23, 2017, Defendants stated that they received Plaintiff's appeal letter on February 22, 2017. This letter is attached as **Exhibit R**. Defendants stated that the withholdings under FOIA Exemptions 5 U.S.C. §§552(b)(6) and (b)(7)(C) were properly applied to maintain the privacy of individuals named in ICE records. *Id.* at 1. Defendants also stated, again, that "new search(s), or modifications to existing search(s), could be made" and remanded the appeal to the ICE FOIA Office for further processing and searching. *Id.* at 2.

**D.     DEFENDANTS AGAIN FAILED TO PERFORM A REASONABLE SEARCH AND WITHHELD DOCUMENTS IMPROPERLY IN THEIR FINAL RESPONSE TO PLAINTIFF'S FOIA APPEAL.**

70.     On May 23, 2017, Defendants sent a final response to Plaintiff's FOIA appeal. This letter, which is attached as **Exhibit S**, contained only 117 pages of documents, and again claimed withholdings pursuant to Exemptions 6, 7(C), and 7(E).

71.     Defendants' third production failed yet again to include records responsive to the overwhelming majority of the Asian Law Caucus's FOIA request. Defendants again failed to conduct a reasonable search for documents responsive to Plaintiff's FOIA request that was reasonably calculated to uncover all relevant documents. For instance, Defendants included a memorandum regarding immigration bond policies and procedures dated April 8, 2008, which referenced several other policies and procedures that are directly responsive to Plaintiff's FOIA request, yet have not been produced to the Asian Law Caucus. Among those documents that were referenced but not produced are the following: (1) Bond Posting Hours and Release Policies and Procedures, December 18, 2006, Ex. S at 82 of 112; (2) Service of Notices Relating to Immigration Delivery Bonds (11/05/2007), *id.* at 91 of 112; (3) *Declarations of Breach of Delivery Bonds* memorandum, dated April 6, 2005, *id.* at 93 of 112; (4) Bond Backlog Reduction

Project memorandum 10/18/06, *id*. at 94 of 112; (5) Final Breached Bond Procedure, dated Oct. 17, 2006, *id*. at 96 of 112; (6) Reversing Declarations of Breach of Delivery Bond, June 19, 2006, *id*. at 101 of 112; (7) *Bond Management Information System: Instructions for Field Users with View-Only Access*, Ex. S at 104 of 112; (8) INS Fee Collection Procedures, *id*. at 83 of 112; (9) Director's memorandum entitled *Confiscation and Return of Original Documents*, dated July 14, 2006, *id*.; (10) *DACS User Manual*, *id*. at 85 of 112; (11) *Accepting Delivery of Final Order Aliens*, dated May 1, 2003, *id*. at 93 of 112; and (12) Supplemental Guidance to Accepting Final Order Aliens memorandum, May 12, 2003, *id*.

72.     Defendants' memorandum regarding immigration bond policies and procedures dated April 8, 2008, also states that the Burlington Financial Center is "responsible for tracking the financial aspects of bonds" and "maintains the bond financial receipts and bond financial data," Ex. S at 103 of 112, though Defendants failed to produce any of this data (or the processes by which the Burlington Financial Center collects it from the numerous ICE field offices) to the Asian Law Caucus.

73.     In addition, Defendants' immigration bond policies and procedures memo stated specifically that the "memorandum [wa]s not inclusive and d[id] not provide details on each aspect of the positing and management of an immigration bond," and that "[t]he Bond Management Unit (BMU) w[ould] continue to provide updates, clarification, and guidance." *Id*. at 107 of 112. Defendants' FOIA response has failed to include any "updates, clarification, and guidance," from the BMU since that time, despite the fact that this information was specifically requested by the Asian Law Caucus.

74.     Further, upon information and belief, Defendants improperly withheld significant information on the basis of FOIA Exemptions (b)(6), (b)(7)(C), and (b)(7)(E) in their final May 23, 2017 production. For example, Defendants again sought to withhold information based on Exemption 7(C), even though this exemption does not apply because, upon information and belief, the withheld information identifies the names of high-level federal employees—such as the DHS Secretary, ICE Acting Director, and ICE Deputy Principal Legal Advisor—who have a

18

weaker claim to non-disclosure based on privacy interests than lower-level federal employees. *See, e.g.*, Ex. S at 12, 66, 75, 79; *see Perlman*, 312 F.3d at 107. Defendants also improperly withheld information for the reasons set forth in paragraphs 46-53, and 62-67, *supra*.

75. More than a year-and-a-half has passed since the Asian Law Caucus sent its FOIA request to Defendants. *See* Ex. H. To date, Defendants still have not adequately searched for and produced information responsive to several aspects of the Asian Law Caucus's FOIA request including, but not limited to:

    a. The number of respondents in whose cases, during FY 2014-2015, Defendants previously issued a Form I-352, I-323, I-340, I-391;

    b. Records describing or including information defining and maintaining protocols for the databases used by Defendants, including eBONDS, Bond Management Information System (BMIS), BMISWeb, and the Bond Document Repository;

    c. Records documenting or describing average, total, and/or tallied bond amounts by detainee, region, field office, and/or nationwide for the period of FY 2010-2014;

    d. Records containing aggregate statistical reports or data regarding a number of different categories, such as the number of persons denied bond by ICE and EOIR each month, the average bond amount set by ICE by detainee's nationality, gender, date of arrest; the average length of detention at the time the detainee paid bond, the average bond amount set by ICE for detainees represented and unrepresented by counsel, and the average bond amount set by ICE for detainees who have passed Credible Fear or Reasonable Fear Interviews; and

    e. The number of notices sent by Defendants involving Forms I-352, I-391, I-323, and I-340, and the number of these notices in which Defendants failed to secure delivery due to a change in address.

76. The Asian Law Caucus has exhausted all administrative remedies in an effort to obtain the records requested. Despite Plaintiff's initial request and three appeals, Defendants have provided less than 250 pages of information, including six pages of spreadsheets with

19

limited bond data, bond forms that were already available publicly, and only a handful of policies, procedures, and training manuals.  Defendants have not provided a single record pertaining to the fields or data in their multiple bond-related databases, and have not provided several communications, memoranda, policies and procedures that, upon information and belief, they maintain and are directly responsive to the Asian Law Caucus's FOIA request.

77.     The Asian Law Caucus has an urgent and ongoing need to know about Defendants' bond policies and practices, which affect thousands of individuals and likely amount to hundreds of millions of dollars in annual bond payments.

## FIRST CAUSE OF ACTION

### (Freedom of Information Act—Failure to Comply with Statutory Deadlines)

1.     Plaintiff repeats and incorporates by reference all allegations contained in paragraphs 1 through 77 as though set forth fully herein.

2.     By letter dated February 16, 2016, the Asian Law Caucus, through counsel, submitted a request to Defendants pursuant to the Freedom of Information Act.

3.     Defendants have a statutory obligation to determine whether they will comply with the FOIA request and to communicate that determination to the Asian Law Caucus.  Despite acknowledging receipt of Plaintiff's FOIA request on February 19, 2016, Defendants failed to respond to Plaintiff's request within the twenty days afforded under the FOIA statute, 5 U.S.C. §552(a)(6)(A)(i), or the additional 10 days provided for "unusual circumstance," 5 U.S.C. §552(a)(6)(B), 28 C.F.R 16.5(c).

4.     Defendants' failure to make such a timely determination and/or to communicate it to Plaintiff violates FOIA and Defendants' own regulations.  5 U.S.C. §§ 552(a)(6)(A)(i), (a)(6)(B); 28 C.F.R. § 16.5(c).

5.     The Asian Law Caucus has exhausted all required and available administrative remedies.

1    6.    The Asian Law Caucus has a legal right under the Freedom of Information Act to

2    obtain the information it seeks in a timely fashion.

3

4                              **SECOND CAUSE OF ACTION**

5            **(Freedom of Information Act—Failure to Conduct a Reasonable Search)**

6    7.    Plaintiff repeats and incorporates by reference all allegations contained in

7    paragraphs 1 through 77 as though set forth fully herein.

8    8.    Plaintiff's February 16, 2016 request for records pursuant to the Freedom of

9    Information Act, 5 U.S.C. §552, sought sixteen different categories of agency records pertaining

10   to Defendants' immigration bond system and included, among other things, requests for database

11   information, memoranda, worksheets, written policies, procedures, and practices.  These requests

12   covered a wide range of topics including, *inter alia*, determinations of bond amounts, the number

13   of bond denials, the amount and number of bonds posted, the amount and number of bonds

14   breached, the amount and number of bonds cancelled, and the amounts and receivers of

15   unclaimed bond money.

16   9.    According to Defendants' Privacy Act statements and other available public

17   records, Defendants maintains records that are responsive to the Asian Law Caucus's FOIA

18   request.

19   10.   Defendants initially responded by producing only 81 pages of documents, which

20   consisted primarily of the Bond Management Handbook, and failed to respond to the

21   overwhelming majority of Plaintiff's FOIA request.  Defendants' subsequent 8-page response

22   consisted primarily of publicly available ICE forms and one page of limited information about

23   Fiscal Year 2015, even though the Asian Law Caucus's request asked for far more information

24   that, upon information and belief, is maintained in Defendants' databases.  Defendants' final

25   production consisted of a handful of policies and memoranda, yet lacked significant numbers of

26   responsive documents, including documents that were specifically referenced within the few

27   records that Defendants did provide.

28

11. Upon information and belief, Defendants have failed to undertake a search reasonably calculated to uncover all relevant documents that are responsive to Plaintiff's FOIA request.

12. Defendants' failure to make a reasonable effort to search for records sought by Plaintiff's request violates FOIA, 5 U.S.C. § 552(a)(3), and corresponding regulations.

13. The Asian Law Caucus has exhausted all required and available administrative remedies.

14. Plaintiff has a legal right under FOIA to obtain the information it seeks, and there is no legal basis for the denial by Defendants of said right.

## THIRD CAUSE OF ACTION

### (Freedom of Information Act—Improper Withholding of Agency Records Pursuant to FOIA Exemption 6)

15. Plaintiff repeats and incorporates by reference all allegations contained in paragraphs 1 through 77 as though set forth fully herein.

16. Defendants failed to produce the vast majority of records in response to Plaintiff's FOIA request.

17. Rather than producing the agency records as required, Defendants improperly withheld numerous records pursuant to FOIA Exemption 6 for "personnel and medical files and similar files," 5 U.S.C. § 552(b)(6). Specifically, Defendants invoked FOIA Exemption 6 as a basis for withholding records that they produced in connection with correspondence dated May 3, 2016, November 29, 2016, and May 23, 2017.

18. Exemption 6 does not apply because the withheld information does not qualify as "personnel or medical files or similar files."

19. Exemption 6 also does not apply to some or all of the withheld information because the privacy interests are not cognizable and/or they do not outweigh the public interest in disclosure and the purpose of FOIA.

20.     The information that Defendants withheld under Exemption 6 can also be cleansed of any personally identifiable information, if its disclosure poses a cognizable privacy interest that warrants withholding.

21.     Defendants' failure to produce agency records responsive to Plaintiff's FOIA request violates their statutory obligation to make such records "promptly" available to the public.  5 U.S.C. §552(a).

22.     Plaintiff has exhausted all required and available administrative remedies.

23.     Plaintiff has a legal right under FOIA to obtain the information it seeks, and there is no legal basis for the denial by Defendants of said right.

### FOURTH CAUSE OF ACTION

**(Freedom of Information Act—Improper Withholding of Agency Records Pursuant to FOIA Exemption 7(C))**

24.     Plaintiff repeats and incorporates by reference all allegations contained in paragraphs 1 through 77 as though set forth fully herein.

25.     Defendants failed to produce the vast majority of records in response to Plaintiff's FOIA request.

26.     Rather than producing the agency records as required, Defendants improperly withheld numerous agency records pursuant to FOIA Exemption 7(C) for "law enforcement records or information." 5 U.S.C. § 552(b)(7)(C).  Specifically, Defendants invoked FOIA Exemption 7(C) as a basis for withholding records that it produced in connection with correspondence dated May 3, 2016, November 29, 2016, and May 23, 2017.

27.     Exemption 7(C) does not apply because the withheld information does not qualify as "law enforcement records or information."

28.     Exemptions 7(C) does not apply to some or all of the withheld information because the privacy interests are not cognizable and/or they do not outweigh the public interest in disclosure and the purpose of FOIA.

29.     The information that Defendants withheld under Exempt 7(C) can be cleansed of any personally identifiable information, if its disclosure poses a cognizable privacy interest that warrants withholding.

30.     Defendants' failure to produce agency records responsive to Plaintiff's FOIA request violates their statutory obligation to make such records "promptly" available to the public.  5 U.S.C. §552(a).

31.     The Asian Law Caucus has exhausted all required and available administrative remedies.

32.     Plaintiff has a legal right under FOIA to obtain the information it seeks, and there is no legal basis for the denial by Defendants of said right.

## FIFTH CAUSE OF ACTION

**(Freedom of Information Act—Improper Withholding of Agency Records Pursuant to FOIA Exemption 7(E))**

33.     Plaintiff repeats and incorporates by reference all allegations contained in paragraphs 1 through 77 as though set forth fully herein.

34.     Defendants failed to produce the vast majority of records in response to Plaintiff's FOIA request.

35.     Rather than producing the agency records as required, Defendants improperly withheld agency records pursuant to FOIA Exemption 7(E) for "law enforcement records or information" which "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).  Specifically, Defendants invoked FOIA Exemption 7(E) as a basis for withholding records that it produced in connection with correspondence dated May 3, 2016, and May 23, 2017.

36.     Exemption 7(E) does not apply because the withheld information does not qualify as "law enforcement records or information."

24

37. Exemption 7(E) does not apply because disclosure of the information cannot reasonably be expected to lead to circumvention of the law and/or the withheld information falls under the scope of 5 U.S.C. §552(a)(2), "administrative staff manuals and instructions to staff," documents which are not exempt from disclosure.

38. The information that Defendants withheld under Exempt 7(E) can be cleansed of any personally identifiable information, if its disclosure poses a cognizable privacy interest that warrants withholding.

39. Defendants' failure to produce agency records responsive to Plaintiff's FOIA request violates their statutory obligation to make such records "promptly" available to the public. 5 U.S.C. §552(a).

40. Plaintiff has exhausted all required and available administrative remedies.

41. Plaintiff has a legal right under FOIA to obtain the information it seeks, and there is no legal basis for the denial by Defendants of said right.

## SIXTH CAUSE OF ACTION

### (Freedom of Information Act—Failure to Grant Fee Waiver)

42. Plaintiff repeats and incorporates by reference all allegations contained in paragraphs 1 through 77 as though set forth fully herein.

43. Defendants have failed to rule on Plaintiff's fee waiver request from February 16, 2016.

44. Defendants' failure to rule on Plaintiff's request for a fee waiver violates its statutory obligation to do so. 5 U.S.C. § 552(a)(4)(A)(iii).

45. Upon information and belief, Defendants' failure to require that the Asian Law Caucus pay fees is indicative of the fact that they acknowledged that no fees are owed in this case.

46. The Asian Law Caucus has exhausted all required and available administrative remedies.

25

47. The Asian Law Caucus is entitled as a matter of law to a waiver of fees associated with searching, duplicating, and making available for review the records requested.

48. Plaintiff is further entitled to a fee waiver because of Defendants' failure to comply with FOIA. 5 U.S.C. §552(a)(4)(A)(viii).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court:

A. Declare, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, that Defendants violated the Freedom of Information Act, 5 U.S.C. § 552;

B. Order Defendants to produce the requested records in their entirety, to disclose the requested records in their entirety, and to make copies available to Plaintiff in their entirety within 30 days;

C. Order Defendants to prepare an index pursuant to *Vaughn v. Rosen (I)*, 484 F.2d 820 (D.C. Cir. 1973), *cert denied*, 415 U.S. 977 (1974), for any documents they seek to continue to withhold under a FOIA exemption;

D. Order Defendants to grant a fee waiver in connection with this matter;

E. Award Plaintiff the cost and reasonable attorney's fees incurred in this action pursuant to 5 U.S.C. §552(a)(4)(E); and

F. Order such other relief that the Court deems just and appropriate.

Respectfully submitted,

DATED: August 2, 2017

IMMIGRANTS' RIGHTS CLINIC
Mills Legal Clinic at Stanford Law School

By: */s/ Jennifer Stark*
Jennifer Stark

JAYASHRI SRIKANTIAH
IMMIGRANTS' RIGHTS CLINIC
MILLS LEGAL CLINIC
STANFORD LAW SCHOOL

HOLLY COOPER
IMMIGRATION LAW CLINIC
UC DAVIS SCHOOL OF LAW

26