# EXHIBIT  S

U.S. Department of Homeland Security
500 12ᵗʰ Street, SW, Stop 5009
Washington, DC 20536-5009



**U.S. Immigration
and Customs
Enforcement**

May 23, 2017

Holly Cooper
UC Davis Law School
One Shields Avenue
Suite TB 30
Davis, CA 95616

RE:   **ICE FOIA Case Number 2016-ICFO-21111**
      **ICE FOIA Case Number 2017-ICAP-00240**

Dear Ms. Cooper:

This letter is the final response to your Freedom of Information Act (FOIA) Appeal on remand to
the U.S. Department of Homeland Security (DHS), Immigration and Customs Enforcement
(ICE) where you appealed the adverse determination of your request dated February 22, 2017.
You have requested information pertaining to Bond Policies and Records (see attached request
for 16 specific details).

We have considered your request under the both the FOIA, 5 U.S.C. § 552, and the Privacy Act
Privacy Act, 5 U.S.C. § 552a. After review of the documents, I have determined that portions of
documents will be withheld pursuant to Exemptions (b)(6), (b)(7)(C) and (b)(7)(E) of the FOIA
as described below.

**FOIA Exemption 6** exempts from disclosure personnel or medical files and similar files the
release of which would cause a clearly unwarranted invasion of personal privacy. This requires a
balancing of the public's right to disclosure against the individual's right privacy. The types of
documents and/or information that we have withheld may consist of social security numbers,
home addresses, dates of birth, or various other documents and/or information belonging to a
third party that are considered personal. The privacy interests of the individuals in the records
you have requested outweigh any minimal public interest in disclosure of the information. Any
private interest you may have in that information does not factor into the aforementioned
balancing test.

**FOIA Exemption 7(C)** protects records or information compiled for law enforcement purposes
that could reasonably be expected to constitute an unwarranted invasion of personal privacy.
This exemption takes particular note of the strong interests of individuals, whether they are
suspects, witnesses, or investigators, in not being unwarrantably associated with alleged criminal
activity. That interest extends to persons who are not only the subjects of the investigation, but
those who may have their privacy invaded by having their identities and information about them

revealed in connection with an investigation. Based upon the traditional recognition of strong privacy interest in law enforcement records, categorical withholding of information that identifies third parties in law enforcement records is ordinarily appropriate. As such, I have determined that the privacy interest in the identities of individuals in the records you have requested clearly outweigh any minimal public interest in disclosure of the information. Please note that any private interest you may have in that information does not factor into this determination.

**Exemption 7(E)** protects records compiled for law enforcement purposes, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law. I determined that disclosure of law enforcement systems checks could reasonably be expected to risk circumvention of the law. Additionally, the techniques and procedures at issue are not well known to the public.

Provisions of the FOIA allow us to recover part of the cost of complying with your request. In this instance, because the cost is below the $14 minimum, there is no charge.[1]

If you need to contact our office about this matter, please refer to FOIA case number **2017-ICAP-00240**. This office can be reached at (866) 633-1182.

Sincerely,

Catrina M. Pavlik-Keenan
FOIA Officer

---

[1] 6 CFR § 5.11(d)(4).

4410-10

# DEPARTMENT OF HOMELAND SECURITY

## 8 CFR Part 103, 293

### [ICE No. 2258-03]

### RIN 1653-AA20

DHS Docket No. DHS-2006-xxxx

**Technical Amendments Relating to Immigration Bonds**

**AGENCY:** The Bureau of Immigration and Customs Enforcement (ICE), Department of Homeland Security (DHS).

**ACTION:** Notice of Proposed Rulemaking

**SUMMARY:** This rule proposes technical amendments to regulations relating to immigration bonds. This proposed rule would designate a central place for filing appeals or requests for reconsideration or reopening regarding Department of Homeland Security (DHS) decisions to declare breaches of immigration bonds. Instead of filing with the office that made the decision to declare a breach, for review before forwarding the appeal to the Administrative Appeals Office (AAO), this proposed rule would designate the Debt Management Center (DMC), an office within the Bureau of Immigration and Customs Enforcement (ICE) as the place to file such appeals or requests. Additionally, this proposed rule would formally incorporate Department of the Treasury rules on transferring unclaimed funds after one year from the date of cancellation of the bond to an "unclaimed moneys" account that would terminate further interest payments on the funds.

**DATES:** Comment date: Written comments must be submitted on or before [Insert date 60 days from date of publication in the FEDERAL REGISTER].

- **ADDRESSES:** You may submit comments identified by Docket Number DHS-2006-XXXX by one of the following methods:

- Mail:  Written comments may be submitted to the Regulatory Management Specialist, Bureau of Immigration and Customs Enforcement, Department of Homeland Security, 425 I Street, N.W., Room 7252, Washington, DC 20536, contact Telephone Number (202) 616-2704.  To ensure proper handling, please reference Docket No. DHS-2006-xxxx on your correspondence.  This mailing address may also be used for submitting comments on paper, disk, or CD-ROM.E-mail: USVISITregs@dhs.gov.

- Federal eRulemaking Portal: Electronic comments may be submitted to http://www.regulations.gov. Follow the instructions for submitting the comments.

Submitted comments can be inspected in person at the Bureau of Immigration and Customs Enforcement, Department of Homeland Security, 425 I Street N.W., Room 7252, Washington, DC 20536, contact Telephone Number (202) 616-2704 and on the Internet at http://www.regulations.gov.

**FOR FURTHER INFORMATION CONTACT:** (b)(6);(b)(7)(C) Policy Branch, Office of Financial Management, ICE, Department of Homeland Security, 800 K Street, NW, (b)(6);(b)(7)(C) Washington, DC 20536, telephone (202) 353- (b)(6);(b)(7)(C)

**SUPPLEMENTARY INFORMATION:**

**I. Background**

The Debt Management Center (DMC) of the Bureau of Immigration and Customs Enforcement (ICE), Department of Homeland Security (DHS), is responsible for the collection of debt owed to ICE including debt arising from declarations of bond breaches. This rule is designed to improve the process for immigration bond-related appeals to the Administrative

Appeals Office (AAO), U.S. Citizenship and Immigration Services (USCIS). It also proposes amending existing bond regulations to conform to the Department of the Treasury (Treasury) regulations on interest related to "unclaimed moneys," as well as to replace references to positions at the former Immigration and Naturalization Service (INS) with references to positions with ICE.

## A. Centralized Filing of Appeals and Motions to Reopen or Reconsider

When an ICE field office decides that an immigration bond has been breached, the obligor may appeal the declaration of breach decision or later seek reconsideration or reopening of that decision. Currently, appeals and requests for reconsideration of breach decisions are filed on Form I-290-B with the office that issued the decision on the breach. However, the Department believes that designating a central place for filing such appeals and requests will improve the process both for the obligor and the Department. Centralized filing will enable the Department to better service, manage, and track appeals and requests for reopening or reconsideration and to do so more consistently. Furthermore, the revised process will reduce or eliminate issuing an invoice for a bond breach when an appeal is pending on it.

Therefore, this rule proposes that all breached immigration bond appeals and motions to reopen or reconsider declarations of breach be filed with the DMC. For appeals, a completed appeals package — including the Form I-290-B, the appeal filing fee, and supporting brief — would be required to be filed with the DMC within 30 days of the declaration of breach. DMC would send the appellant a receipt for the filing fee by mail. After internal docketing for tracking purposes, DMC would direct the appeal to the office where the declaration of breach decision was made, consistent with existing appellate practice. For motions to reopen or reconsider declarations of breach decisions, all forms and fees would be filed with DMC. DMC would send

3

the appellant a receipt for the filing by mail.  After internal docketing for tracking purposes, DMC would forward the motion promptly to the office where the breach decision was made for reopening or reconsideration as provided by existing regulations governing motions.  In both situations, DMC would validate that the appropriate forms and fees were included.

The Department believes this proposed change is a minor procedural change that will not impose any additional burdens on the public, and moreover, would ensure better overall service to the obligor.

### B.  Interest payments

While many bonds posted with the Department are surety bonds, in some cases the alien or the individual assisting the alien posts the face value of a bond in cash (or cash equivalent). When cash bonds have been posted and the bond is canceled, the Department pays interest on the cash value pursuant to Treasury guidelines.

Treasury determines the process for paying interest on cash bonds.   Under 31 U.S.C. 1322 and Volume 1, Part 6, Chapter 3000 of the Treasury Financial Manual (see http:// www.fms.treas.gov/vol1/v1p6c300.html), if the cash value of a bond has been unclaimed for one year from the date of cancellation, the funds are transferred into the Treasury's trust fund receipt account "Unclaimed Moneys of Individuals Whose Whereabouts are Unknown."  The governing authorities also provide that once funds have been transferred into the "unclaimed monies" account, no further interest is paid.

Despite the clear statements contained in applicable statutes and applicable Treasury regulations, Treasury Financial Manual Part 6—Chapter 3000, Payments Of Unclaimed Moneys And Refund Of Moneys Erroneously Received And Covered (T/L 594) some obligors have claimed that the Department is required to continue to pay interest indefinitely on any breached

or cancelled immigration cash bond until the obligor claims it. This rule proposes amendments to the regulations at 8 CFR 293.1 to make it consistent with Treasury's requirements and regulations. Treasury Financial Manual Part 6—Chapter 3000, Payments Of Unclaimed Moneys And Refund Of Moneys Erroneously Received And Covered (T/L 594) and Sec. 1322. Payments of unclaimed trust fund amounts and refund of amounts erroneously deposited.

(a) On September 30 of each year, the Secretary of the Treasury shall transfer to the Treasury trust fund receipt account "Unclaimed Moneys of Individuals Whose Whereabouts are unknown" that part of the balance of a trust fund account named in section 1321(a)(1)-(82) of this title or an analogous trust fund established under section 1321(b) of this title that has been in the fund for more than one year and represents money belonging to individuals whose whereabouts are unknown. Subsequent claims to the transferred funds shall be paid from the account "Unclaimed Moneys of Individuals Whose Whereabouts are Unknown".

[NOTE: "'Apart from constitutional requirements, in the absence of specific provision by contract or statute, or "express consent· · · by Congress," interest does not run on a claim against the United States. *Smyth v. United States*, 302 U.S. 329, 353, 58 S.Ct. 248, 252, 82 L.Ed. 294 (1937); *Albrecht v. United States*, 329 U.S. 599, 605, 67 S.Ct. 606, 609, 91 L.Ed. 532 (1947); *United States v. N. Y. Rayon Importing Co.*, 329 U.S. 654, 658-659, 67 S.Ct. 601, 603-604, 91 L.Ed. 577 (1947)'" *U.S. v Louisiana*, 446 U.S. 253, 264-265, 100 S. Ct. 1618, 64 L. Ed. 196 253.]

Thus, this regulation is proposed to clarify the existing regulations and practice regarding the payment of interest on cash bonds. It does not propose changes to existing Department practices, which conform to Treasury requirements.

### C. Technical Corrections

The regulations at 8 CFR 103.6 establish various procedures relating to immigration surety bonds, which are instruments that guarantee performance on a contract or obligation. Failure to comply with the contract or obligation results in a violation (breach). Surety companies, defined in Treasury regulations at 31 CFR part 223 and in immigration regulation 8 CFR 103.6(b), are required to pay the face value of the bond in the event of a breach. As currently written, 8 CFR 103.6 refers to a variety of positions within the former INS. This rule proposes to update these references by replacing them with references to the successor positions in ICE.

## II. Regulatory Requirements

### A. Regulatory Flexibility Act

The Regulatory Flexibility Act (RFA), 5 U.S.C. 605(b) requires an agency to prepare and make available to the public a regulatory flexibility analysis that describes the effect of the rule on small entities (i.e., small businesses, small organizations, and small governmental jurisdictions). DHS has considered the impact of this rule on small entities and certifies that this rule would not have a significant economic impact on a substantial number of small entities. The proposed amendments relating to centralized filing would affect only the place where the forms are filed, not the substance or nature of the appeal process. Additionally, the proposed amendments relating to interest payments are merely conforming amendments that formally reflect, but do not change, existing Department practices. Lastly, the substitution of current DHS positions for former positions at INS would not affect small entities except to provide them with more accurate information.

### B.  Executive order 12866 (Regulatory Planning and Review)

This proposed rule is not a "significant regulatory action" under section 3(f) of Executive Order 12866, Regulatory Planning and Review, and does not require an assessment of potential costs and benefits under that Order. It is not "significant" under the regulatory policies and procedures of the Department of Homeland Security.

The economic impact of this proposed rule would be so minimal that a full Regulatory Evaluation under the regulatory policies and procedures of DHS is deemed to be unnecessary.

While this rule proposes changes to the place for filing a motion to reconsider or reopen or an appeal of a bond breach decision, it does not otherwise affect the existing process, such as the documents or fees used to file an appeal or motion.  The other proposed changes in this rule are informational in nature, and would not affect existing DHS policies or practices.

### C.  Unfunded Mandates Reform Act of 1995

The Unfunded Mandates Reform Act of 1995 is intended, among other things, to curb the practice of imposing unfunded Federal mandates on State, local and tribal governments.  Title II of the Act requires each Federal agency to prepare a written statement assessing the effects of any Federal mandate in a proposed or final agency rule that may result in a $100 million or more expenditure (adjusted annually for inflation) in any one year by State, local and tribal governments, in the aggregate, or by the private sector; such a mandate is deemed to be a "significant regulatory action."

These rules would not result in the expenditure by State, local and tribal government in the aggregate, or by the private sector, of $100 million or more in any one-year, and would not significantly or uniquely affect small governments.  Therefore, no actions were deemed necessary under the provisions of the Unfunded Mandates Reform Act of 1995.

### D. Executive Order 13132 (Federalism)

Executive Order 13132 requires DHS to develop a process to ensure "meaningful and timely input by State and local officials in the development of regulatory policies that have federalism implications." Such policies are defined in the Executive Order to include rules that have "substantial direct effects on the States, on the relationship between the national government and the States, or on the distribution of power and responsibilities among the various levels of government."

DHS has analyzed this proposed rule in accordance with the principles and criteria in the Executive Order and has determined that this proposed rule would not have a substantial direct effect on the States, on the relationship between the national government and the States, or on the distribution of power and responsibilities among the various levels of government. Therefore, DHS has determined that this proposed rule does not have federalism implications.

### E. Small Business Regulatory Enforcement Fairness Act of 1996

These rules are not major rules as defined by section 804 of the Small Business Regulatory Enforcement Fairness Act of 1996. These rules would not result in an annual effect on the economy of $100 million or more; a major increase in costs or prices; or significant adverse effects on competition, employment, investment, productivity, innovation, or on the ability of United States-based companies to compete with foreign-based companies in domestic or foreign markets.

### F.  Executive Order 12988 (Civil Justice Reform)

This rule meets the applicable standards set forth in sections 3(a) and 3(b)(2) of Executive Order 12988.

### G.  Paperwork Reduction Act

Under the Paperwork Reduction Act of 1995, Public Law 104-13, all Departments are required to submit to the Office of Management and Budget (OMB), for review and approval, any reporting requirements inherent in a rule.  These rules would not impose any new reporting or recordkeeping requirements under the Paperwork Reduction Act.

**List of Subjects in 8 CFR Part 103**

Administrative practice and procedure, Authority delegations (Government agencies), Freedom of information, Privacy, Reporting and recordkeeping requirements.

Accordingly, part 103 of chapter I of title 8 of the Code of Federal Regulations is proposed to be amended as follows:

**PART 103 — POWERS AND DUTIES; AVAILABILTY OF RECORDS**

1. The authority citation for part 103 continues to read as follows:

**Authority:** 5 U.S.C. 301, 552, 552a; 8 U.S.C. 1101, 1103, 1304, 1356; 31 U.S.C. 9701; Public Law 107-296, 116 Stat. 2135 (6 U.S.C. 101 et seq.); E.O. 12356, 47 FR 14874, 15557, 3 CFR, 1982 Comp., p. 166; 8 CFR part 2. (Delegation authority)   [NOTE: "All authorities and functions of the Department of Homeland Security to administer and enforce the immigration laws are vested in the Secretary of Homeland Security. The Secretary of Homeland Security may, in the Secretary's discretion, delegate any such authority or function to any official, officer, or employee of the Department of Homeland Security, including delegation through successive redelegation, or to any employee of the United States to the extent authorized by law. Such

delegation may be made by regulation, directive, memorandum, or other means as deemed appropriate by the Secretary in the exercise of the Secretary's discretion. A delegation of authority or function may in the Secretary's discretion be published in the Federal Register, but such publication is not required." 8 CFR 2.1

 

2. In § 103.3, paragraph (a)(2)(i) is revised to read as follows:

**§ 103.3 Denials, appeals, and precedent decisions.**

\* \* \* \* \*

**(a)**                    \* \* \*

**(a)(2) \* \* \***

(i) *Filing Appeal.* The affected party shall file an appeal on Form I-290-B. Except as otherwise provided in this chapter, the affected party must pay the fee required by 8 CFR 103.7 of this part. The affected party shall file the complete appeal, including any supporting brief and fee within 30 days after service of the decision. The appeal shall be filed as follows:

(A) In General. With the office where the unfavorable decision was made; or

(B) Special Rule for Breached Bonds. In cases relating to breached bonds, the affected party shall file the complete appeal, including any supporting brief or fee, with the Debt Management Center within 30 days after service of the decision. The Debt Management Center shall send the appellant a receipt for the filing fee by mail, and forward the complete appeal to the Reviewing official promptly.

\* \* \* \* \*

2. Section 103.5 is amended by revising paragraph (a)(1)(iii)(E) to read as follows.

**103.5 Reopening or reconsideration.**

(a) * * *

(1) * * *

(iii) * * *

(E) Submitting the motion to the appropriate office, as follows:

(1) with the office maintaining the record upon which the unfavorable decision was made, for forwarding to the official having jurisdiction; or.

(2) with the Debt Management Center for motions relating to breached bonds, for processing the fee and monitoring the disposal of the motion. The Debt Management Center shall send the appellant a receipt for the filing fee by mail, and shall forward the motion to the office where the unfavorable decision was made promptly, for a decision on the motion by the official having jurisdiction.

3. Section 103.6 is amended in paragraphs (a), (c), and (e) by replacing "district director" with "field office director" and "regional director" with "Director, Office of Detention and Removal".

**List of Subjects in 8 CFR Part 293**

Immigration, Surety bonds.

Accordingly, part 293 of chapter I of title 8 of the Code of Federal Regulations is proposed to be amended as follows:

**PART 293 - DEPOSIT OF AND INTEREST ON CASH RECEIVED TO SECURE IMMIGRATION BONDS**

1. The authority citation for part 293 continues to read as follows:

**Authority:** Sec. 103, 66 Stat.173; 8 U.S.C. 1103. Interprets and applies sec. 293, 84 Stat.413.

2. Section 293.1 is amended by adding two new sentences at the end of the section to read as follows:

## § 293.1 Computation of interest.

* * *   "If an immigration bond is cancelled and is not claimed within one year after cancellation by the Obligor — after notice  to the obligor at the Obligor's last known address — the deposit and accumulated interest on the deposit shall be paid into the U.S. Treasury's trust fund receipt account "Unclaimed Moneys of Individuals Whose Whereabouts are Unknown."  Interest payable to Obligor on the deposit shall terminate one year after the date of cancellation, and interest shall not be computed for payment thereafter."

**Dated:**

_____

(b)(6);(b)(7)(C)

<u>Secretary.</u>

12

IMMIGRATION AND CUSTOMS ENFORCEMENT
BONDS
FIELD FINANCIAL PROCEDURES

---

# DEPARTMENT OF HOMELAND SECURITY



U.S. Immigration
and Customs
Enforcement

# Bonds
# Field Financial Procedures

---

**REVISED APRIL 2007**

# IMMIGRATION AND CUSTOMS ENFORCEMENT BONDS
## FIELD FINANCIAL PROCEDURES

### Table of Contents

| Title | Section |
|-------|---------|
| Establish New Cash Bonds | 1 |
| Establish New Surety Bonds | 2 |
| Cancel Cash Bonds | 3 |
| Cancel Surety Bonds | 4 |
| Process Breached Cash Bonds | 5 |
| Process Breached Surety Bonds | 6 |
| Process Breach Rescinds | 7 |
| Increase Bond Amount | 8 |
| Decrease Bond Amount | 9 |
| Change Obligor | 10 |
| Move A-file location | 11 |

**REVISED APRIL 2007**

IMMIGRATION AND CUSTOMS ENFORCEMENT
BONDS
FIELD FINANCIAL PROCEDURES

# SECTION ONE

# ESTABLISH NEW CASH BONDS

**REVISED APRIL 2007**

# IMMIGRATION AND CUSTOMS ENFORCEMENT
# BONDS
# FIELD FINANCIAL PROCEDURES

## Establish New Cash Bonds

**PERFORMED BY DEPORTATION CLERK OR OTHER ASSIGNED PERSONNEL**

**Step 1.**

**Gather Obligor and Alien Information**

*Objective: To gather all obligor information necessary to post bond.*

A. Collect obligor information sheet ensuring that the following information is included:
   – Obligor Name
   – Obligor Address
   – Obligor Social Security Number
   – Obligor Telephone Number
   – Alien Name
   – Alien Immigration Number
   – Bond Amount
   – Check or Money Order Number

B. Confirm information is correct and complete; review obligor's proof of identification and address.

**Step 2.**

**Prepare Bond Documents**

*Objective: To provide all data necessary to record bond at Debt Management Center (DMC).*

A. Assign bond control number from Cash Bond Log.

B. Enter applicable bond information into Log.
   – Bond Receipt Number (The bond receipt number consists of a 3-character location code and a number up to 6 digits.  E.g.  WAS-123456.)
   – Alien Name
   – Alien Number
   – Obligor Name
   – Bond Date
   – Bond Amount

C. Prepare the bond forms ensuring that the following information is included and accurate:
   ♦ *Immigration Bond* (I-352)
      – Obligor Information
      – Alien Information
      – Bond Type, Amount
      – Obligor's Taxpayer Identification Number
      – Bond Pledge and Deposit

# IMMIGRATION AND CUSTOMS ENFORCEMENT
## BONDS
## FIELD FINANCIAL PROCEDURES

### Establish New Cash Bonds

      ◆ *Receipt of Bond* (I-305)
- Obligor Name and Address
- Receipt Number
- City and State (Office Location)
- Date
- Alien Name
- A-File Number
- Immigration Bond Type and Date
- Bond Amount and Cash Instrument Type

*NB: Do NOT sign either document or give documents to obligor at this time.*

D.  Forward documentation to Deportation Officer or other assigned personnel.

**PERFORMED BY DEPORTATION OFFICER OR OTHER ASSIGNED PERSONNEL**

**Step 3.**

**Acquire Bond Approval**

*Objective: To ensure that bond payment information is completed in accordance with legal requirements.*

A.  Receive documentation from Deportation Clerk or other assigned personnel.

B.  Verify I-352 and I-305 information with obligor.

C.  Obtain Field Office Director's original signature on I-352.

D.  Retain I-352 for issuance upon receipt of proof of payment.

E.  Provide I-305 to Cashier.

*NB: Each location should determine the most efficient and effective method for transport of I-305 to the Cashier.*

**PERFORMED BY CASHIER**

**Step 4.**

**Receive Bond Payment**

*Objective: To provide the obligor opportunity to post bond.*

*NB: For internal control purposes, must be a different person than person assigning the bond number per OMB Circular No. A-123 ("Management Accountability and Control")*

A.  Receive I-305 from Deportation Officer or other assigned personnel.

---

**REVISED APRIL 2007**

# IMMIGRATION AND CUSTOMS ENFORCEMENT
## BONDS
## FIELD FINANCIAL PROCEDURES

### Establish New Cash Bonds

B.   Receive bond payment from obligor.

C.   Verify amount submitted is equal to bond amount on the I-305.

D.   Sign I-305.

E.   Separate I-305 copies and distribute as follows:
- ♦   Obligor copy provided to obligor (this must have the original signature)
- ♦   Finance copy retained for future submission with deposit ticket
- ♦   All other copies provided to Deportation Officer immediately

*NB: Each location should determine the most efficient and effective method for transport of I-305 to the Deportation Officer.*

F.   At designated cut-off time, prepare *Receipt for Funds and Valuables Transferred* (G-714)-

G.   Forward G-714 with bond payment(s) and finance copy of I-305 to field deposit preparer.

**PERFORMED BY DEPORTATION OFFICER OR OTHER ASSIGNED PERSONNEL**

**Step 5.**

**Process Alien Release**

*Objective:  To confirm proper processing of all paperwork and facilitate release of alien.*

A.   Receive proof of cash payment from Obligor (I-305 signed by the Cashier) and all other copies of I-305.

B.   Sign I-352 in three places and have obligor sign in two places.
- –   Obligor and witness
- –   Pledge, power of attorney and witness signatures

C.   Make two copies of I-352.
- –   Give one copy to obligor
- –   See step 5.E. for distribution of remaining copies.

D.   Separate I-305 copies.
- –   Return original I-305 to obligor

E.   Forward the following bond documentation to Deportation Clerk or other assigned

# IMMIGRATION AND CUSTOMS ENFORCEMENT
# BONDS
# FIELD FINANCIAL PROCEDURES

### Establish New Cash Bonds

personnel:
- – Original I-352
- – Copy of I-352
- – Two copies of I-305

**PERFORMED BY DEPORTATION CLERK OR OTHER ASSIGNED PERSONNEL**

**Step 6.**

**Distribute Bond Documents**

*Objective: To facilitate timely recording and maintenance of financial data.*

A.  Receive bond documentation from Deportation Officer or other assigned personnel.

B.  File A-file copy of I-305 and I-352 original in A-file.

C.  Mail Bond Control Office copy of the I-305 and I-352 to the DMC within five working days of the bond post date.

*NB: If the A-file is located at another office, forward A-file documentation to corresponding office.*

**IMMIGRATION AND CUSTOMS ENFORMCEMENT
BONDS
FIELD FINANCIAL PROCEDURES**

# SECTION TWO

# ESTABLISH NEW SURETY BONDS

**REVISED APRIL 2007**

# IMMIGRATION AND CUSTOMS ENFORCEMENT
## BONDS
## FIELD FINANCIAL PROCEDURES

### Establish New Surety Bonds

---

| | **PERFORMED BY DEPORTATION CLERK OR OTHER ASSIGNED PERSONNEL** |
|---|---|

**Step 1.**      *Objective: To gather alien and Surety Agent information necessary for posting of Surety Bond.*

**Gather Surety Bond Information**

A. Verify Surety Company against Treasury Bond Providers (C-570) list to ensure it is approved.

B. Determine if surety agent has already completed Immigration Bond (I-352).
- ♦ If surety agent has completed I-352, go to Step 3.B.
- ♦ If surety agent has not completed I-352, proceed.

C. Collect Surety Company information sheet ensuring that the following information is included:
- – Agency Name
- – Agency Address
- – Agency Tax Identification Number
- – Agency Telephone Number
- – Surety Company
- – Surety Address
- – Alien Name
- – Alien Immigration Number
- – Bond Amount

D. Receive *Power of Attorney* documentation from Surety Agent.

E. Confirm Power of Attorney documentation includes the following information:
- – Surety Company Name
- – Surety Agent Name
- – Surety Power Number

**Step 2.**      *Objective: To complete all necessary paperwork to allow Surety Agent to post bond.*

**Prepare Bond Documents**

A. Assign bond control number from Surety Bond Log.

B. Enter applicable bond information into Log:
- – Bond Receipt Number (The bond receipt number consists of a 3-character location code and a number up to 6 digits.  E.g.  WAS-123456.)
- – Alien Name
- – Alien Number
- – Surety Company Name

---

**REVISED APRIL 2007**

# IMMIGRATION AND CUSTOMS ENFORCEMENT
## BONDS
## FIELD FINANCIAL PROCEDURES

### Establish New Surety Bonds

      –  Bond Date
      –  Bond Amount

C.  Complete the following form ensuring that required information is included and accurate:

    ♦  *Immigration Bond* (I-352)
        –   Surety Company information
        –   Alien information
        –   Bond type and amount
        –   Agent's Taxpayer Identification Number
        –   Bond Title, Amount, Interest Rates

*NB:  Do NOT sign document or provide to Agent at this time.*

D.  Forward documentation to Deportation Officer or other assigned personnel.

**PERFORMED BY DEPORTATION OFFICER OR OTHER ASSIGNED PERSONNEL**

**Step 3.**

**Acquire Bond Approval**

*Objective:  To ensure that bond information is completed in accordance with legal requirements.*

A.  Receive documentation from Deportation Clerk or other assigned personnel.

B.  Verify I-352 and Power of Attorney information with surety agent.

C.  Obtain Field Office Director's original signature on I-352.

D.  Sign I-352 in three places and have Surety Agent sign in two places
    –  Agent and two witness
    –  Pledge, power of attorney and witness signatures

E.  Make two copies of I-352
    –  Give one copy to surety agent

F.  Forward the following bond documentation to Deportation Clerk or other assigned personnel:
    –  Original I-352
    –  Copy of I-352
    –  Original Power of Attorney

# IMMIGRATION AND CUSTOMS ENFORCEMENT
# BONDS
# FIELD FINANCIAL PROCEDURES

### Establish New Surety Bonds

‒   Copy of Power of Attorney

**PERFORMED BY DEPORTATION CLERK OR OTHER ASSIGNED PERSONNEL**

**Step 4.**

**Distribute Bond Documents**

*Objective:  To ensure that bond information is recorded and maintained properly.*

A.  Receive bond documentation from Deportation Officer or other assigned personnel.

B.  File Original Power of Attorney and I-352 in A-file.

C.  Mail copies of Power of Attorney and I-352 to the DMC within five working days of the bond post date.

*NB:  If the A-File is located at alternate location, forward A-file documentation to corresponding office.*

---

**REVISED APRIL 2007**

Page 2-3

IMMIGRATION AND CUSTOMS ENFORCEMENT
BONDS
FIELD PROCEDURES

# SECTION THREE

# CANCEL CASH BONDS

**REVISED APRIL 2007**

# IMMIGRATION AND CUSTOMS ENFORCEMENT
## BONDS
## FIELD FINANCIAL PROCEDURES

### Cancel Cash Bonds

**PERFORMED BY DEPORTATION OFFICER OR OTHER ASSIGNED PERSONNEL**

**Step 1.**

*Objective: To begin cancellation of bond(s).*

**Initiate Cancellation Process**

A.  Notify Deportation Clerk or other assigned personnel to complete Cancellation Notice (I-391).

**PERFORMED BY DEPORTATION CLERK OR OTHER ASSIGNED PERSONNEL**

**Step 2.**

*Objective: To properly document information required to cancel the bond.*

**Prepare Cancellation Notice**

A.  Prepare I-391 ensuring the following information is included:
   – Obligor information
   – File Number (A-File)
   – Cancellation Date
   – Receipt Number
   – Bond Post Date
   – Bond Amount
   – Alien Name

B.  Forward I-391 to Deportation Officer or other assigned personnel.

**PERFORMED BY DEPORTATION OFFICER OR OTHER ASSIGNED PERSONNEL**

**Step 3.**

*Objective: To verify the accuracy and completeness of Cancellation Notice.*

**Review Cancellation Notice**

A.  Receive I-391 documentation from Deportation Clerk or other assigned personnel.

B.  Confirm the accuracy and completeness of the I-391.

C.  Acquire authorized signature for I-391.

D.  Forward I-391 to Deportation Clerk or other assigned personnel.

**REVISED APRIL 2007**

Page 3-1

# IMMIGRATION AND CUSTOMS ENFORCEMENT
## BONDS
## FIELD FINANCIAL PROCEDURES

### Cancel Cash Bonds

---

**PERFORMED BY DEPORTATION CLERK OR OTHER ASSIGNED PERSONNEL**

**Step 4.**

*Objective: To facilitate recording and maintenance of financial data.*

**Distribute Documents**

A.  Receive I-391 from Deportation Officer or other assigned personnel.

B.  Make two copies of I-391 and one copy of I-352 (from A-file).

C.  Send original I-391 and instruction sheet to obligor.

D.  Send I-391 copy and I-352 copy to Debt Management Center.

E.  File I-391 copy in A-file.

**Step 5.**

A.  Notify Obligor, either verbally or in writing, to forward the original I-305 receipt to the Debt Management Center, Williston, VT.  The cancellation and return of their bond proceeds can not be completed until this document is received.

**Inform Obligor**

B.   If the original I-305 has been lost or destroyed, provide the obligor with a copy of an I-395, Affidavit in Lieu of Lost Receipt .

---

**REVISED APRIL 2007**

Page 3-2

IMMIGRATION AND CUSTOMS ENFORCEMENT
BONDS
FIELD FINANCIAL PROCEDURES

# SECTION FOUR

# CANCEL SURETY BONDS

**REVISED APRIL 2007**

# IMMIGRATION AND CUSTOMS ENFORCEMENT
## BONDS
## FIELD FINANCIAL PROCEDURES

### Cancel Surety Bonds

**PERFORMED BY DEPORTATION OFFICER OR OTHER ASSIGNED PERSONNEL**

**Step 1.**

*Objective: To begin cancellation of bonds once bond conditions have been met.*

**Initiate Cancellation Process**

A.  Inform Deportation Clerk or other assigned personnel to complete Cancellation Notice (I-391).

**PERFORMED BY DEPORTATION CLERK OR OTHER ASSIGNED PERSONNEL**

**Step 2.**

*Objective:  To properly document information required to cancel bond.*

**Prepare Cancellation Notice**

A.  Prepare I-391 ensuring the following information is included:
    –   Surety Company
    –   Surety Power Number
    –   File Number (A-File)
    –   Cancellation Date
    –   Receipt Number
    –   Bond Date
    –   Bond Amount
    –   Alien Name

B.  Forward I-391 to Deportation Officer or other assigned personnel.

**PERFORMED BY DEPORTATION OFFICER OR OTHER ASSIGNED PERSONNEL**

**Step 3.**

*Objective:  To verify the accuracy and completeness of Cancellation Notice.*

**Review Cancellation Notice**

A.  Receive I-391 documentation from Deportation Clerk or other assigned personnel.

B.  Confirm the accuracy and completeness of the I-391.

C.  Acquire authorized signature for I-391.

D.  Forward I-391 to Deportation Clerk.

---

**REVISED APRIL 2007**

Page 4-1

# IMMIGRATION AND CUSTOMS ENFORCEMENT
## BONDS
## FIELD FINANCIAL PROCEDURES

**Cancel Surety Bonds**

**PERFORMED BY DEPORTATION CLERK OR OTHER ASSIGNED PERSONNEL**

**Step 4.**

*Objective:  To facilitate recording and maintenance of financial data.*

**Distribute Documents**

A.  Receive I-391 from Deportation Officer or other assigned personnel.

B.  Make three copies of I-391.

C.  Send original I-391 to Surety Company.

D.  Send I-391 copy to Surety Agent.

E.  Send I-391 copy to Debt Management Center, Williston, VT.

F.  File I-391 copy.

**IMMIGRATION AND CUSTOMS ENFORCEMENT
BONDS
FIELD FINANCIAL PROCEDURES**

# SECTION FIVE

# PROCESS BREACHED CASH BONDS

**REVISED APRIL 2007**

# IMMIGRATION AND CUSTOMS ENFORCEMENT
## BONDS
## FIELD FINANCIAL PROCEDURES

### Process Breached Cash Bonds

**PERFORMED BY DEPORTATION OFFICER OR OTHER ASSIGNED PERSONNEL**

**Step 1.**

*Objective: To begin the process of collecting on a bond for aliens who have not met their bond requirements.*

**Initiate Breached Bond Process**

A. Notify Deportation Clerk or other assigned personnel to complete bond breach notice (I-323).

**PERFORMED BY DEPORTATION CLERK OR OTHER ASSIGNED PERSONNEL**

**Step 2.**

*Objective: To facilitate the proper completion of breached bond documentation.*

**Prepare Breach Notice**

A. Assign breach number from Breached Bond Log.

B. Record the following information in the Breached Bond Log:
   – A-file Number
   – Alien Name
   – Bond Receipt Number
   – Bond Number
   – Bond Amount

C. Prepare I-323 including the following information:
   – Obligor Name
   – Obligor Address
   – Breach Number
   – File Number (A-File)
   – I-323 Creation Date
   – Bond Type
   – Bond Post Date
   – Bond Receipt Number
   – Bond Amount
   – Alien Name
   – Breach Date (actual)
   – Bond Breach Reason

D. Forward I-323 to Deportation Officer or other assigned personnel.

**REVISED APRIL 2007**                     Page 5-1

# IMMIGRATION AND CUSTOMS ENFORCEMENT
## BONDS
## FIELD FINANCIAL PROCEDURES

**Process Breached Cash Bonds**

---

|  |  |
|---|---|
|  | **PERFORMED BY DEPORTATION OFFICER OR OTHER ASSIGNED PERSONNEL** |
| **Step 3.** | *Objective: To verify the accuracy and completeness of the breach document.* |
| **Confirm Breach Document** | A.  Receive bond documentation from Deportation Clerk. |
|  | B.  Confirm I-323 information is complete. |
|  | C.  Acquire authorized signature for I-323. |
|  | D.  Forward I-323 to Deportation Clerk. |
|  | **PERFORMED BY DEPORTATION CLERK OR OTHER ASSIGNED PERSONNEL** |
| **Step 4.** | *Objective: To notify the obligor of the breach of the bond.* |
| **Notify Obligor of Breach** | A.  Receive I-323 information from Deportation Officer. |
|  | B.  Make three copies of I-323. |
|  | C.  Within 30 calendar days following the date of the breach - send original I-323 and appeal form (I-290B) to obligor via certified mail. |
|  | D.  Simultaneously with step C above, send copy of I-323 to the Debt Management Center. |
|  | E.  Place two copies of I-323 in A-File. |
| **Step 5.** | *Objective: To determine breach status for resolution of open breaches.* |
| **Determine Breach Status** | A.  Upon receipt of appeal documentation, do the following: |

- ♦ If appeal is received, do the following:
  - – Make a copy of I-323 (from A-file)
  - – Stamp "appeal" on I-323
  - – Note date appeal was filed on I-323
  - – Mail I-323 copy to the Debt Management Center
  - – Refile I-323 in A-file
- ♦ When the appeal decision is received do the following:

---

**REVISED APRIL 2007**                    Page 5-2

# IMMIGRATION AND CUSTOMS ENFORCEMENT
# BONDS
# FIELD FINANCIAL PROCEDURES

## Process Breached Cash Bonds

|   |   |
|---|---|
| – | Make a copy of the appeal decision |
| – | Make a copy of the I-323 (from A-file) |
| – | Staple copies together |
| – | Send to the Debt Management Center |
| – | File originals in A-file |

*NB: If bond should be cancelled, go to Section 3, Cancel Cash Bonds.*

B.  For breaches that have been returned "undeliverable" write "undeliverable" on
    the A-file copy of the I-323.

*NB:  It is important to check for appeals on breaches on a regular basis.  The Code of Financial
Regulations requires breaches for which no appeal has been received in 30 days to be declared
"final."  Timely submission of breach and appeal documentation to the Debt Management
Center will facilitate full and timely collection on breaches.*

C.  Repeat Step 5. A. for all appeal documentation received.

IMMIGRATION AND CUSTOMS ENFORCEMENT
BONDS
FIELD FINANCIAL PROCEDURES

# SECTION SIX

# PROCESS BREACHED SURETY BONDS

**REVISED APRIL 2007**

# IMMIGRATION AND CUSTOMS ENFORCEMENT
## BONDS
## FIELD FINANCIAL PROCEDURES

### Process Breached Surety Bonds

**PERFORMED BY DEPORTATION OFFICER OR OTHER ASSIGNED PERSONNEL**

**Step 1.**

**Initiate Breached Bond Process**

*Objective: To begin the process of collecting on a bond for aliens who have not met their bond requirements.*

A.  Notify Deportation Clerk or other assigned personnel to complete bond breach notice (I-323).

**PERFORMED BY DEPORTATION CLERK OR OTHER ASSIGNED PERSONNEL**

**Step 2.**

**Prepare Breach Notice**

*Objective: To facilitate the proper completion of breached bond documentation.*

A.  Assign breach number from Breached Bond Log.

B.  Record the following information in the Breached Bond Log:
    –   A-file Number
    –   Alien Name
    –   Bond Receipt Number
    –   Bond Number

C.  Prepare I-323 including the following information:
    –   Surety Company name
    –   Surety Company address
    –   Breach Number
    –   File Number (A-file)
    –   I-323 Creation Date
    –   Bond Type
    –   Bond Date
    –   Bond Receipt Number
    –   Bond Amount
    –   Alien Name
    –   Breach Date (actual)
    –   Bond Breach Reason

D.  Forward I-323 to Deportation Officer or other assigned personnel.

**REVISED APRIL 2007**

# IMMIGRATION AND CUSTOMS ENFORCEMENT
# BONDS
# FIELD FINANCIAL PROCEDURES

## Process Breached Surety Bonds

---

**PERFORMED BY DEPORTATION OFFICER OR OTHER ASSIGNED PERSONNEL**

**Step 3.**

**Review Breach Document**

*Objective: To verify the accuracy and completeness of the breach document.*

A.  Receive bond documentation from Deportation Clerk or other assigned personnel.

B.  Confirm I-323 information is complete.

C.  Acquire authorized signature for I-323.

D.  Forward I-323 to Deportation Clerk or other assigned personnel.

**PERFORMED BY DEPORTATION CLERK OR OTHER ASSIGNED PERSONNEL**

**Step 4.**

**Notify Obligor of Breach**

*Objective: To notify the obligor of the breach of the bond.*

A.  Receive I-323 information from Deportation Officer or other assigned personnel.

B.  Make three copies of I-323.

C.  Within 30 calendar days following the date of the breach - send original I-323 and appeal form (I-290B) to Surety Company via certified mail.

D.  Simultaneously with step C above, send copy of I-323 to the Debt Management Center (DMC).

E.  Place two copies of I-323 in A-File.

**Step 5.**

**Determine Breach Status**

*Objective: To determine breach status for resolution of open breaches.*

A.  Upon receipt of appeal documentation, do the following:
  ♦  If appeal is received, do the following:
    –   Stamp "appeal" on I-323
    –   Note date appeal was filed on I-323
    –   Make a copy of I-323 (from A-file)
    –   Mail I-323 copy to the Debt Management Center,
    –   Refile I-323 in A-file

---

**REVISED APRIL 2007**          Page 6-2

# IMMIGRATION AND CUSTOMS ENFORCEMENT
# BONDS
# FIELD FINANCIAL PROCEDURES

### Process Breached Surety Bonds

- ◆ When the appeal decision is received to the following:
  - – Make a copy of the appeal decision
  - – Make a copy of the I-323 (from A-file)
  - – Staple copies together
  - – Send to the Debt Management Center,
  - – File originals in A-file

*NB: If bond should be cancelled, go to Section 3, Cancel Cash Bonds.*

*NB:  It is important to check for appeals on breaches on a regular basis.  The Code of Federal Regulations requires breaches for which no appeal has been received in 30 days to be declared "final."  Timely submission of breach and appeal documentation to the Debt Management Center will facilitate full and timely collection on breaches.*

B.   Repeat Step 5. A. for all appeal documentation received.

IMMIGRATION AND CUSTOMS ENFORCEMENT
BONDS
FIELD FINANCIAL PROCEDURES

# SECTION SEVEN

# PROCESS BREACH RESCINDS

**REVISED APRIL 2007**

# IMMIGRATION AND CUSTOMS ENFORCEMENT
# BONDS
# FIELD FINANCIAL PROCEDURES

**Process Breach Rescinds**

---

**PERFORMED BY DEPORTATION OFFICER OR OTHER ASSIGNED PERSONNEL**

**Step 1.**

*Objective: To inform the Debt Management Center of action to be taken on a bond breach.*

**Prepare Memo**

*NB: This procedure should be used only for bonds that have been breached in error and have not started the process of appealing the breach. Those that have started the appeal process should consult Section 5 as applicable.*

A. Prepare memorandum of rescind to include the following information:
   – Bond Receipt Number
   – Breach Number
   – Alien A-file Number
   – Reason for rescind
   – Bond status after rescind (e.g. bond cancelled, bond active)

B. Acquire authorized signature for memo.

C. Forward memo to Deportation Clerk or other assigned personnel.


**PERFORMED BY DEPORTATION CLERK OR OTHER ASSIGNED PERSONNEL**

**Step 2.**

*Objective: To forward rescind documentation to the Debt Management Center in a timely manner.*

**Mail Documents**

A. Receive memo from Deportation Officer or other assigned personnel.

B. Make one copy of rescind memo.

C. Create rescind packet including the following documentation:
   – Rescind memo copy
   – Copy of Breach notice (I-323) being rescinded
   – Bond Cancellation Notice (I-391), if applicable

D. Mail rescind packet to Debt Management Center, Bond Control Office.

E. File original memorandum in applicable A-file.

---

**IMMIGRATION AND CUSTOMS ENFORCEMENT**
**BONDS**
**FIELD FINANCIAL PROCEDURES**

# SECTION EIGHT

# INCREASE BOND AMOUNT

**REVISED APRIL 2007**

# IMMIGRATION AND CUSTOMS ENFORCEMENT
# BONDS
# FIELD FINANCIAL PROCEDURES

### Increase Bond Amount

| | |
|---|---|
| | **PERFORMED BY DEPORTATION CLERK OR OTHER ASSIGNED PERSONNEL** |
| **Step 1.** | *Objective: To provide all data necessary to record bond at the Debt Management Center.* |
| **Prepare Bond Documents** | *NB: This procedure is used only for CASH increases. Surety bonds require an entirely new bond for the new bond amount. The old surety bond must be cancelled and a new bond created for the entire new bond amount with a new Power of Attorney document.* |

A.  Enter applicable bond information into Cash Bond Log.
   – Bond Receipt Number (this will be the same bond receipt number as the original bond except an 'A' will be added to the end)
   – Alien Name
   – Alien Number
   – Obligor Name
   – Bond Date
   – Bond Increase Amount

*NB: All references to the Bond Receipt Number for this bond will use the format mentioned above.*

B.  Prepare the bond forms ensuring that the following information is included and accurate:
   ♦ *Immigration Bond* (I-352)
      – Obligor Information
      – Alien Information
      – Bond Type, Increase Amount
      – Taxpayer Identification Number
      – Bond Pledge and Deposit
   ♦ *Receipt of Bond* (I-305)
      – Obligor Name and Address
      – Bond Receipt Number
      – City and State (Office Location)
      – Date
      – Alien Name
      – A-File Number
      – Immigration Bond Type and Date
      – Bond Increase Amount and Cash Instrument Type

*NB: The bond amount written in documentation is for the amount of the bond increase, not*

# IMMIGRATION AND CUSTOMS ENFORCEMENT
## BONDS
## FIELD FINANCIAL PROCEDURES

### Increase Bond Amount

*for the new bond amount. For example, if the original bond amount was for $5000 and the bond had been increased to $8000, then the new bonds will be for $3000, NOT the new bond amount of $8000.*

C.  Write "Bond Increase" on top of both documents

D.  Go to Section 1, Step 2. D. and proceed.

IMMIGRATION AND CUSTOMS ENFORCEMENT
BONDS
FIELD FINANCIAL PROCEDURES

# SECTION NINE

# DECREASE BOND AMOUNT

**REVISED APRIL 2007**

# IMMIGRATION AND CUSTOMS ENFORCEMENT
# BONDS
# FIELD FINANCIAL PROCEDURES

### Decrease Bond Amount

**PERFORMED BY DEPORTATION CLERK OR OTHER ASSIGNED PERSONNEL**

**Step 1.**

*Objective:  To ascertain all necessary obligor documentation.*

**Collect Obligor Documents**

*NB:  This procedure is used only for CASH decreases.  Surety bonds require an entirely new bond for the new bond amount.  The old surety bond must be cancelled and a new bond created for the entire new bond amount with a new Power of Attorney document.*

A.  Collect original *Receipt of Bond* (I-305) from obligor

**Step 2.**

*Objective:  To provide all data necessary to record bond at Debt Management Center.*

**Prepare Bond Documents**

A.  Enter applicable bond information into Cash Bond Log.
   – Bond Receipt Number (this will be the same bond receipt number as the original bond)
   – Alien Name
   – Alien Number
   – Obligor Name
   – Bond Date
   – New Bond Amount

*NB:  All references to the Bond Receipt Number for this bond will use the format mentioned above.*

B.  Prepare the bond forms ensuring that the following information is included and accurate:
   ◆  *Immigration Bond* (I-352)
      –   Obligor Information
      –   Alien Information
      –   Bond Type, New Bond Amount
      –   Taxpayer Identification Number
      –   Bond Pledge and Deposit

   ◆  *Receipt of Bond* (I-305)
      –   Obligor Name and Address
      –   Bond Receipt Number
      –   City and State (Office Location)
      –   Date
      –   Alien Name
      –   A-file Number
      –   Immigration Bond Type and Date

**REVISED APRIL 2007**                     Page 9-1

# IMMIGRATION AND CUSTOMS ENFORCEMENT
# BONDS
# FIELD FINANCIAL PROCEDURES

### Decrease Bond Amount

  > –      New Bond Amount and Cash Instrument Type

♦ *Notice-Immigration Bond Cancelled* (I-391)
  - Obligor information
  - File Number (A-file)
  - Cancellation Date
  - Receipt Number
  - Bond Post Date
  - Bond Decrease Amount
  - Alien Name

C.   Write "Bond Decrease" on top of both forms.

*NB: Do NOT sign either document or give documents to obligor at this time.*

D.   Forward documentation to Deportation Officer or other assigned personnel.

**PERFORMED BY DEPORTATION OFFICER OR OTHER ASSIGNED PERSONNEL**

**Step 3.**

**Acquire Bond Approval**

*Objective: To ensure that bond payment information is completed in accordance with legal requirements.*

A.   Receive documentation from Deportation Clerk or other assigned personnel.

B.   Verify I-352 and I-305 information with obligor.

C.   Obtain Field Office Director's original signature on I-352 and I-391.

D.   Retain I-352 for issuance upon receipt of proof of payment.

E.   Provide I-305 to Cashier.

*NB: Each location should determine the most efficient and effective method for transport of I-305 to the Cashier.*

# IMMIGRATION AND CUSTOMS ENFORCEMENT
# BONDS
# FIELD FINANCIAL PROCEDURES

### Decrease Bond Amount

**PERFORMED BY DEPORTATION OFFICER OR OTHER ASSIGNED PERSONNEL**

**Step 4.**

*Objective:  To confirm proper processing of all paperwork and facilitate release of alien.*

**Process Alien Release**

A.  Receive proof of cash payment from Obligor (I-305 signed by the Cashier) and all other copies of I-305.

B.  Sign I-352 in three places and have obligor sign in two places.
  – Obligor and witness
  – Pledge, power of attorney and witness signatures
  –

C.  Make two copies of I-352.
  – Give one copy to obligor
  – See step 5.F. for distribution of remaining copies.

D.  Make two copies of I-391.
  – Give copy to obligor

E.  Separate I-305 copies.
  – Return original I-305 denoting the decreased bond amount to obligor

F.  Forward the following bond documentation to Deportation Clerk or other assigned personnel:
  – Original I-352
  – Copy of I-352
  – Two copies of I-305
  – Original I-391

**PERFORMED BY DEPORTATION CLERK OR OTHER ASSIGNED PERSONNEL**

**Step 5.**

*Objective:  To facilitate timely recording and maintenance of financial data.*

**Distribute Bond Documents**

A.  Receive bond documentation from Deportation Officer or other assigned personnel.

B.  File I-305 copy, I-352 original and I-391 original in A-file.

C.  Mail copies of the I-305, I-352, and I-391 to the Debt Management Center, within five working days of the bond post date.

---

# IMMIGRATION AND CUSTOMS ENFORCEMENT
# BONDS
# FIELD FINANCIAL PROCEDURES

### Decrease Bond Amount

*NB:  If the A-file is located at another office, forward A-file documentation to corresponding office.*

IMMIGRATION AND CUSTOMS ENFORCEMENT
BONDS
FIELD FINANCIAL PROCEDURES

# SECTION TEN

# CHANGE OBLIGOR

**REVISED APRIL 2007**

# IMMIGRATION AND CUSTOMS ENFORCEMENT
# BONDS
# FIELD FINANCIAL PROCEDURES

## Change Obligor

---

**PERFORMED BY DEPORTATION CLERK OR OTHER ASSIGNED PERSONNEL**

**Step 1.**

*Objective: To facilitate timely recording and maintenance of obligor data.*

**Forward Document**

A.  Make one copy of I-312 Designation of Attorney in Fact .

B.  Place copy in A-file.

C.  Mail original I-312 to Debt Management Center.

---

**REVISED APRIL 2007**                          Page 10-1

IMMIGRATION AND CUSTOMS ENFORCEMENT
BONDS
FIELD FINANCIAL PROCEDURES

# SECTION ELEVEN

# CHANGE A-FILE LOCATION

**REVISED APRIL 2007**

**PERFORMED BY DEPORTATION CLERK OR OTHER ASSIGNED PERSONNEL**

**Step 1.**

**Forward
Document**

*Objective:  To notify the Debt Management Center that an A-File containing an open bond has been moved to another location.*

A.    Prepare Form I-350, Bond Location Notice addressed to the obligor

B.    Send original copy  I-350 to the Obligor

C.    Mail copy of I-350 to Debt Management Center.

## U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT

## Policy 11022.1:  Detainee Transfers

| | |
|---|---|
| **Issue Date:** | **January 4, 2012** |
| **Effective Date:** | **January 4, 2012** |
| **Superseded:** | All Immigration and Customs Enforcement (ICE) documents that reference or provide guidance related to detainee transfers must be revised in accordance with this Directive. |

**Federal Enterprise Architecture Number:** 306-112-002b

1. **Purpose/Background.** This Directive establishes new prioritized transfer determinations that are meant to minimize, to the extent possible, detainee transfers outside the area of responsibility and to provide cost savings to the agency.

   This Directive consolidates and revises existing policies on how field offices make detainee transfer determinations and conducts transfers out of the Area of Responsibility (AOR).  Transfers of detainees within the AOR are not covered by this Directive.

   This Directive establishes responsibilities and procedures for ICE employees who perform detainee transfers and does not govern contract staff.  ICE employees are advised that responsibilities and procedures for contract staff can be found in their respective vendor agreements.

2. **Policy.**  All detainee transfers and transfer determinations will be based on a thorough and systematic review of the most current information available.

3. **Definitions.**  The following definitions apply for purposes of this Directive only.

3.1. **Area of Responsibility (AOR).**  The geographic area of responsibility under the authority of a Field Office Director (FOD).

3.2. **Detainee transfer.**  The transfer of a detainee from one AOR to another.  The term does not include intake processing, or the transfer of aliens from facilities that are authorized for less than 72 hours, hold rooms, U.S. Customs and Border Protection Border Patrol stations, or Ports of Entry.  The term detainee transfer does not include the transfer of aliens to staging areas or facilities for the purpose of facilitating a scheduled final removal of aliens from the United States, nor does it include the final removal of aliens from the United States.

3.3. **Immediate family.**  This may include: mothers, fathers, step-parents, foster parents, brothers, sisters, stepbrothers, stepsisters, biological and adopted children, stepchildren, foster children, and spouses, including common-law marriage or civil unions and

cohabitating domestic partnerships legally recognized by a state or other governmental entity (e.g. District of Columbia, Puerto Rico, Guam).

**3.4.  Workday(s).** Monday through Friday excluding holidays or other local Enforcement and Removal Operations (ERO)/Executive Office for Immigration Review (EOIR) office closures.

**4.  Responsibilities.**

**4.1.  FODs, Supervisory Immigration Officers, Attorneys, Immigration Officers and Medical Staff** are responsible for complying with the policy and procedures set forth in this Directive.

**4.2.  FODs** are responsible for disseminating and enforcing this Directive and in conjunction with the Office of the Principal Legal Advisor (OPLA), developing protocols with EOIR court administrators within their AOR that ensure a regular exchange of timely and accurate hearing and detainee transfer schedule information.

**5.  Procedures.**

**5.1.  Filing of the Notice to Appear (NTA) for Transfers.** Unless impracticable because of logistical or other compelling factors that delay submission on a temporary or ongoing basis, NTAs will be submitted to EOIR within five (5) workdays of the NTA being served on the alien, or upon the alien entering ICE custody, whichever is later. Proper submission of an NTA does not require delivery confirmation, receipt or further action by EOIR. NTAs mailed to EOIR will only require postmark within the five (5) workdays to be considered timely. All NTAs mailed will utilize a service which tracks mailing and receipt dates.

As a general rule, detainees will not be transferred without the A-Files, T-Files, or work folders. If an A-File, T-File, or work folder does not accompany the transferred alien, the five (5) workdays provided for submitting the NTA to EOIR will not begin until the appropriate case officer, agent or other ICE employee who submits NTAs to EOIR receives the A-File, T-File or work folder.

**5.2.  Transfer Determinations.**

  1)  Unless a transfer is deemed necessary by a FOD or his or her designee under paragraph (3) of this section, ICE Supervisory Immigration Officer(s) will not transfer a detainee when there is documentation to support the following:

   a)  Immediate family within the AOR;

   b)  An attorney of record (Form G-28, *Notice of Entry of Appearance as Attorney or Accredited Representative* on file) within the AOR;

3

c) Pending or on-going removal proceedings, where notification of such proceedings has been given, within the AOR; or

d) Been granted bond or has been scheduled for a bond hearing.

2) The Immigration Officer will conduct a review to determine whether any of these factors exist. Before a transfer is made in a case where one or more of these factors exist, the transfer must be approved at the Assistant Field Office Director level or higher, and the reasons for the transfer must be documented in the detainee's A-File.

3) A transfer may be deemed necessary by a FOD or his or her designee for any of the following reasons:

a) To provide appropriate medical or mental health care to the detainee.

b) To fulfill an approved transfer request by the detainee.

c) For the safety and security of the detainee, other detainees, detention personnel or any ICE employee.

d) At ICE's discretion, for the convenience of the agency when the venue of EOIR proceedings is different than the venue in which the alien is detained.

e) To transfer to a more appropriate detention facility based on the detainee's individual circumstances and risk factors.

f) Termination of facility use due to failure to meet ICE detention standards, lack of sufficient use of the facility by ICE, or emergent situations.

g) To relieve or prevent facility overcrowding; in such cases, efforts should first be made to identify for transfer those detainees who do not meet any of the criteria listed in section 5.2(1).

4) *Orantes* Class Members.

a) ICE is prohibited from transferring Salvadoran class members who are not represented by counsel, from the judicial district of their apprehension for at least seven days to afford them the opportunity to secure counsel.

i) The only exception to this rule applies to class members who are subject to expedited removal final orders. See *Orantes-Hernandez v. Gonzales*, No. 82-01107, Modified Consolidated Injunction, at paragraph 11.b. (C.D. Cal. Nov. 26, 2007).

4

b) Salvadoran class members who *are* represented by counsel or obtain representation within the seven-day period can be transferred to other locations, but venue remains in the judicial district where each member's counsel is located.

c) For any questions regarding the treatment of Salvadoran nationals in ICE custody, pursuant to the requirements of the *Orantes* settlement agreement, please contact the local ICE Office of Chief Counsel.

5) ICE Supervisory Immigration Officers will conduct a thorough review of the most current information available to make all detainee transfer determinations.

## 5.3.   Notifications in the Event of a Detainee Transfer.

1) ICE will ensure that all necessary notifications are made to detainees and their attorneys when detainees are transferred. ICE is not required to notify family members or other third parties of a transfer.

2) Attorney notification. If a detainee has an attorney of record (Form G-28 on file), the sending field office will:

a) Notify the attorney that the detainee is being transferred and include the reason for the transfer and the name, location, and telephone number of the new facility as soon as practicable on the day of the transfer, but in no circumstances later than twenty four (24) hours after the transfer occurs.

b) Document the notification in:

i) The Detainee Transfer Check List; and

ii) The appropriate comments screen in ENFORCE.

c) Delay the notification when there are special security concerns, but only for the period of time justified by those concerns.

d) Appropriately document concerns in the detainee's A-File and the appropriate comments screen in ENFORCE.

3) Detainee notification. Immediately prior to transfer, the sending field office will ensure that the detainee is informed, in a language or manner he/she can understand, that he/she is being transferred to another facility and is not being removed (if applicable).

a) To ensure the safety of ICE personnel, ICE will ensure that specific plans and time schedules are not discussed with detainees and that following notification, the detainee:

Detainee Transfers

      i)  Is not permitted to make or receive any telephone calls until the detainee reaches the destination facility;

      ii)  Does not have contact with any detainee in the general population until the detainee reaches the destination facility; and

      iii) Is notified that upon admission into the receiving facility, the detainee may place a domestic phone call, at no expense to the detainee.

  b)  The sending office will ensure that the detainee notification is documented in:

      i)  The Detainee Transfer Notification form; and

      ii)  The appropriate comments screen in ENFORCE.

  c)  At the time of the transfer, ICE will provide the detainee, in writing, the name, address, and telephone number of the facility to which they are being transferred, using the Detainee Transfer Notification form. ICE place a copy of the form in the detainee's A-File.

  d)  ICE will make sure that the detainee acknowledges, in writing, that they have received the transfer destination information and that it is their responsibility to notify family members if so desired, upon admission into the receiving facility.

4)  <u>EOIR notification.</u>  If a detainee has pending proceedings before EOIR, ICE must submit Form I-830, *Notice to EOIR: Alien Address*. If the alien has an appeal pending with Bureau of Immigration Appeals (BIA), the BIA must be notified. In all cases, a copy of Form I-830 will be placed in the A-file.

## 5.4.  Requests for Bed/Designation Transfers from Field Office to Field Office.

1)  FODs or their designees are responsible for ensuring that field offices which routinely transfer cases:

  a)  Establish a means of communication so that receiving field offices provide sending field offices daily information regarding available bed space; and

  b)  Provide the names and contact numbers of staff responsible for handling transfers.

2)  While field offices are encouraged to communicate directly regarding available bed space, the headquarters Removal Management Division (RMD) is available to assist a field office that has unsuccessfully attempted to locate space.

3)  Field offices seeking bed space in other field office jurisdictions should phone the request (or e-mail with a follow-up phone call) with sufficient details of the case to the designated field office contact.

4) Once a field office has preliminarily agreed to accept a detainee from another office, ICE will ensure that:

    a) The Form I-216, *Record of Persons and Property Transfer* is completed;

    b) Complete information detailing the alien's criminal history, medical or mental health concerns, or security risks is provided.

    c) Medical or mental health problems or prescribed medications are documented, either on Form USM-553 (or equivalent), *Medical Summary of Federal Prisoner Alien in Transit,* or Form I-794, *In-Processing Health Screening,* and the form accompanies Form I-216;

    d) Security concerns are outlined on a separate page and attached to Form I-216; and

    e) A copy of the age verification documentation is attached if it is suspected that the detainee is a juvenile.

5) The FOD(s) or their designee(s) will arrange a method of providing medical histories to Intergovernmental Service Agreement (IGSA) facilities if the IGSA requires that the medical unit review medical histories prior to accepting a transfer.

6) The receiving field office will ensure that Form I-216 is reviewed for consistency with information previously communicated. If there are issues that were not previously relayed to the receiving field office, ICE Supervisory Immigration Officers at the receiving field office will ensure that the sending field office is notified that the transfer request may be declined unless the issues are resolved.

7) Once the receiving field office has agreed to accept the transfer of the detainee on Form I-216, the sending field office will communicate a mutually agreeable estimated time of arrival. The sending field office may not substitute any detainee on Form I-216 without prior approval of the receiving field office.

## 5.5.   Detainee Transfer Checklist and Transfer Notification Form.

1) ICE will ensure that both the Detainee Transfer Checklist and Transfer Notification Form are completed and placed in the detainee's A-File or work folder; and that the A-File or work folder accompanies the detainee to the receiving facility.

2) If the Detainee Transfer Checklist cannot be completed prior to transfer, the detainee may be transferred only if the authorized receiving FOD or his or her designee has expressly waived that procedure. The sending field office will note any such waiver in the A-File.

**5.6.    A-File.**

1)  Prior to transfer, the sending field office will ensure that the A-File is obtained and, in accordance with the appropriate procedures of the ICE Policy Directive titled, "Alien Registration File (A-File) Creation, Maintenance, Organization, and Disclosure of Information":

  a)  Forward the A-File to USCIS for consolidation; and

  b)  Attach all documents and forms on the proper side of the A-File.

2)  The sending field office will ensure that the A-File includes copies of the following properly executed documents, fastened in the file:

  a)  I-216 and appropriate copies of Form I-77, Baggage Check (or IGSA equivalent);

  b)  Form USM-553 or local Medical Transfer Summary form;

  c)  Copy of Form I-213, *Record of Deportable Alien Form*;

  d)  Original or photocopy of Form I-203/203A, *Order to Detain/Release Alien*;

  e)  Detainee Transfer Checklist;

  f)  Age verification documents (if applicable);

  g)  A copy or printout of all previous Post Order Custody Reviews (POCRs) and travel document requests in a property envelope fastened to the file;

  h)  Classification sheet;

  i)  Charging documents/records of proceedings;

  j)  Certified copies of convictions;

  k)  Fingerprint cards;

  l)  Photographs; and,

  m) Printouts from the Central Index System (CIS), ENFORCE and the FBI/NCIC database.

3)  If the sending field office is unable to obtain the A-File (and does not have a fully documented Temporary File), the detainee may not be transferred unless the receiving

field office, before the transfer takes place, accepts a work folder created by the sending field office that includes, at a minimum:

   a) Certified copies of convictions or information as addressed in section 5.8;

   b) Printouts from the Central Index System (CIS), ENFORCE, and the Federal Bureau of Investigation's (FBI) National Crime Information Center (NCIC) database;

   c) Charging documents/copies of the EOIR record of proceedings;

   d) Photographs and fingerprints;

   e) A Computer Linked Application Information Management System (CLAIMS) printout;

   f) A Treasury Enforcement Communications System (TECS) printout; and

   g) Any other documents reasonably requested by the receiving field office.

4) The sending field office will ensure that the A-File or work folder accompanies the transfer, except for cases where the receiving field office requests that the A-File or work folder be mailed by overnight express to a particular location. If requested, the sending field office will ensure that it is mailed no later than the following business day.

5) The sending field office shall communicate as soon as possible any anticipated significant delays in the arrival time of the detainees or their files.

## 5.7.    Charging Documents/Record of Proceeding.

1) Before the transfer, all charging documents will be issued and signed by the individual with signatory authority for the sending field office.

2) If applicable, prior to transfer, all charging documents will be served on the detainee, including, but not limited to:

   a) Form I-862, *Notice to Appear*;

   b) Form I-200, *Warrant of Arrest*;

   c) Form I-205, *Warrant of Removal*;

   d) Form I-286, *Notification of Custody Decision*; and

   e) Form I-826, *Notice of Rights*.

3) ICE will ensure that original charging documents or copies, if the originals have been submitted to EOIR (indicating proper service), are included in the A-File. A copy of the charging documents will be provided to the detainee.

**5.8.    Certified Copies of Convictions.**  A detainee may not be transferred if the certified copies of conviction relating to the charging document are not included in the A-File or work folder, unless the receiving field office has agreed in writing in advance to accept the case.  In such instances, the sending field office will provide the Detainee Transfer Checklist point-of-contact names and phone numbers provided for:

1) The person at the sending field office responsible for obtaining the conviction record; and

2) An individual at the respective court or clerk's office where the record is located.

**5.9.    Fingerprint Cards.**  The sending field office will send the completed fingerprint cards in the A-File or work folder as noted below:

1) The cards will be signed by the alien and the official taking the fingerprints;

2) The cards will be completely filled out except for the address block requesting a disposition from the FBI;

3) The completed cards will be left in the A-File or work folder for the receiving field office to fill in the response address block and submit to the FBI and DHS Biometrics Support Center (when appropriate), unless the detainee is a Room-and-Board case (short-term staging); and

4) One fingerprint card should remain in the A-File or work folder at all times.

**5.10.    Photographs.**  The sending field office will take four (1 sheet of 4) new, standard booking-size photographs on photo quality paper and include any photos not needed for the transfer in the A-File or work folder.

**5.11.    Medical Procedures and Information Required for Transfer.**

1) In advance of the transfer, ICE will ensure that the receiving facility is provided the USM-553 (facsimile or email is acceptable)

2) Transfer of the Detainee's Medical Record.

   a) When a detainee is transferred within the ICE Health Service Corps (IHSC) system, IHSC will provide:

      i) Form USM-553, or equivalent Medical Transfer Summary, and a copy of the detainee's full medical record; and

    ii) The full medical record in a sealed envelope or other container labeled with the detainee's name and A-number and marked "MEDICAL CONFIDENTIAL."

b) When a detainee is transferred to an IGSA detention facility, ICE will ensure that the Transfer Summary will accompany the detainee. Whenever possible, a copy of the full medical record should accompany each detainee during transfer. If the full medical record is not available, it must be sent as soon as possible. FODs will work with IGSAs to make arrangement for the transfer of the full medical record.

3) Medical Transfer Summary.

    a) The sending facility's medical staff will prepare a Medical Transfer Summary that must accompany the detainee. Either Form USM-553 or a facility-specific form may be used, provided it shows:

        i) Tuberculosis (TB) clearance, including Purified Protein Derivative (PPD) with the test dates, and chest x-ray results if the detainee has received a positive PPD reading;

        ii) Current mental and physical health status, including all significant health issues;

        iii) Current medications, with specific instructions for medications that must be administered en route; and

        iv) The name and contact information of the transferring medical official.

    b) The transporting officer may not transport a detainee without the Medical Transfer Summary.

    c) The transporting officer will review the information for completeness and make sure that he or she has the in-transit supplies required to provide to the detainee as indicated on the USM-553 or equivalent Medical Transfer Summary.

    d) Medical information is available to staff only on a need-to-know basis.

        i) Any officer who reviews the Medical Transfer Summary will protect the privacy of the detainee's medical information to the greatest extent possible.

        ii) Personnel may not share medical information unless necessary to safely fulfill transportation responsibilities.

     c) The transporting officer will deliver the Medical Transfer Summary to medical personnel, if practicable, or other staff at the receiving facility and will advise them of any medications provided to the detainee in transit.

4) Medical or Psychiatric Alert.

     a) Appropriate medical staff will notify the facility administrator when they determine that a detainee's physical or mental condition requires:

        i) Clearance by the medical staff prior to transfer; or

        ii) Medical escort and specialized care (e.g. dialysis) during transfer.

5) Medications.

     a) Prior to transfer, medical staff will provide the transporting officers instructions and, if applicable, medication(s) for the detainee's care in transit.

     b) Medical staff will ensure that the detainee is transferred with, at a minimum, seven (7) days worth of prescription medications (for TB medications, up to 15 days' supply) to guarantee the continuity of care throughout the transfer and subsequent intake process.

     c) ICE will ensure that medications:

        i) Are placed in a property envelope labeled with the detainee's name and A-number and appropriate administration instructions;

        ii) Accompany the transfer; and

        iii) If unused, are turned over to the receiving medical personnel.

## 5.12.   Other Transfer Paperwork.

1) ICE will ensure that no detainee is transferred without a properly executed Form G-391, I-213, I-216, I-203/I-203A, or equivalent.  IGSA facilities may use a local form as long as the form provides the required information.

2) ICE Supervisory Immigration Officers will ensure that records are checked to ascertain if the alien has a criminal history, is dangerous, or has an escape record or medical condition.  Any information of an adverse nature must be clearly indicated on the Form G-391, I-216, I-203, or equivalent, and the escorting officers will be notified of the risk and warned to take the necessary precautions.

3) Before beginning the transfer or the detail, the escorting and transportation officers will read their instructions and clearly understand the purpose for which the detainee

is being removed from the facility. The officers will also discuss emergency contingency plans with a supervisor and/or authorized ICE official before departure.

4) ICE will ensure that Form I-216:

    a) Includes the detainee's name, A-number and detention category;

    b) Indicates if the detainee has a criminal conviction, a history of violence, is an escape risk, or has a medical condition that may require attention during the transfer;

    c) Notes whether the detainee is on prescription medication; and

    d) Indicates the time of arrival estimated by the sending field office.

5) ICE will ensure that Form G-391, I-203/I-203A, or equivalent:

    a) Is properly signed and clearly indicates the name and A-number of the detainee(s);

    b) Indicates the place or places to be escorted; and

    c) Notes the purpose of the trip and other information necessary to efficiently carry out the transfer, or detail.

6) The receiving field office may request that copies of Form I-203/I-203A or I-213 be transmitted directly from the sending field office to the receiving facility.

## 5.13.   Property.

1) Before transfer, the sending facility will ensure that all funds and small valuables are properly documented and closed out on Form G-589/I-77 (or local IGSA property receipt form).

2) If the receiving facility does not accept excess, oversized or bulky belongings (including, but not limited to, suitcases, cartons, televisions, etc.), the sending facility will:

    a) Arrange to store the property elsewhere; or

    b) Process the excess property in accordance with the ICE National Detention Standards (NDS) or Performance Based National Detention Standards (PBNDS) related to the destruction of contraband or abandoned property.

3) If the detainee refuses to provide an appropriate mailing address, or is financially able but unwilling to pay for shipping, ERO may dispose of the property after providing

the detainee written notice in accordance with the ICE National Detention Standards (NDS) or Performance Based National Detention Standards (PBNDS) related to the destruction of contraband or abandoned property.

**5.14.** **Movements via ICE-Managed Aircraft.** When detainees are being transported by the ERO Flight Operations Unit, ICE will adhere to protocols established for ICE chartered removals.

**5.15.** **Post Transfer Activities.**

    1) Detainee Phone Calls.

        a) After admission into the receiving facility the FOD will ensure that all detainees are given the opportunity to make a phone call at the government's expense.

    2) ENFORCE.

        a) The sending field office will ensure that appropriate screens in ENFORCE are complete, updated, and accurate.

        b) Once the detainee reaches his or her destination, the receiving field office will update the appropriate screens in ENFORCE.

**5.16.** **Quality Assurance Review.** Consistent with the terms of this Directive, the FOD shall maintain statistics on transfers and have a quality assurance process in place to monitor all transfer decisions.

**6.** **Authorities/References.**

**6.1.** Immigration and Nationality Act, Pub. L. No. 82-414, §236(a) (1952) (codified as amended at 8 U.S.C. §§ 1101 et seq).

**6.2.** ICE Policy Directive No. 1-32.0, "Alien Registration File (A-File) Creation, Maintenance, Organization, and Disclosure of Information" (Oct. 2, 2009).

**7.       Attachments.**

**7.1.**     Detainee Transfer Notification.

**7.2.**     Detainee Transfer Checklist.

**8.       No Private Right Statement.**   This Directive is an internal policy statement of ICE.  It is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter.


**John Morton**
**Director**
**U.S. Immigration and Customs Enforcement**

*Office, of Detention and Removal Operations*

**U.S. Department of Homeland Security**
Washington, D.C. 20536



**U.S. Immigration
and Customs
Enforcement**

JUL 2 9 2004

MEMORANDUM FOR:     Field Officer Directors
                    Deputy Assistant Director
                    Unit Chiefs

FROM:               (b)(6);(b)(7)(C)                    (b)(6);(b)(7)(C)
                    Acting Director

SUBJECT:            New Release Procedures for Unaccompanied Alien Children
                    Placed with and Cared for by the Office of Refugee Resettlement

This memorandum modifies existing release policies and procedures for unaccompanied alien children (UACs) placed with and cared for by the Office of Refugee Resettlement (ORR). The policies and procedures contained within this memorandum become effective Monday, August 2, 2004.

Currently, documents and information (family reunification packet) needed from sponsors related to the release of UACs are gathered by a representative of the ORR and forwarded to the Detention and Removal Operations Field Office Juvenile Coordinator (FOJC) with a request for the FOJC to perform a record check on the proposed sponsor. The FOJC also completes the appropriate release documents for the UAC and the sponsor.

Effective Monday, **August 2, 2004**, ORR will complete and sign all appropriate release documents for the UAC and the sponsor. In summary, on August 2, 2004, the FOJC will no longer prepare or sign release documents, set conditions of release, or set bond on UACs being released by ORR. Also, effective **August 2, 2004**, the FOJC will no longer perform record checks on proposed sponsors. ORR will perform background checks prior to releasing a UAC to a sponsor.

Release Procedures

In the event ORR chooses to release the UAC, ORR will complete and sign the release paperwork and send a copy of such to the FOJC where the UACs A-file is located. In most cases, this will be the location where the UAC is being housed. In other instances, it will be the jurisdiction having venue over the case. Documentation will include, but not be limited to, the following: 1) UACs name, date of birth, A-number, sex, current address and facility name, address where the UAC will be residing upon release, and release date; 2) Sponsor's, name, date

Subject: New Release Procedures for Unaccompanied Alien Children
Page 2

of birth, A-number, sex, social security number, address, telephone number, and employer name and address; and 3) Release documents prepared and signed by ORR. Upon receipt of this information, the FOJC will immediately update DACS and other appropriate computer systems and place the documentation provided by ORR into the UACs A-file.

Once the UAC is released, the case should be handled as per current policy and practice relating to UACs released from federal custody.

### DHS Form I-94, *Arrival/Departure Record*

In the event (for arriving aliens) the DHS Form I-94, is required as part of the release package, ORR will contact the appropriate FOJC prior to releasing the UAC. The FOJC will fill out the arrival and departure sections of the I-94, stamp the I-94 with a parole stamp and complete the date, purpose, and port portions of parole stamp. The date portion of the parole stamp should not exceed six months from the date the document is stamped. The purpose section of the parole stamp should state: "Paroled to sponsor pending removal proceedings." The FOJC will then send the I-94 to ORR via Federal Express. ORR will then complete the date and officer portions of the parole stamp. When completed, ORR will provide the appropriate portion to the UAC and immediately return the remaining portion to the FOJC. The FOJC will then place the document into the UAC's A-file.

### DHS Form I-286, *Notice of Custody Determination*

ORR is responsible for making decisions related to the care and custody of UACs in their charge. This includes decisions regarding release to include bond and reporting requirements. Consequently, once a UAC has been referred to ORR for placement and placed in an ORR facility, the FOJC must review the I-286 and make a custody redetermination. On the I-286 and in the section entitled "Result of Custody Redetermination," the FOJC must check the box marked "other" and write or type in "Transfer of physical custody to ORR – any previous bond cancelled." By doing so, any bond previously set will be explicitly eliminated.

In the event ORR contacts ICE and requests that a bond be set, the FOJC will check the box marked "bond amount reset" and write or type in this section "Bond set in the amount of (enter the amount) as per the request of ORR." In this scenario, ICE will collect bond according to existing policies and procedures.

Any questions regarding these procedures may be directed to (b)(6);(b)(7)(C) Headquarters Office of Detention and Removal at 202-307-(b)(6);(b)(7)

*Office of Detention and Removal Operations*

U.S. Department of Homeland Security
500 12th Street, SW
Washington, DC 20536



**U.S. Immigration
and Customs
Enforcement**

| | | |
|---|---|---|
| MEMORANDUM FOR: | Field Office Directors | JUL 21 2009 |
| FROM: | James T. Hayes, Jr.<br>Director | (b)(6);(b)(7)(C) |
| SUBJECT: | Updated Voluntary Departure<br>Policies | |

Purpose:

This guidance describes changes to 8 C.F.R. § 1240.26 relating to grants of voluntary departure in removal proceedings. These changes come from the U.S. Department of Justice's (DOJ) Executive Office for Immigration Review (EOIR) Final Rule on Voluntary Departure: Effect of a Motion to Reopen or Reconsider or a Petition for Review, which took effect January 20, 2009. In short, the rule provides that a Motion to Re-open or Reconsider (MTR) filed by an alien with a decision of voluntary departure granted by an Immigration Judge (IJ) or the Board of Immigration Appeals (Board) within the voluntary departure period automatically terminates the grant of voluntary departure. Likewise, the filing of a Petition for Review (PFR) in a federal court of appeals within the voluntary departure period automatically terminates the grant of voluntary departure.

Background:

The Immigration and Nationality Act (INA) provides for IJs to grant voluntary departure. They may do so prior to the completion of removal proceedings (for a period of up to 120 days) and at the conclusion of removal proceedings (for a period of up to 60 days).   If an alien granted voluntary departure fails to depart during the period of time provided, an alternate Order of Removal takes effect.

Grants of Voluntary Departure

An alien may voluntarily depart the United States during the voluntary departure period after the alien posts a voluntary departure bond (departure bond). The departure bond remains valid and in effect until canceled by proof of the alien's voluntary departure, or by the alien's surrender for removal before the expiration of the voluntary departure period.   The departure bond is breached if the alien fails to depart or surrender pursuant to the alternate order of removal during the voluntary departure period. A voluntary departure bond is not canceled if the alien appeals a decision of the IJ.

www.ice.gov

SUBJECT: Updated Voluntary Departure Policies
 Page 2

Failure to post the required departure bond does not terminate the alien's obligation to depart or exempt the alien from the consequences for failure to depart voluntarily during the period allowed.

Please see attached Voluntary Departure Questions and Answers (Q&As) developed to help further explain these changes.

All inquiries, questions, and/or concerns may be directed to the HQ DRO BOND mailbox at HQ_DRO_BOND@dhs.gov or your local Chief Counsel's Office.


Attachment

### *Voluntary Departure Bond O&A*

1. What is the effect of an alien's failure to post a departure bond within 5 days of an Order of Voluntary Departure?

   The Order of Voluntary Departure is automatically terminated. If the alien has waived appeal of the Immigration Judge's (IJ) decision, the alternative Order of Removal is immediately effective, and the alien may be removed, unless a court has stayed removal. The Office of Detention and Removal Operations (DRO) may also set a delivery bond where appropriate. If the alien has an outstanding delivery bond, the delivery bond remains in full force and effect and the obligor may be called upon to deliver the alien if the alien fails to appear for removal.

2. When will a departure bond be breached?

   A departure bond will be determined to have been breached if the alien fails to depart the United States on or before the date specified in the order granting Voluntary Departure in accordance with 8 C.F.R. § 103.6(e).

3. What is the effect of an alien furnishing proof of Voluntary Departure after a determination and declaration that the bond has been breached?

   DRO may rescind its determination that a bond has been breached and cancel the bond if DRO is furnished with probative documentation of the alien's departure during the Voluntary Departure period. The requirement to furnish probative documentation may be satisfied by the obligor providing DRO with a completed Form 1-392 or Form G-146 executed by the alien before an officer of the U.S. Consulate affirming the alien's entry into the country to which the alien is departing within 60 days of the date of the voluntary departure order or with any verified corroboration of the alien's presence by a third party in the destination country.

4. What is the effect of an alien posting a departure bond within five days of an Order of Departure?

   At the discretion of the Field Office Director (FOD), the alien may be held in custody until the bond is posted. Upon posting the departure bond, any outstanding delivery bond must be cancelled. If the alien satisfies the conditions of the departure bond prior to the expiration of the voluntary departure period, the departure bond must be cancelled.

5. What is the effect of filing a Notice of Appeal to the Board within 30 days of the date of the IJs order?

   The voluntary departure decision is not final until the appeal is completed and the Voluntary Departure Order has become administratively final. If on appeal an order granting voluntary departure is reversed by the Board, the voluntary departure bond must

be cancelled. Because the Board will reverse a grant of voluntary departure unless the alien submits proof of the posting of the departure bond, an alien may ask the FOD for the following documents as evidence that the voluntary departure bond was posted:

A copy of the Immigration Bond (Form I-352)

A copy of the Receipt of Immigration Officer - United States Bond or Notes, or Cash, Accepted as Security on Immigration Bond (Form I-305).

6. What is the effect of an alien filing a Motion to Re-open or Reconsider (MTR) during the period allowed for Voluntary Departure?

   The Voluntary Departure Order is terminated and the departure bond must be cancelled. The alien may be removed unless a court has stayed removal. DRO may also set a delivery bond where appropriate.

7. What is the effect of an alien filing a petition for review (PFR) prior to the expiration of the voluntary departure period?

   A grant of Voluntary Departure shall terminate automatically upon the filing of the PFR and the alternate order of removal shall take effect immediately, unless a court has stayed removal. DRO may also set a delivery bond where appropriate. If a departure bond has been posted, it must be canceled. If the alien has not posted a departure bond, and there is an outstanding delivery bond, the delivery bond remains in full force and effect and the obligor may be called upon to deliver the alien if the alien fails to appear for removal.



*Office of the Principal Legal Advisor*

**U.S. Department of Homeland Security**
425 I Street, N.W. (b)(6); (b)
Washington, DC 20536

**U.S. Immigration
and Customs
Enforcement**

**MAY 2 6 2004**

MEMORANDUM FOR ALL CHIEF COUNSEL

FROM:      William J. Howard
           Principal Legal Advisor

SUBJECT:   Revised Review and Reporting Procedures for Adverse Decisions in Operation
           Predator Cases

This memorandum sets out revised procedures for the review and reporting of adverse decisions in
Operation Predator (OPPRED) cases following an Immigration Judge's (IJ's) initial bond order and
the filing of an EOIR-43 automatic stay.[1]  Such decisions fall into three main categories:  (1) a
subsequent IJ grant of relief to the alien (e.g., 212(c)) in the merits proceedings; (2) a subsequent
Board of Immigration Appeals (BIA) denial of an ICE bond appeal; and (3) a subsequent BIA denial
of an ICE appeal from an IJ grant of relief.

Currently, Chief Counsel are required to report to Headquarters, via Appellate Counsel, all IJ grants
of relief in OPPRED cases where Chief Counsel are not inclined to appeal to the BIA.  Further,
Chief Counsel are required to report all BIA denials of ICE appeals (bond or merits relief) with a
recommendation as to whether Attorney General referral or a motion to reconsider to the BIA is
warranted.

Full and timely review of adverse OPPRED decisions is often complicated by a number of factors.
For example, there may be pending (or threatened) federal court litigation in the case, or an IJ may
issue an additional custody order in conjunction with a grant of relief.  Further, where the BIA
dismisses an ICE bond appeal, ICE has an extremely short regulatory time frame (5 business days)
to decide whether to refer the case to the Attorney General and keep the automatic stay in place.
Finally, since the inception of OPPRED, both field and Headquarters components have had to
shoulder increased legal responsibilities.

---

[1] The separate procedures by which Chief Counsel Offices review and report initial EOIR-43 automatic stays filed in
OPPRED cases are not affected by this memorandum and remain unchanged.

Memorandum for All Chief Counsel                                                           2
Subject:  Revised Review and Reporting Procedures for Adverse Decisions in Operation Predator
          Cases

Accordingly, effective immediately, the following revised review and reporting procedures should
be followed for adverse decisions in OPPRED cases:

- IJ Grant of Relief:  Chief Counsel are required to report to Appellate Counsel when they are
  not inclined to appeal an IJ grant of relief in an OPPRED case, and either:

  - o  The criminal sentence actually served by the alien for the predatory offense is greater
       than 1 year, OR

  - o  The predatory offense involves forcible rape, violence, penetration, or other similar
       levels of egregious conduct.

  If either factor is present, the case must be reported immediately, and the decision whether to
  appeal the grant of relief will be made by Headquarters.  Chief Counsel should include an
  appeal recommendation in all such cases.  Even if neither factor is present, however, the case
  should be reported to Appellate Counsel if it has garnered media attention or has other
  special significance (e.g., the victim of the predatory offense has expressed a strong desire
  that the alien be removed).

  In other scenarios, Chief Counsel, in their own discretion, may decide not to appeal a grant of
  relief in an OPPRED case without the need to seek Headquarters' review.  In such a "no
  appeal" situation, Chief Counsel should withdraw any related bond appeal and EOIR-43 still
  pending, and should report the same to Appellate Counsel via a short e-mail, e.g., "OPPRED
  case, 212(c) granted, no ICE merits appeal to be filed, bond appeal and EOIR-43 being
  withdrawn."

- BIA Denial of ICE Bond Appeal:  Chief Counsel are required to report an adverse BIA bond
  decision to Appellate Counsel when:

  - o  The criminal sentence actually served by the alien for the predatory offense is greater
       than 1 year, OR

  - o  The predatory offense involves forcible rape, violence, penetration, or other similar
       levels of egregious conduct.

  If either factor is present, the case must be reported immediately, along with a
  recommendation on Attorney General referral or a motion to reconsider to the BIA in
  conjunction with an emergency stay.  The decision whether to refer to the Attorney General
  or seek BIA reconsideration will be made by Headquarters.  Even if neither factor is present,
  however, the case should be reported to Appellate Counsel if it has garnered media attention
  or has other special significance (e.g., the victim of the predatory offense has expressed a
  strong desire that the alien be removed).

Memorandum for All Chief Counsel                                                           3
Subject:   Revised Review and Reporting Procedures for Adverse Decisions in Operation Predator
            Cases

Due to the exceedingly short regulatory time period (5 business days) in which to refer an
adverse BIA bond decision to the Attorney General and still maintain an automatic stay,
Chief Counsel should endeavor to identify cases meeting the above reporting criteria as early
as possible.  Specifically, when seeking initial approval of an EOIR-43 automatic stay from
Appellate Counsel, such a case should be prominently noted as a "possible AG referral
candidate," so that Appellate Counsel can help Chief Counsel track the status of the bond
appeal at the BIA.

- **BIA Denial of ICE Appeal from IJ Grant of Relief:**  Chief Counsel are required to report an
  adverse BIA merits decision to Appellate Counsel when:

  - The criminal sentence actually served by the alien for the predatory offense is greater
    than 1 year, OR

  - The predatory offense involves forcible rape, violence, penetration, or other similar
    levels of egregious conduct.

If either factor is present, the case must be reported immediately, along with a
recommendation on Attorney General referral or a motion to reconsider to the BIA in
conjunction with an emergency stay.  The decision whether to refer to the Attorney General
or seek BIA reconsideration will be made by Headquarters.  Even if neither factor is present,
however, the case should be reported to Appellate Counsel if it has garnered media attention
or has other special significance (e.g., the victim of the predatory offense has expressed a
strong desire that the alien be removed).

Finally, in addition to reporting adverse OPPRED decisions to Headquarters pursuant to the
guidance set forth above, Chief Counsel Offices should endeavor to keep their local SAC
apprised of all such adverse decisions.  This notification will help the local SACs have a better
sense of how the OPPRED cases they initiated are faring before EOIR adjudicators.  The
notification can be as simple as an e-mail identifying the matter as an OPPRED case and noting
the alien name, A#, and the type of adverse disposition.  In those cases in which the local SACs
desire additional information, it is their responsibility to request such, with the understanding
that, in many instances, litigation decisions must be made under intense time pressure.  As you
know, on May 3, 2004, the Director of the Office of Investigations issued a memorandum to the
SACs on "Operation Predator Alien Arrests."  The memorandum provides guidance to the SACs
on pre-arrest, supporting documentation, counsel liaison, and reporting requirements.
Corresponding guidance will be forthcoming from ICE OPLA in the near future.

The revised procedures set forth in the instant memorandum will allow ICE OPLA to maintain
an aggressive litigation posture with respect to OPPRED cases while, at the same time, establish
a more efficient review and reporting process that better enables us to focus our resources.  Any
questions with respect to the instant memo should be directed to  (b)(6);(b)(7)(C)  Acting Chief
Appellate Counsel, at 703-756 (b)(6);(b)

*Office of the Principal Legal Advisor*

**U.S. Department of Homeland Security**
425 I Street, NW
Washington, DC 20536



**U.S. Immigration
and Customs
Enforcement**

October 26, 2006

**MEMORANDUM FOR:**        **ALL ICE ATTORNEYS**

**FROM:**        (b)(6);(b)(7)(C)            (b)(6);(b)(7)(C)
        **Deputy Principal Legal Advisor**

**SUBJECT:**        Revised Procedures for Automatic Stay of Custody Decisions by
        Immigration Judges

**Purpose**

On October 2, 2006, the Department of Justice published a final rule entitled Review of Custody
Determinations 71 Fed. Reg. 57873 (to be codified at 8 C.F.R. §§ 1003.6, 1003.19). This rule will
become effective on November 1, 2006. (Attachment 1).[1] This rule clarifies the basis on which the
Department of Homeland Security (DHS) may invoke the automatic stay provisions and limits the
duration of the automatic stay. This memorandum provides procedures for use of the revised automatic
stay provision contained in 8 C.F.R. § 1003.6(c) and §1003.19(i).

**Background**

The automatic stay provision allows an ICE attorney to file an automatic stay anytime DHS has ordered
that the alien be held without bond or has set a bond of $10,000 or more, and an Immigration Judge (IJ)
has redetermined that custody condition.   Automatic stays were addressed in a May 26, 2004,
memorandum, "Revised EOIR-43 Automatic Stay Filing Guidelines," and in an April 25, 2006,
memorandum, "Revised Guidance for Handling of Cases of Interest or Significance," which both
remain in effect.[2] Those memoranda: 1) set out policy standards to help better define circumstances in
which filing of an EOIR-43 is appropriate, and 2) set forth the internal Office of the Chief Counsel
(OCC) and ICE OPLA HQ review and approval process.

---

[1] The commentary to the rule contains an excellent discussion of the history of the automatic stay and cites a
number of authorities which could be of significant assistance to ICE attorneys both in briefing bond issues to the
Board of Immigration Appeals (BIA) and in defending federal court actions challenging the application of an
automatic stay.
[2] Both the May 26, 2004, and April 25, 2006, memoranda reference an August 27, 2003 memorandum.  All three
memoranda can be found on Docushare, with the one from April 25, 2006 on the NSLD page
(http://gcdocs.ice.dhs.gov/dscgi'ds.py/View/Collection-1683) and the other two on the ALPLD page
(http://gcdocs.ice.dhs.gov/dscgi'ds.py/View/Collection-1665).

www.ice.gov

**000248**

Memorandum: Revised Procedures for Automatic Stay
of Custody Decisions by Immigration Judges                                              2

Discussion

These provisions enable ICE to maintain custody of certain aliens ordered released by an IJ pending ICE's appeal of the IJ's custody decision by filing an automatic stay with the Immigration Court.[3] Under the revised regulations, to invoke the automatic stay provisions, ICE must file Form EOIR-43 (Notice of DHS Intent to Appeal Custody Redetermination) with the IJ within 1 business day of the IJ's order. (Attachment 2).[4]  Thereafter, a Notice of Appeal, accompanied by a "certification by a senior legal official," must be filed with the BIA within 10 business days, or else the stay will lapse.  If these conditions are met, the IJ's custody redetermination will be stayed pending the BIA's decision on the ICE appeal.  As noted, the regulation now requires that in order to preserve the stay a "senior legal official" must at the time of filing the Notice of Appeal certify that the official has approved the filing of the appeal and that there is factual and legal support for justifying the continue detention of the alien.[5]  The Chief Counsel[6] will serve as the "senior legal official" to complete the certification.  If at any point prior to the expiration of the appeal period ICE decides not to file a Notice of Appeal it must advise the Immigration Court and the respondent in writing.[7]

The new provisions direct that an automatic stay ordinarily will remain in effect for a core period of 90 calendar days after the related Notice of Appeal and certification are filed with the BIA.  8 C.F.R. § 1003.6(c)(4).  Because the core 90 day period runs from the date on which the BIA date stamps the Notice of Appeal as officially filed, the final rule directs the BIA to notify the parties of the date the automatic stay is set to expire.

Under particular circumstances, the core 90 day period may either increase or decrease.  For example:
- If the BIA denies the related ICE bond appeal, then the automatic stay period expires within 5 business days from the date of that denial.  The 5 day bridge period allows DHS the opportunity to refer the case to the Attorney General, as appropriate.  8 C.F.R. § 1003.6(d).
- If the BIA grants a respondent's motion for an extension of the bond appeal briefing period, then the automatic stay period is tolled for the same number of days, e.g., if the BIA grants the respondent a 21-day briefing extension, the 90-day automatic stay period would be effectively extended by 21 days as well.  8 C.F.R. § 1003.6(c)(4).
- If ICE files a discretionary stay motion with the BIA because the 90-day automatic stay period is expiring and the BIA has not yet adjudicated the related ICE bond appeal, and the BIA does not adjudicate either the ICE bond appeal or the discretionary stay motion by the end of the 90-day period, then the automatic stay remains in effect until either:  1) the BIA makes a ruling on the ICE discretionary stay motion (or bond appeal), or 2) for a maximum of 30 additional calendar days (for a potential maximum period of 120 days), whichever occurs first.  8 C.F.R. § 1003.6(o)(5).

---

[3] The discretionary (formerly referred to as emergency) stay procedure now used as a matter of administrative practice remains unchanged.  *See* 8 C.F.R. §1003.19(i)(1)(2001)(as amended).  Should an OCC have any questions regarding the discretionary stay process, they should contact ALPLD.

[4] EOIR is in the process of printing a revised Form EOIR-43 reflecting that INS has been abolished and that ICE represents DHS before EOIR.  The attachment reflects the anticipated changes to the form.

[5] ALPLD has drafted a standard certification which Chief Counsel may utilize.  (Attachment 3).

[6] Should a Chief Counsel be unavailable, then the Acting Chief Counsel would be the appropriate certifying official.  As circumstances dictate, the Principal Legal Advisor, Deputy Principal Legal Advisor, Director of Field Legal Operations, or Chief Appellate Counsel may also serve as certifying officials.

[7] ALPLD has drafted a standard notice of withdrawal which the OCCs may utilize.  (Attachment 4).

000250

Memorandum:  Revised Procedures for Automatic Stay                                     **3**
of Custody Decisions by Immigration Judges

- If ICE files a discretionary stay motion with the BIA, and the BIA denies the motion within the 90-day automatic stay period, then the final rule indicates that the automatic stay period will lapse 5 business days <u>after the date of the BIA's denial of the discretionary stay motion</u>. The 5 day bridge period allows DHS the opportunity to refer the case to the Attorney General, as appropriate. 8 C.F.R. § 1003.6(d); *see also* 71 Fed. Reg. 57873, 57875-6 (2006).

As noted, the final rule explicitly allows ICE to file a motion for a discretionary stay (formerly referred to as an emergency stay) with respect to the IJ's custody order if the BIA does not timely issue a decision on the ICE bond appeal within the automatic stay period. 8 C.F.R. § 1003.6(c)(5). <u>Accordingly, OCCs should closely monitor the automatic stay periods for their EOIR-43 cases using GEMS.</u> *See* Attachment 5.  Approximately 15 days before the expiration date of an automatic stay period, i.e., around day 75, the OCC should begin preparation of a discretionary stay motion. Given that an ICE Notice of Appeal and appellate brief will already have been prepared and filed with the BIA, the argument to be included in the motion will generally have already been articulated and reviewed.[8]  After the motion for a discretionary stay is signed and served, it <u>must</u> be faxed to ALPLD for filing with the BIA, as the motion not only needs to be filed with the BIA's Clerk's Office, but also provided to the BIA's stay clerk for prompt adjudication.[9]

Finally, Chief Counsel and all ICE attorneys are responsible for ensuring that an EOIR-43 automatic stay is employed only under the standards set forth in the prior memoranda.  *See supra* note 2 and associated text.  <u>Additionally ICE attorneys are reminded that a briefing extension should not be requested in an EOIR-43 case absent specific approval by ALPLD.</u>  The final automatic stay rule does not replace or in any way limit the use of the discretionary stay under 8 C.F.R. § 1003.19(i)(1) as an independent procedure.  Therefore, ICE may still move for a discretionary stay of an IJ's custody order in situations either not covered by the automatic stay regulations, or those in which, while technically falling within the scope of the automatic stay regulations, the use of an EOIR-43 is disfavored as a matter of policy or litigation strategy.

In all cases, approval from ALPLD must be obtained.[10]  When seeking approval, the ICE attorney should provide ALPLD with copies of all relevant documents, including but not limited to the charging document, the IJ minute order, the Notice of Service Intent to Appeal Custody Redetermination, the EOIR-43 Reporting Form, any conviction documents and an explanation of the IJ's theory behind the redetermination.  Instructions for entering required information and documents into GEMS may be found in Attachment 5.

---

[8] The discretionary stay motion should be captioned "Department of Homeland Security Discretionary Stay Motion in EOIR-43 Case." The initial paragraph of the motion should reference the fact that the case involves an EOIR-43 automatic stay, which is due to expire on "X" date, and that the instant motion for a discretionary stay is being filed with the BIA pursuant to 8 C.F.R. § 1003.6(c)(5).  A copy of the prior BIA notice setting forth the expiration date of the automatic stay period, *see* 8 C.F.R. § 1003.6(c)(3), should be attached to the motion as an exhibit.  Finally, given that the BIA may wish to contact the opposing party for its view on the ICE discretionary stay motion, the certificate of service should reflect that the motion was served on opposing counsel both by fax and regular mail, and also provide opposing counsel's telephone number.  If the respondent is pro se, the certificate of service should reflect personal service (in detention) and provide a telephone number through which the respondent may be contacted.

[9] As jurisdiction over the case will already have vested with the BIA due to the prior filing of the ICE Notice of Appeal, a Notice of Appeal need not be filed along with motion in contrast to other discretionary stay scenarios.

[10] In certain cases approval must also be obtained from NSLD or HRLD in accord with prior guidance.

**000249**

Memorandum:  Revised Procedures for Automatic Stay
of Custody Decisions by Immigration Judges                                    4

These procedures are effective November 1, 2006.  This memorandum is intended solely for the
guidance of DHS personnel in the performance of their duties.  It is not intended to, does not, and may
not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any
individual or other party in removal proceedings, in litigation with the United States, or in any other
form or manner.

**000251**



*Office of Detention and Removal Operations*

**U.S. Department of Homeland Security**
425 I Street, NW
Washington, DC  20536

**U.S. Immigration
and Customs
Enforcement**

MEMORANDUM FOR:    Assistant Directors
Deputy Assistant Dire
Field Office Directors   (b)(6);(b)(7)(C)
Deputy Fie

APR **0 8** 2008

FROM:    (b)(6);(b)(7)(C)    (b)(6);(b)(7)(C)
Acting Director

SUBJECT:    Immigration Bond Policies and Procedures

Purpose

This memorandum establishes the Immigration bond policies and procedures for all field offices.

Authorities/References

Immigration and Nationality Act
Title 8 Code of Federal Regulations
Immigration Bond, form I-352
Department of Treasury Circular 570
Field Financial Procedures (Burlington Finance Center)

Superseded/cancelled policy/Summary of Changes

This memorandum supersedes all previous INS and DHS bond policies and procedures with the exception of those memoranda referenced herein.

Background

DRO bond management administration has undergone substantial progress since 2006.  As a result, the need for updated DRO bond policies and procedures is vital to continue to achieve bond management excellence.   This memorandum provides important updated bond policies, procedures and information.

Discussion

1.    **Immigration Bond Defined**

An immigration bond is a financial agreement between the obligor and the alien in which the Department of Homeland Security is the beneficiary.

SUBJECT:   Immigration Bond Policies and Procedures
Page 2

## 2.    Introduction to Bonds

The primary regulation that authorizes immigration bonds is Title 8 CFR §103.6 which provides authority for the Field Office Director (FOD) to release an alien under the conditions of an Immigration bond.

A bond is a legally binding guaranty by an individual or company (the obligor) in which the obligor commits a certain sum of money to guarantee an alien's compliance with the bond conditions.  The form used to execute immigration bond agreement of all types is the Immigration Bond, form I-352.

If the specified conditions are fully met, the bond is cancelled and any securities or monies deposited are returned, with interest, to the obligor.  If no securities have been exchanged, as is the case with cash and surety bonds, then the surety company is released from its obligation to the Government (8 CFR §103.6(c)).  If the conditions are not fulfilled, the bond is declared breached and the financial deposit forfeited or the liquidated damages recovered by the government (8 CFR §103.6(e)).

The bonds posted with Detention and Removal Operations (DRO) and discussed in this chapter are, specifically, "immigration bonds."  Although delivery bonds comprise the largest group in both numbers and dollars, immigration bonds serve other purposes, also, e.g., setting conditions on an alien's release, enforcing an alien's timely departure, ensuring an alien maintains a valid immigration status and does not violate the conditions under which he/she entered the United States, etc.  Through knowledge and applicability of immigration bond programs and eligibility for release in compliance with 8 CFR §1236.1, FODs must ensure that appropriate actions are taken to protect the interests of the United States and the Department of Homeland Security, Immigration and Customs Enforcement.

## 3.    Bond Types

General - Immigration bonds fall into the two categories, Appearance Bonds, which include Delivery and Order of Supervision Bonds, and Performance Bonds, which include Voluntary Departure, Public Charge, Maintenance of Status and Delivery, and Inadmissibility Bonds.

a)  Appearance Bonds - This type of bond secures the release of an alien in custody to the obligor in return for the obligor's undertaking to produce or cause the alien to be produced to an immigration officer or an immigration judge of the United States as specified in the appearance notice upon each and every written request until the proceedings are finally terminated.  An alien may be required to appear for immigration proceedings, interviews, for any reason deemed necessary by the Field Office Director (FOD), or to be removed from the United States pursuant to an Order of Removal by a court.  A bond is breached when there has been a substantial violation of the stipulated conditions.  A final determination that a bond has been breached creates a claim in favor of the United States, which may not be released or discharged by a field office.  This category includes the following:

LAW ENFORCEMENT SENSITIVE – FOR OFFICIAL USE ONLY
www.ice.gov

SUBJECT:  Immigration Bond Policies and Procedures
Page 3

- <u>Delivery Bond</u> — This is posted for aliens in administrative immigration proceedings. The bond is breached when the obligor fails to "deliver" the alien as agreed, and has failed to comply with the Notice to Deliver Alien, Form I-340 (details in §12.10 below). Cancellation of the bond is when the obligor is in compliance with the bond agreement, which includes, delivering the alien, alien's death, proceedings are terminated, the bond is cancelled, or the U.S. Immigration and Customs Enforcement (ICE) accepts the alien into custody for detention or removal, etc. (8 CFR §212.5(d)(1)) (details in §12.11).  Pursuant to the INA §236(a) (2) (A) the minimum bond is $1,500.00.

- <u>Order of Supervision Bond (OSUP)</u> — If an alien is determined eligible for release after a final order of removal has been issued and has met the regulatory requirements, pursuant to 8 CFR 241.5(a) "*Order of Supervision.* (b) *Posting of bond.* An officer authorized to issue an order of supervision may require the posting of a bond in an amount determined by the officer to be sufficient to ensure compliance with the conditions of the order, including surrender for removal."

- The obligor guarantees the alien's compliance with all requirements (cooperating with efforts to obtain travel documents, surrendering for removal, etc.). Given the number of conditions that may be attached to bonds of this type, you must exercise judgment in deciding whether the violation of a particular condition constitutes a substantial violation resulting in a breach event (see below).  Ensure the alien and obligor understand that a violation of the Order of Supervision conditions, or fails to appear pursuant to a demand Notice to Obligor to Deliver Alien, Form I-340, can result in a breach of the bond. As a general rule, if you find "substantial performance" (compliance with the terms of the Order of Supervision), you should let the bond stand.

- NOTE: There is no conversion of a delivery bond into an OSUP bond.  A deliver bond must be cancelled and an OSUP Bond must be posted in lieu of the delivery bond or the delivery bond may be left in place and an OSUP bond may be posted. Ensure the I-352 form in section "C" contain the following: "Bond conditioned upon completion with an alien's Order of Supervision, form I-220B (attached)."

- An explanation as to the responsibilities associated with posting OSUP bond must be explained to the obligor and a copy of the signed OSUP attached to the obligor and ICE's copies of the bond form.  Update the appropriate DRO databases.

b) <u>Performance Bond</u> - Bonds of this type oblige the alien to meet the standard conditions imposed by his/her immigration status (e.g., a B-2 visa holder cannot work in the United States) or case-specific requirements.  Performance bonds are:

- <u>Voluntary Departure (VD) Bonds</u> – These bonds commit the alien to arrange, finance, and affect his/her departure from the United States by a specified date, in accordance with the conditions specified in the voluntary departure order.  Voluntary departure expires on or before the date issued by the court or by the Agency and cannot exceed 120 days (8 CFR 240.25(c)).

LAW ENFORCEMENT SENSITIVE – FOR OFFICIAL USE ONLY
www.ice.gov

SUBJECT: Immigration Bond Policies and Procedures
Page 4

- <u>Public Charge Bond</u> — This bond is posted to ensure an alien's ability to support him/her without depending on public assistance from any federal, state, or local agency. With enforceable affidavits of support required for family-based immigration since December 1997, the need for public charge bonds has declined. For clarification of the public benefits excluded from public charge determinations, see INS No 1988-1999 Field Guidance on Deportability and Inadmissibility on Public Charge Grounds dating from May 1999 (http://www.acf.dhhs.gov/programs/ofa/fieldgui.htm) (8 CFR 213.1). This bond is generally under to purview of Citizenship and Immigration Services (CIS), and Customs and Border Protection (CBP) Pursuant to 8 CFR § 213.1, the minimum bond is $1,000.

- <u>Maintenance of Status and Departure Bonds</u> — This can be required by a consulate before issuing a nonimmigrant visa, by Inspections prior to admission, by an immigration judge (IJ) prior to admission, or by an adjudicator before granting an extension of stay or change of status; rarely used. This bond is generally under the purview of Customs and Border Protection (CBP) (8 CFR 103.6(c) (2)).

- <u>Inadmissibility Bond</u> — This type of bond is posted to parole certain inadmissible arriving aliens; previously called "exclusion bonds." These bonds are primarily accepted by Customs and Border Protection (CBP) (8 CFR §212.5(d) (1)).

4. **<u>Bond Posting Instructions</u>**

a) <u>Bond-Posting</u> - Any person (including the arrested alien, illegal aliens in proceedings, corporation, or surety company) may post an immigration bond. Individuals and corporations post cash bonds. Surety insurance companies (and their agents) post surety bonds. (Ref: Bond Posting Hours and Release Policies and Procedures, December 18, 2006)

b) <u>Bond Posting Hours</u> -All DRO offices that accept the posting of cash or surety bonds are to service the public between the hours of 9:00 a.m. to 3:00 p.m. local time.

c) <u>Alien Verification</u>- The field office accepting the bond and field office releasing the alien, must identify the alien via name, alien registration, FBI number, date of birth, country of citizenship, etc. It is imperative that the alien identification is verified in order avoid an inadvertent release of any alien from DRO custody.

d) <u>Verify the bond amount</u> - Bond amounts must be based on articulable facts and have a nexus between the alien's compliance with the factors addressed in 8 CFR §236.1(c); 8 CFR §241.3; 8 CFR §241.5, or as set by the Immigration court or Federal Court.

e) <u>Arrange for alien's release</u> – Prior to posting a bond, the FOD or his/her designee must confirm that arrangements have been made to ensure the alien's

LAW ENFORCEMENT SENSITIVE – FOR OFFICIAL USE ONLY
www.ice.gov

SUBJECT: Immigration Bond Policies and Procedures
Page 5

timely and safe release. If the alien cannot be released upon the posting of the bond due to technical reasons, then the alien's release should occur as soon as possible thereafter. The release of the alien should be coordinated with all parties involved, the detention facility, the field office(s), the obligor and the alien.

f) Verify alien's release – Immediately upon posting of the bond, the field office accepting the bond must ensure the alien is timely released from custody.

## 5. Cash Bond Posting Procedures

a) Cash Bonds Defined - The individual or corporation must post the full amount of the bond in cash or cash equivalent, in the form of cash (U.S. dollars only); cashier's check; certified check; or money order. Checks and money orders must be made payable to the "Department of Homeland Security" or "Immigration and Customs Enforcement". For security reasons, variations or abbreviations i.e. DHS or ICE are not acceptable. Field Office Directors have the discretion to determine which form of payments is acceptable. In order to accept cash, the FOD must ensure adequate physical security standards are maintained. (Ref: INS Fee Collection Procedures)

b) Request identification from the obligor - The obligor may present any U.S. government- issued photo identification including, but not limited to, passport, military ID, resident-alien card, driver's license. Be sensitive to the fact that the obligor may be a U.S. citizen. ICE will accept any government issued photo identification presented by the obligor. (*Most states now require legal status in the United States to obtain a Drivers License.*) If the authenticity of the photo-ID presented by the obligor is questionable, consult your supervisor. (See Director's memorandum entitled *Confiscation and Return of Original Documents,* dated July 14, 2006)

*Note*: **Officers, Special Agents and Immigration Enforcement Agents have the legal authority to question or determine alienage under the INA. The Office of Principal Legal Advisor (OPLA) has established that pursuant to current regulations and authority, Bond Control Specialists, Deportation Assistants and Clerks can sign receipts (Form I-305); however, other official documentation must be signed by authorized Officers, Special Agents and Immigration Enforcement Agents.**

All identification presented by the obligor must be photocopied and attached to the bond documents and placed in the A-file.

c) Status of obligor - Aliens posting bonds must either be lawful permanent residents (LPR), alien placed in removal/exclusion proceedings, or be a final order alien on an Order of Supervision. When an alien with no legal status in the United States appears to post a bond, he/she should be placed in removal proceedings. Once served with their Notice to Appear, Form I-862, he/she may post the bond. An alien, subject to a

SUBJECT:   Immigration Bond Policies and Procedures
Page 6

Final Order of Removal who appears to post a bond must be taken into custody and have custody status determined by the Field Office Director. If released, the alien must be issued an Order of Supervision with /or without an Order of Supervision Bond.

d) Social Security and Tax Identification Numbers (SSN and TIN) - A bond cannot be denied or refused if an obligor does not produce a social security or tax identification number. Note: The Office of Principal Legal Advisor (OPLA) has determined that the requirement to present valid social security numbers or tax identification numbers pursuant to 31 USC §7701(d) applies to cash bonds and surety bonds. If the obligor or surety does not provide a TIN/SSN, they are subject to backup withholding of the interest payments. Government payments to a foreign address are an automatic 30% withholding on the interest payment.

e) Eligibility for release - The Field Office Director (FOD) is ultimately responsible for the release of an alien in the custody of Immigration and Customs Enforcement (ICE). Therefore, it is every employee's responsibility to ensure that the release of an alien on bond is in compliance with the Immigration and Nationality Act and regulations and that all documentary evidence requirements have been met. Review the alien's identity and file to verify custody status and eligibility for release on bond. Ensure that the Field Office Director or his/her designee has authorized the release of the alien. When an alien is in the custody or detained by a law enforcement agency other than ICE, no immigration bond may be posted.

f) Quality control - When you have completed the above verifications, you may ask a Detention and Removal Assistant (DRA) to prepare the bond forms. Although quality control is everyone's responsibility, ultimately it is the Deportation Officer, Immigration Enforcement Agent or the Bond Control Specialist's responsibility to ensure completeness and accuracy of the bond forms before the bond is posted. It is recommended that the Deportation Officer, Immigration Enforcement Agent or Bond Specialist initial the documents before the bond be posted.

g) Bond log - Obtain the bond number from the cash bond logbook and enter it in the space provided for "Bond Receipt No." at the top right-hand corner of the immigration bond contract, Form I-352.

Enter into the cash bond logbook immediately after the bond receipt number: the alien's name and address; the obligor's name and address; the sum deposited, and the current date.

h) Prepare the I-352 - Have the obligor sign where indicated (boxes "D" and "I"). With an ICE employee witnessing the transaction, complete section "J".

By completing box "E," the Field Office Director approves the transaction.

Prepare receipt for U.S. Bonds or Notes, or Cash, Accepted as Security on Immigration Bonds, form I-305, recording the cash or securities deposited with the Department

SUBJECT:   Immigration Bond Policies and Procedures
Page 7

(DHS) to guarantee the bond.  It is recommended that all cash transactions be witnessed by a DHS employee (Ref:  INS Fee Collection Procedures).

Give a copy of Form I-352, the original I-305 to the obligor, and any bond riders (additional conditions) agreed to by the obligor (Ref: 8 CFR §103.6(a) (2)).  If the alien is detained locally, place the original I-352 and a copy of the I-305 in the alien's administrative file.  Forward copies of both documents to the Burlington Financial Center, (BFC) with the deposit ticket, Form SF-512 and the schedule of collections, Form G-254.

i)  Document transmittal - If the alien is detained elsewhere, send the originals to the File Control Office (FCO) via overnight delivery.  Send the BFC a Notice-Bond Location Transfer, form I-350, for notification of a change of the File Control Office (FCO).

Upon bond posting completion, ensure that a Deportation Officer or Immigration Enforcement Agent is notified.  Ensure the appropriate FCO or detention facility receives the appropriate documents in order to release the alien.

j)  Verification of alien's release - Upon execution of the immigration bond, the field office accepting the bond must ensure that the alien is released in a location that is safe and where public transportation is available.  The alien should be release without delay, but not released during late night hours and/or in a location that is unsafe.

k)  Database updates - Update the Deportable Alien Control System (DACS), EARM, and EADM. On the BOND screen, enter the amount deposited (BOND-AMT-POSTED); the type of bond ("C" for cash or "S" for surety), the bond number (BOND-NUM), and the post date (DATE-BOND-POST), along with the obligor's name and address (OBLIGOR). On the BIOS screen, enter the alien's new address. Note other details on the Case Comments (CCOM) screen.  Update the CRIM screen with all criminal charges and convictions.  Within DACS, the CCOM should clearly reflect the type of bond posted, additional requirements placed upon the alien, if any.

l)  Stamp - "BOND POSTED" on the front of the A- file jacket, along with the posting date.

See *Bonds Field Financial Procedures*, section 1 (http://ofm.ins/static/pdf/bonds.pdf); see also *DACS User Manual*, sections 4.3.4 and 4.3.5 (Appendix 36-1, below).

6.  **Surety Bond Procedures**

a)  Surety Bonds - The surety company or agent on their behalf must provide a power of attorney (the legal instrument authorizing the agent to execute the immigration bond on the surety company's behalf, and to obligate money equal to at least the amount of the bond.) If the power of attorney specifies a monetary limit, e.g. $5,000, the agent can post bond up to the specified amount only.  The agent may not combine two or more

LAW ENFORCEMENT SENSITIVE – FOR OFFICIAL USE ONLY
www.ice.gov

powers of attorney to post a bond.  No cash, check, or other collateral is required at the time the bond is posted.

The power of attorney must specifically authorize the posting of an immigration bond; otherwise the surety company may dispute the agent's authority to act on its behalf.

Treasury Department Circular 570 lists all surety companies approved to post bonds with the U.S. Government.  Copies are available in all ICE offices and on the Internet, at http://www.fms.treas.gov/c570/c570.html#certified.

Surety companies assume financial responsibility and risk as obligors, to ensure delivery of the bonded alien. A Surety Company (or the company), agency or the bonding agents working on the company's behalf, shall deliver an alien as required. An alien taken into custody by an agency or agents working for or on behalf of a surety company shall ensure the safety, health and welfare of the alien, and assumes such responsibility until that alien is properly turned over to DRO.

The surety company or agent on their behalf may prepare the form I-352; although this may expedite the bond posting it is not recommended for security and liability purposes.  However, if it is allowed, a Deportation Officer, Immigration Enforcement Agent, or a Bond Control Specialist must review and initial these forms for completeness and accuracy before accepting the bond on behalf of the Department of Homeland Security.

To do so, follow the same procedures indicated above for Cash Bonds, except as indicated below:

b) Power of Attorney - Verify the validity of the power of attorney provided by the surety agent by checking the maximum amount and the expiration date before attaching it to the bond contract. Remember that the power of attorney must specifically authorize the agent to post an immigration bond. The name on the Power of Attorney must correspond to the agent's name on the I-352.

c) Surety Bond Logbook - Obtain the bond number from the surety bond logbook, and enter it in the space provided for "Bond Receipt No." at the top right-hand corner of the I-352. Check that "-S-" (for surety) appears between the location code and logbook number, e.g., ELP-S-3456. (ELP is the three code (FCO) for El Paso.) Cash bond numbers have no middle component, so are shorter. (Note, however, both "-C-"and "-S-" appear in BFC's bond-numbering system, e.g., ELP-S-3456; ELP-C-5498).

Enter into the surety bond logbook, immediately after the bond receipt number: the alien's name, number, and address; the obligor's name and address; the bond amount; and the current date.

d) Bond form Completion - Have the surety agent complete boxes "D" and "F" on the I-352. After providing the date where indicated, he/she must sign box "D" twice: as

obligor (exercising power of attorney) as well as agent. Likewise, completing box "F" will require the agent to answer for the surety company and for him/herself, providing both tax ID numbers, as required.

Provide the agent with two copies of the I-352: one to retain, the other to file with the surety company underwriting the bond. If the alien is detained locally, place the original I-352 and power of attorney in the alien's administrative file. Forward copies to the BFC.

e) Release of Alien - Upon bond posting completion, ensure that a Deportation Officer or Immigration Enforcement Agent is notified that that the bond process has been completed and the release notification will be forwarded to the appropriate detention facility or personnel to release the alien.

f) Update DRO Databases – As indicated above.

See *Bonds Field Financial Procedures*, (http://ofm.ins/static/pdf/bonds.pdf); see also *DACS User Manual*, sections 4.3.4 and 4.3.5 (Appendix 36-1, below).

g) Release of Obligation – The obligor must comply with the terms and conditions contained within the version of the Immigration Bond, form I-352 on record (Ref: Declarations of Breach memorandum 04/06/05.).

h) Breach of Immigration Bond – If the obligor fails to comply with the terms and conditions contained within the version of the Immigration Bond, form I-352 on record the bond shall be immediately breached as of the date of the breach event. (Ref: Declarations of Breach memorandum 04/06/05.).

7. **Bond Processes**

a) Bond Determination Defined – Title 8 CFR §1003.19 explains the custody and bond determinations made by ICE may be reviewed by an Immigration Judge pursuant to 8 CFR §1236.

b) Notice of Custody Determination, Form I-286, is used to advise the alien of the custody determination, bond amount for release, and the right to a custody/bond re-determination. Each alien who is placed in a removal or an inadmissibility proceeding is to be issued this form. This form is used to begin any pre-final order bond processing. Provide a copy of this form to the alien and the original is to be filed in the A- file.

c) Bond Amount. Bond amounts must be articulable and have a nexus between the alien's compliance with the factors addressed in 8 CFR §1236.1(c); §1241.3; §1241.5, or as set by the Immigration Court, or Federal court.

8. **Bond Re-determination**

LAW ENFORCEMENT SENSITIVE – FOR OFFICIAL USE ONLY
www.ice.gov

General - At any time during removal proceedings, the alien may request a bond re-determination from the Field Office Director. If dissatisfied with the Field Office Director's, the alien may request a custody re-determination before an immigration judge and if dissatisfied with the immigration judge's decision, the alien may file an appeal with the Board of Immigration Appeals (BIA).  Upon exhausting all administrative avenues an alien may appeal his custody/bond determination with the use of a Writ of Habeas Corpus to the federal court or federal appeals court with jurisdiction over the case. (8 CFR §1003.19; §1236.1)

a) ICE Appeal - Through the Chief Counsel or the United States Attorney, ICE may also appeal the immigration judge's bond decision to the BIA or through the federal courts.

b) Release Pending Bond Re-determination - Although re-determination hearings take place quite promptly, some aliens/obligors prefer not to wait. In such cases, at the Field Office Director's discretion, the alien may be released pending bond re-determination if the full amount of the bond being requested to be reduced, is posted.  (It is recommended that release of the alien not occur if a re-determination hearing is imminent)

Processing a Bond after Re-determination.

a) Alien is not in custody - a Notice to Obligor to Deliver Alien, Form I-340, must be sent to have the alien appear for custody re-determination.

b) Surety bond - must be cancelled if the amount is different. The surety company must post a new bond in the revised amount with a new power of attorney.

c) Cash bond - amounts can be increased or decreased without necessarily canceling the bond and re-issuing, see *Bonds Field Financial Procedures,* sections 8 and 9 (http://ofm.ins/static/pdf/bonds.pdf).

d) DRO Database Updates - Record any re-determination of the bond amount in the DACS BOND screen. Enter the date (BOND-RED-DATE) and the new amount set by the FOD, Officer in Charge, IJ, or BIA.  Update, BIOS in EARM/EADM with any updated information and CCOM with who re-determined bond amount.

9.    **Bond Miscellaneous**

a) Voluntary Departure (VD) Bonds - If the immigration judge (IJ) granting voluntary departure requires the posting of a voluntary departure bond, the alien must post the bond within five business days after the IJ's order. This requirement is absolute, whether or not the alien plans to appeal.

b) Appeal filed, fails to post ordered VD bond - If the alien does not post bond within five days of the order by the IJ, but files an appeal, the Voluntary Departure Order is

LAW ENFORCEMENT SENSITIVE – FOR OFFICIAL USE ONLY
www.ice.gov

vacated, and becomes a final order of removal.  However, the order is not final until such time as the Board of Immigration Appeals (BIA) renders its decision.  The alien will therefore be appealing a removal order, not a grant of voluntary departure. Immediately notify the Office of the Chief Counsel of the alien's noncompliance, to ensure counsel can so inform the BIA of the alien's failure to comply with the IJ's order.  Until a decision is rendered on the appeal, the alien's order of removal is not final.

c) <u>No Appeal Filed</u> - If the alien fails to post the bond within five days of the IJ's order and has not filed an appeal, the Voluntary Departure order is vacated—the Alternate Order is effective date of the IJ order.

d) <u>DRO Database Updates</u> - Update CASS screen's CASE-CAT field to reflect a case status (5B, 8E, 8I) and CCOM with the "failure to post bond in timely matter and is a failure to comply with the IJ's order". Route A-file to the Fugitive Operations Team (if applicable), or the non-detained docket.

e) <u>Revocation of Bond</u> - The Secretary of DHS may at any time may revoke a bond or parole under subsection (a), arrest the alien under the original warrant, and detain. (8 USC §1253; INA §243(b); 8 CFR §241.1(l))

f) <u>Placing a Detainer on a Bonded Alien</u>. A bonded alien taken into custody by another law enforcement for a violation of federal, state or local law, shall be considered to have violated his conditions for release pursuant to 8 CFR §241.1(l) (1) & (2) and a Immigration Detainer – Notice of Action, Form I-247 shall be placed served on the law enforcement agency and the detention facility in which the alien is being detained.  This notice informs that agency to contact ICE. ICE shall take the alien into custody. The Field Office Director will conduct a custody re-determination.  Pursuant to Declarations of Breach of Delivery Bonds, dated April 6, 2005, a bond will be cancelled upon notification to ICE that a bonded alien will be kept in custody for more than 30 days.

g) <u>Multiple Bonds</u> – If more than one type of bond i.e. Voluntary Departure Bond and Delivery Bond, OSUP Bond, etc. is required to be posted, then it is important to ensure that DACS CCOM reflects the same information that would be normally inputted into DACS BOND screen as it is incapable to reflect more than one active bond.

h) <u>Courtesy Bond</u> – Is when a bond is posted at a field office, sub-office or facility on behalf of another jurisdiction.  The jurisdiction where the alien is detained should also be the File Control Office (FCO) and the DACS Control Office (FCO).  That office should make any custody/bond determinations.

i) <u>Stamps</u> – "Placed Bond Posted", "Breached", "Cancelled" stamps on the outside of the A- file folder that flags the case as one with an active bond, as well as a reminder to monitor the bond at each stage of the removal process and to prevent the file from being prematurely retired to the Federal Record Center or National Records Center.  If stamps are unavailable, write this information on the A-file jacket.

j) <u>Call-Up Dates</u> - Maintain control of a bond docket by calling-up and reviewing the cases on a regular basis. Call-up dates are the key to successful docket management, signaling when to next review the case to check on its status (extended case call-up dates of six months or more are <u>not</u> recommended.) and take any docket action required.

- Give your delivery and voluntary departure bonds call-up dates that allow you to review each case for appropriate action within a few days of an order, a hearing, an appeal, a stay, a demand, or a grant of relief. The most appropriate call-up will depend upon a combination of factors: the case category, individual circumstances, etc.

- Assign call-up dates for voluntary departure files based on the date the voluntary departure status expires. The burden of proof for compliance is upon the obligor. The alien must have departed on or before the date to which voluntary departure is granted. The obligor must provide ICE proof of alien's departure within the specified time.

k) <u>DRO Database Updates</u> - The FCO is responsible to ensure BOND, BIOS, CCOM, etc. screens are updated with all relevant alien and bond information. (Notice: Field Office Directors have discretion on accepting *courtesy bonds* and FCOs failure to update DACS reflects negatively on the office location where the bond is posted.)

l) <u>CCOM</u> - Use the Case Comments screen (CCOM) in DACS to record information not captured on the Bond Summary (BOND) screen. The BOND screen limits entries to preset data fields; it has no "other" section for notes. CCOM is where specific case information and status can be obtained, and the importance of ensuring conveyance of any additional information to others cannot be stressed enough.

m) <u>Transferring the File Control Office (FCO) and DACS Control Office (FCO)</u> - When a bonded alien is granted a change of venue, or the A-file is transferred ensure that the File Control Office (FCO) is transferred. Complete the Bond Location Notice, Form I-350, and forward a copy to the BFC. (Note: Failure to transfer FCO in DACS will result in the FCO reflected in DACS fully responsible for the DACS case and its updates.)

n) <u>Changing Obligors (Processing Bond-Ownership Transfers)</u> - To transfer ownership of a bond, a new Immigration Bond, form I-352, must be completed by the new obligor. Upon the posting of the new bond, the existing bond will be cancelled. (The Designation of Attorney in Fact, Form I-312 <u>cannot</u> be used to change obligors.)

o) <u>Designation of Attorney in Fact, Form I-312</u> - This form was designed for deposits of cash or U.S. bonds pledged for the release of aliens in accordance with the terms of the Form I-352. As the label on the form indicates, the form is to be used to appoint the Obligor's attorney in fact "To accept return of United States Bonds or notes deposited to secure Immigration bond," if the obligor has questions about the I-312, contact the Bond Branch at the BFC. When the obligor submits the form, check for completeness

SUBJECT: Immigration Bond Policies and Procedures
Page 13

10. **Demands on Bonds**

a) <u>General</u> - Pursuant to the immigration bond's terms and conditions of a Delivery Bond, the agency is to use the Notice to Obligor to Deliver Alien, Form I-340, to have the obligor present the alien when requested.

b) <u>Purpose and Usage</u> – A Demand Notice may be served upon the obligor to have the alien presented for whatever purpose the agency deems necessary. The *"Purpose"* portion of the demand notice may or may not be completed as it is not part of the Terms and Conditions of the Immigration Bond, form I-352.

c) <u>Recipient(s) of Notice</u> – An I-340 is to be sent to those obligors (Surety, Agency, or both) indicated on the Immigration Bond, form I-352. (With only the Amwest Settlement exceptions see below, the notice may also be sent to the alien and the attorney of record.)

d) <u>Notice to Surety through Agent</u> - Send notices, demands, etc., to the agent at the address of record in the bond contract, with copies to the surety company. Ensure ICE complies with the obligor's mailing instructions per block A of the I-352. If the bond does not provide the surety's address, you have the option of forwarding the surety's copies to the company's headquarters.

e) <u>Service of Notice</u> – Service on the obligor of the I-340 may now be sent using United States Postal Service (USPS) Delivery Confirmation, PS Form 152, in lieu of the PS Form 3811 Domestic Return Receipt Requested ("Greenie"). (Note: This does not preclude the discretionary use of the "Greenie" or Delivery Confirmation on all other bond documents as a form of service.) This bar coded and numbered portion of the PS Form 3811 shall be properly affixed to the envelope being sent to the obligor, and the completed receipt portion of the PS Form 3811 stapled to the file copy of the demand notice. The postal tracking number shall be written on the notice and entered into DACS CCOM. This information must include the date of mailing and initials of the person sending the notice, for example, *"[Date], Delivery Confirmation #0305 2710 0002 1673 8045 [print initials]."* (Ref: Service of Notices Relating to Immigration Delivery Bonds (11/05/2007))

- Verification of delivery status (Delivery Confirmation or Return Receipt Requested) shall be completed within **30 days** of service at <u>WWW.USPS.COM</u> *Track and Confirm* website. Simply go to the Track and Confirm website and type in the postal tracking number. The print-outs shall be placed on the right hand-side of the A-file.

- Prior to service of a Form I-323 Notice – Immigration Bond Breached on the obligor ensured that a printout of the delivery confirmation from the USPS

LAW ENFORCEMENT SENSITIVE – FOR OFFICIAL USE ONLY

www.ice.gov

SUBJECT: Immigration Bond Policies and Procedures
Page 14

website for the Form I – 340 Notice to Deliver Alien has been placed on the right-hand side of the A-file.  Upon the filing of a Notice of Appeal or Motion, form I-290B, delivery confirmations relating to the immigration bond must be included in all Records of Proceedings submitted to the Administrative Appeals Office (AAO).

Note:  Addendum to Declarations of Breach of Delivery Bonds memorandum (04/06/2005/) are as follows:

- The 2005 Memorandum recognizes that certain limited sureties are entitled to have the settlement agreement dated September 10, 1997 ("Amwest Settlement II") taken into consideration when issuing a Declaration of Breach, i.e. Form I-323, Notice - Immigration Bond Breached.  In addition to the companies listed in the 2005 Memorandum, American Surety is also entitled to such consideration.

- <u>Paragraph 2</u>: Paragraph 2 of the 2005 Memorandum should be replaced with the following language:
- <u>Paragraph 2</u>: A Notice - Immigration Bond Breached, Form I-323, <u>will not</u> be issued when the demand for delivery, Form I-340, is not served on the obligor or co-obligor (if any) in the appropriate manner provided by policy memorandum entitled Service of Notices Relating to Immigration Delivery Bonds or unless otherwise prescribed.
- <u>Paragraph 3</u>: Paragraph 3 of the 2005 Memorandum should be replaced with the following language:
- <u>Paragraph 3</u>  A Notice - Immigration Bond Breached, Form I-323, <u>will not</u> be issued when the demand for delivery is not mailed to the address of the obligor or co-obligor (if any) specified on the bond, Form I-352, or, if applicable, to the new address of the obligor or co-obligor (if any), as provided in writing.

o    Other than the foregoing clarifications, the 2005 memorandum remains effective.

<u>Service and the Amwest Settlement Agreement</u> – Settlement rules only apply to the companies addressed in the Declarations of Breach of Delivery Bonds memorandum (04/06/2005/) <u>Amwest Surety Insurance Company ("Amwest"), Far West Surety Insurance Company ("Far West"), AAA Insurance Company and Gonzales and Gonzales Bonds and Insurance Agency ("G & G"), but only when G & G acts as agent for Amwest, American or Far West.</u>

- Send demand notice to obligor three days before anyone else.
- Complete Amwest questionnaire and attach photo copy of picture of alien.
  (Do not apply these rules to other sureties)

f)  <u>Surety Company Change of Address</u> – A separate obligor's change-of-address notification is required for each outstanding bond.  The notification will include the obligor new address, the bonded alien's information.

g) <u>Surrender Location</u> - An alien may appear at any DRO office and must be accepted by and processed by that office (see Bond Backlog Reduction Project, (October 17, 2006)). It is therefore recommended that the notice state the specific place of appearance, but also indicate "or the nearest Detention and Removal Office".

h) <u>Date of Delivery</u> – The date of delivery should be ten (10) or more business days from the date of the notice and may be for a span of time i.e. "Alien to be delivery within five days of May 6, 2008."

## 11.  **Delivery of an Alien**

a) <u>Delivery of Bonded Alien</u> - An alien taken into custody by an agency or agents working for or on behalf of a surety company shall comply with any Notice to Obligor to Deliver Alien, Form I-340 (demand notice).

b) <u>Delivery Pursuant to a Demand</u> – No DRO office may refuse the acceptance of an alien upon an obligor's delivery of that alien pursuant to a Notice to Obligor to Deliver Alien, form I-340. However, it is within the discretion of FOD to determine taking that alien into custody unless otherwise noted within this memorandum.

c) <u>Early Delivery of an Alien</u> - An obligor may surrender an alien before a specified date; however the obligor must submit a request or make prior arrangements to the Field Office Director (FOD). The request must contain a brief explanation as to the reason they wish to deliver the alien, as well as include date, time and place the obligor wishes to deliver the alien. The FOD will consider an early surrender of the alien. The FOD's decision is discretionary.

d) <u>Delivery of Final Order Alien</u> – An obligor may deliver an alien subject to a final order without notice. The field office must take custody of the alien and cancel the existing bond, unless the alien is to be released on an Order of Supervision and the current obligor wishes to remain the obligor. (See *Accepting Delivery of Final Order Aliens,* dated May 1, 2003; *Declarations of Breach of Delivery Bonds* memorandum, dated April 6, 2005). Exception:  If the alien has been complying with an Order of Supervision and the obligor cannot articulate an OSUP violation or flight risk the field office is not required to accept the alien and the bond may be continued.

e) <u>Receipt to Obligor for Alien's Delivery</u> – Upon each delivery of the alien, the field office will notate such action on the form I-340 and return that form to the obligor. The notation and the case comments in the DRO database will be the following *"Alien timely delivered to [DCO] pursuant to demand on [date]. Alien was [taken into custody and the cancelled] [not taken into custody and the bond left in place]. [Print and sign officers name.]"*.

f) <u>Extensions beyond delivery date</u> - Before the surrender date, the obligor may request a date of delivery beyond the date of appearance on the Form I-340. The Field Office Director has the discretionary authority to approve or disapprove the obligor's request.

**LAW ENFORCEMENT SENSITIVE – FOR OFFICIAL USE ONLY**
www.ice.gov

SUBJECT: Immigration Bond Policies and Procedures
Page 16

A memo to file, updates to DRO databases and a corrected I-340 must reflect the newly scheduled date, time and place. If changes are annotated on the Form I-340, they must be dated and initial by the ICE official unless a new I-340 is provided. Provide a copy of the corrected or revised copy to the alien, obligor, and the A- file.

g) Delivery of an Alien to Other Location - If exigent circumstances arise the alien may be delivered to a DRO office other than the one indicated on the Notice to Obligor to Deliver Alien, Form I-340. The alien may be surrendered/delivered to the nearest DRO office where that alien was apprehended, e.g. alien resides or is apprehended in New York and form I-340 indicates alien is to appear in Detroit Field Office. Delivery of the alien to the New York Field Office would be the appropriate course of action.

h) Date and Time of Delivery of Bonded Alien - Except if otherwise arranged or otherwise indicated on the I-340, the alien shall be delivered to the appropriate DRO office during normal business hours, normal business days.

i) Acceptance of a Bonded Alien - Upon delivery of a bonded alien pursuant to a demand notice, the alien may be taken into custody and a written receipt shall be provided to the delivering party and the bond shall be cancelled. If however, the Field Office Director or his/her designee determines the alien shall not be taken into custody the delivering party shall be immediately notified in writing that the surety bond will be continued. All bonded aliens must be thoroughly processed (Ref: Bond Backlog Reduction Project memorandum 10/18/06.).

j) Receipt to Obligor for Alien's Delivery - Upon each delivery of the alien, the field office will notate such action on the form I-340 and return that form to the obligor. The notation and the case comments in the DRO database will be the following "Alien timely delivered to [DCO] pursuant to demand on [date]. Alien was [taken into custody and the (cancelled) (breached) (mitigated)] [not taken into custody and the bond left in place]. [Print and sign officers name.]"

k) Verification of the Alien's Wellbeing - Before acceptance of the bonded alien, the alien shall be quickly interviewed, away from the delivering parties to ensure that they have been appropriately cared for and neither harmed nor abused. If any form of abuse is noted or reported by the alien, local authorities shall be notified immediately and a report shall be filed. A memorandum to the Field Office Director shall be completed by close of business and added to the aliens file.

l) Final Order Aliens - An obligor may deliver an alien subject to a final order of removal, which is not on a current Order of Supervision, without notice to the nearest DRO office. In accordance with policy memorandum entitled Accepting Delivery of Final Order Aliens (May 1, 2003) all final order aliens must be accepted by field offices. Therefore, upon delivery of a final order alien, the bond must be cancelled and a new custody determination rendered unless otherwise arranged with the existing obligor. (Upon issuance of a final order of removal/deportation, and although the alien may have posted a bond prior to issuance of that order, he/she must comply with that

SUBJECT:   Immigration Bond Policies and Procedures
Page 17

order or report to the nearest DRO office to have their post order custody determined.
If it is determined that the final order alien is eligible for release pursuant to 8 CFR
§1241.4, then pursuant to 8 CFR §241.5(a) he/she *shall* be released pursuant to an order
of supervision and may also have the additional compliance tool of an Order of
Supervision Bond (OSUP Bond) placed upon him/her.)

## 12.   Substantial Performance; Substantial Violation

To promote compliance and prevent careless but consequential mistakes, take the time to
explain "substantial performance/compliance" and "substantial violation" to both obligor and
alien before releasing the alien into the obligor's custody. Spell out the responsibilities of the
bonded alien and obligor; if necessary, go over the technical language in the bond contract.

Compliance with the conditions specified on the bond, allowing for minor or technical
exceptions, will satisfy the requirement for "substantial performance." The burden of proof of
substantial performance rests with the obligor. A finding of substantial performance releases
the obligor from liability (8 CFR 103.6(c) (3)).

## 13.   Procedures for Breaching Bonds

a) Breach Event— The breach event occurs on the date the obligor fails to comply with
the conditions of the bond (aka substantial performance violation), i.e. failure to appear,
failure to maintain status, failure to depart, failure to comply with Order of Supervision,
etc.

b) Breach Date – The breach date is the date reflected on the Notice of Immigration Bond
Breach, form I-323.  Until the execution and service of the I-323 the bond remains in
full force and effect.

c) Delivery Bond Breach Event – The Delivery Bond breach event occurs when the
obligor fails to timely deliver an alien pursuant to a Notice to Obligor to Deliver Alien,
form I-340.  The breach event date is the date or last date the obligor had to deliver the
alien reflected on the demand notice.

d) Order of Supervision (OSUP) Bond Breach Event – This type of bond is breached
when the alien fails to comply with the conditions of the OSUP, form I-220B and/or
fails to appear in accordance with a demand notice or pursuant to the conditions of the
OSUP.  The breach event date is the date the alien violated the OSUP or failed to
appear pursuant to demand or the OSUP.

e) Voluntary Departure (VD) Bond Breach Event – This type of bond is breached when
the alien fails to depart on or before the date specified.  (The burden of proof to provide
verification of departure/compliance of the voluntary departure order is upon the
obligor.)  If ICE does not receive verification of departure within 30 days of the
required date of departure, the bond will be breached.   The Breach event occurred the
date the alien was required to depart the United States.

LAW ENFORCEMENT SENSITIVE – FOR OFFICIAL USE ONLY
www.ice.gov

f) <u>Notice—Immigration Bond Breached, Form I-323</u> – This notice is to inform the obligor of his/her failure to comply with the conditions set when the bond was posted and has resulted in the bond being breached.  The notice of rights to appeal that decision is also included.  This must be specific in detailing what violation occurred that resulted in the breach action (Original to A-file). Upon service of the form I-323, no further bond actions are required unless an appeal is filed (see below *Bond Breach Appeals)*.

g) <u>Recipients of Notice of Breach</u> – The form I-323 and I-290B is to be served upon the obligor(s) indicated in Pt. A of the I-352.

h) <u>Service of Notice of Breach</u> –The form I-323, shall be served on the obligor via regular mail with the Notice of Appeal to the Administrative Appeals Office, Form I-290B.

i) <u>DRO Database Updates</u> – Immediately upon completion of breach notification, all DRO databases must be appropriately updated.

j) <u>Breach Finalization</u> – Unless an appeal is filed, the BFC will administratively finalize the breach 60 days from the date the breach notice is served.  (See Final Breached Bond Procedure, (October 17, 2006))

k) <u>Bond Absconder</u> – Upon execution of the breach bond documents, the alien is now considered a Bond Absconder (See below).

l) <u>Overturned decisions</u> – Unless the Administrative Appeals Office (AAO), FOD or Federal Courts overturn the breach, the decision stands.  If the breach decision is overturned the decision must be reflected in CCOM and the BFC must be notified.  If the FOD does not agree with the AAO decision, the FOD may follow the Motion to Reopen (MTR) instructions below to reopen the bond.

For additional guidance for breaching cash and surety bonds, see *Bonds Field Financial Procedures*, sections 5 and 6 (http://ofm.ins/static/pdf/bonds.pdf).

14.   <u>Mitigation</u> – See Supplemental Guidance to Accepting Final Order Aliens memorandum (05/12/2003).

15.   <u>Bond Appeals</u>

a) <u>General</u> - Pursuant to 8 CFR §103.3 and DHS Delegation 150.1(March 1, 2003), the Administrative Appeals Office (AAO) has jurisdiction and adjudicates cases involving immigration bond breaches.  Both the agency and the appellant are required to comply with filing instructions provided by the form and the regulations.

b) <u>Filing an AAO Appeal</u> - The obligor has 30 days from the date of issuance (33 days if the notice was mailed) during which to submit the I-290B, Notice of Appeal, to the ICE field office that issued the breach. If the last day to file falls on a Saturday, Sunday, or

legal holiday, the filing period will be extended to the next business day.  The obligor must follow the instructions as set forth in 8 CFR 103.3.

c) <u>Rebuttal Brief in Support of Agency Position</u> - DRO will submit an agency brief rebutting the appellant's argument and supporting the agencies position.  The Field Office Director or his/her designee shall sign this brief.  This will be the cover sheet to every Record of Proceedings (ROP) that is forwarded to the AAO.

d) <u>Date and Time Stamp</u> – The appeal Form I-290B will be stamped with the time and date of receipt. If no stamp is available the date and time shall be written on the appeal and name shall be legibly signed, printed, and office location.  On the Notice of Breach of Bond, Form I-323, record that an appeal was filed and the date; forward a copy to the DMC.

e) <u>Improperly Filed Appeals</u> – These actions will be automatically rejected set forth in 8 CFR 103.3(a) (2) (v).  The rejection shall be in the format provided with a complete narrative and the regulatory basis of the rejection.  It shall be signed by the Field Office Director or by a designee with his/her signature authority.  Any funds submitted with an improperly filed appeal shall not be returned with the rejection notice (8 CFR 103.3(a) (2) (v) (B) (1)).  The notice shall be sent out using U.S. Postal Service Delivery Confirmation service.  Examples of improperly filed appeals are, untimely (unless a brief is filed in support of the appeal), insufficient funds or invalid means of paying filing fees (e.g., bounced check or other financial instrument returned as non-payable), and a person or entity other than the obligor, the obligor's attorney of  record, or the surety agent.

f) <u>Untimely</u> – A declaration of breach not appealed during the filing period is administratively final. An appeal received after the deadline is ineligible for AAO review but may, if it meets the requirements, be processed as a motion to reopen or reconsider (8 CFR §103.3(a)(2)(iii)).

g) <u>Processing the Appeal</u> - Upon DRO's receipt of an appeal, the appeal will be reviewed and if appropriate forwarded to the AAO with the ROP within 30 days.  The case must be reviewed in its entirety to determine whether arguments presented on appeal overcome the basis of the breach. If the grounds of the appeal seem prima facie valid, the officer in charge may treat the appeal as a motion to reopen or reconsider. If, after reviewing the case, the officer in charge finds the breach justified, you must promptly prepare a Record of Proceeding (ROP) and forward the appeal to the AAO.

h) <u>Officer-Initiated Reconsideration</u> - You may receive information that, if obtained earlier, would have resulted in some outcome other than the bond's being breached (e.g., alien was incarcerated or had already departed in accordance with a grant of voluntary departure). In those cases, the officer in charge has the discretionary authority to file a Motion to Reopen (MTR).  (See below MTR section.)

LAW ENFORCEMENT SENSITIVE – FOR OFFICIAL USE ONLY
www.ice.gov

SUBJECT:  Immigration Bond Policies and Procedures
Page 20

i) <u>Creating the Record of Proceeding</u> - Keep these records in reverse-chronological order, from the earliest (at the bottom of the file) to the latest (placed on top). Exception: upon receipt of a brief filed in support of the I-290B, insert it immediately below the I-290B, irrespective of filing date.

The Record of Proceeding (administrative record) will contain copies of the following documents:

☐ Form G-28, Notice of Entry of Appearance as Attorney or Representative;

☐ Form I-290B, Notice of Appeal or Motion, plus briefs or attachments;

☐ Form I-323, Notice–Immigration Bond Breached;

☐ Form I-166, Notice to Surrender for Deportation;

☐ Form I-340, Notice to Obligor to Deliver Alien;

☐ U.S. Postal Service Form PS 3811, Return Receipt (proof of delivery of the I-340) and/or the copy of the Delivery Confirmation, PS Form 152, printout of the delivery confirmation from the USPS.com website;

☐ Bond Questionnaire and worksheet (Amwest, G&G and Farwest surety companies);

☐ Power of attorney (surety bond) or

☐ Form I-305, Receipt for U.S. bonds or Notes, or Cash, Acceptance as Security on Immigration Bond (cash bond);

☐ Form I-352, Immigration Bond;

☐ Appellate decision of BIA;

☐ Final order of Immigration judge; and

☐ Form I-862, Notice to Appear, or other charging document.

j) <u>Motion to Reopen or Reconsider (MTR)</u> - If the obligor files a motion to reopen or reconsider an earlier decision of the AAO, place a copy of the appellate decision, the motion, and any attachment at the top of the record of proceeding.

k) <u>Withdrawal</u> - The obligor may submit a written withdrawal of an appeal before a decision is rendered.  Upon receipt of a withdrawal of an appeal, an acknowledgement

**LAW ENFORCEMENT SENSITIVE – FOR OFFICIAL USE ONLY**
**www.ice.gov**

SUBJECT:  Immigration Bond Policies and Procedures
Page 21

of receipt of the appeal must be sent to the appellant.   Note: There is no canceling a withdrawal once it is submitted.

l)  Dismissal - If the AAO dismisses an appeal, update the DRO databases accordingly. Inform the Burlington Finance Center (BFC) by forwarding a copy of the I-323, stamped or marked "Appeal Filed, Dismissed on [date] and Final on [date]."

m)  Sustained - If the AAO upholds an appeal, forward a copy of the decision to the BFC, along with a copy of the I-323, stamped or marked "Appeal Filed, sustained on [date]." Process the bond as required by the ruling; update DRO databases accordingly.

n)  Mitigation - If an obligor who has submitted mitigation request later files an appeal based on the same breach event, the AAO will not consider the appeal. In such a case, forward a copy of the appeal directly to the officer in charge adjudicating the mitigation request and forward the original to the AAO with an attached copy of the mitigation request.

o)  DRO Database Updates – Immediately upon receipt of a properly filed appeal, ensure that CCOM is updated with the comment, "[date], Breached Bond Appeal, form I-290B, received this date and BFC notified of appeal filing. [initials]." CCOM will then be updated to state, "[date] ROP for bond appeal, form I-290B completed and forwarded to AAO this date. [Initials]."

## 16.  Delivery Bond Cancellation

a)  General – An immigration bond is cancelled upon the obligor's compliance with the terms and conditions as set forth in the Immigration Bond, form I-352.

b)  Unenforceable Bond - A cancellation of a bond will occur upon any of the following, provided they occur prior to the date of a breach event. (see Declarations of Breach of Delivery Bonds, memo dated April 6, 2005)

- Deportation, exclusion or removal of the bonded alien
- Valid proof of the bonded aliens timely departure (VD Bond)
- Self-deportation or removal (Delivery Bond)
- A grant of permanent resident status or U.S. Citizenship
- Terminated immigration proceedings
- A final decision on the bonded aliens immigration court proceeding, or any other event that allows the alien to remain permanent in the United States
- ICE taking the bonded alien into custody
- ICE's receipt of notice that the alien has been taken into custody by another federal, state or local law enforcement agency and will be detained for more than 30 days
- Upon posting of an ICE detainer while the alien is in the custody of another agency
- Death of the bonded alien

LAW ENFORCEMENT SENSITIVE – FOR OFFICIAL USE ONLY

www.ice.gov

SUBJECT: Immigration Bond Policies and Procedures
Page 22

- Any other event that renders the alien no longer removable under original charging document or warrant of removal.

c) <u>Upon Posting of Voluntary Departure Bond</u> – Some terms and conditions require that a Delivery Bond be cancelled upon posting of a VD Bond. Please review the general terms and conditions of the Immigration Bond, Form I-352.

d) <u>Voluntary Departure with no bond</u> - If the immigration judge neither requires a bond the Delivery Bond is not cancelled and remains enforceable.

e) <u>Multiple bonds</u> - If an alien granted voluntary departure by an immigration judge appeals the finding of removability, you must maintain both bonds posted on the alien. This situation occurs because the regulations (<u>8 CFR §1240.26(c) (3)</u>) allow no exception to the five-business-day posting for voluntary departure and because ICE is under no legal or logical requirement to cancel the delivery bond after the posting of a voluntary departure bond. Maintain both bonds until the appeal is decided. If the appeal is dismissed, you must cancel the delivery bond; if the BIA grants the alien a benefit cancel both bonds.

f) <u>Compliance with Voluntary Departure (Verification of Departure)</u> – Upon receipt of evidence of compliance with voluntary departure within thirty (30) days the bond will be cancelled.

g) <u>Database Updates</u> - Update DRO databases with cancellation information accordingly.

h) <u>Schrode Rule</u> - The rule established by Shrode v Rowoldt, 213F.2d 810 (8th Cir. 1954) stipulated that ICE would cancel any bond which was not breached prior to the expiration of the six month removal period. This case was predicated on former section 242(c) of the Act, 8 U.S.C §1252(c), which was deleted by section 306 of the IIRAIRA, effected April 1, 1997. This section of law no longer exists.

## 17. <u>Verification of Departure</u>

a) <u>Verification of Departure Defined</u> – Documentation and/or clear and convincing evidence submitted to support the claim of departure from the United States.

b) <u>Verification of Departure Forms</u> - Notice of Action-Voluntary Departure, form I-210, Nonimmigrant Checkout Letter, form G-146, and Notification of Departure of Alien (Bonded), form I-392. Blank versions of these forms may be publicly distributed.

c) <u>Electronic Verification Information Process (eVIP)</u> - A partnership between the Office of Detention and Removal Operations (DRO) and the Department of State's (DOS) Post Liaison Division's Visa Office. The DOS will electronically transmit alien departure verifications forms.

d) <u>Filing and Routing</u> – Upon receipt of a verification of departure form and/or evidence immediately interfile in the A-file.

LAW ENFORCEMENT SENSITIVE – FOR OFFICIAL USE ONLY

www.ice.gov

SUBJECT:   Immigration Bond Policies and Procedures
Page 23

e) <u>Database Verification</u> – The utilization of various DRO databases to verify departure of an alien is authorized (   (b)(7)(E)   ) However, it is the obligor's or alien's responsibility to provide evidence of his/her departure. The printout of the document must be attached to the cancellation or breach decision.

f) <u>Case Closure and Bond Action</u> – Upon receipt of a verification of departure or evidence thereof, determination of case closure is to be made which may include a bond breach or cancellation.

## 18.   <u>Change of Obligor</u>

Changing of an obligor requires the posting of a new bond with an Immigration Bond, form I-352 signed by the new obligor.

Upon posting and receipt of the new obligor's bond, the previous bond shall be cancelled.

## 19.   <u>Bond Motion to Reopen</u>

a) <u>Motion to Reopen (MTR) Defined</u> – Upon determination that there are appropriate grounds to correct a decision that was made in error or upon overlooked or newly discovered facts or law, the decision may be corrected by the use of appropriate electronic letters from the attached notices of motions and decisions.  (Ref:  Reversing Declarations of Breach of Delivery Bond, (06/19/2006))

b) <u>Reversing Cancellations</u> -

- Reversing the cancellation of a bond requires the use of the two letters, one letter for notice of intent to reopen/reconsider and a second letter for the final decision.

- Notices to reconsider/reopen bond cancellations shall be served on the surety and agent/co-obligor by regular mail. Action on the motion to reconsider must be deferred for 33 days to allow for the surety/co-obligor to submit a brief. If the obligor or agent/co-obligor timely submits a brief, the brief shall be given due consideration. If the submission is supported by persuasive evidence, the reconsideration motion should be withdrawn, and the surety and agent co-obligor given written notice of the withdrawal.

- If the obligor or agent/co-obligor waives the submission of a brief or fails to timely submit a brief within the allotted time including any extensions, or if the brief is not persuasive, the reconsideration decision shall be issued and the surety and agent/co-obligor furnished with written notice of the finality of the reconsideration decision.

- Reconsideration of the erroneous cancellation of cash bonds must be completed prior to the refunding of the bond money by the Debt Management Center (DMC).  If upon learning that the agency cancelled the bond in error and upon contacting the DMC it is discovered that the money was returned to the Obligor then a memorandum to file shall reflect the reasons the bond should have been breached and no further action may be taken on that bond.

LAW ENFORCEMENT SENSITIVE – FOR OFFICIAL USE ONLY
www.ice.gov

- If the money has not been refunded the same procedure should be followed as with surety company bonds EXCEPT THAT THE MOTION MUST BE FAXED IMMEDIATELY to the Debt Management Center at (802) 288-1226.

## 20.   Reversing Breaches

- The combined motion/decision shall be served on the surety and agent/co-obligor by regular mail.

- Decisions upon motions to reconsider declaration of breach decisions require the selection of the bond either being reinstated or cancelled as the circumstances demand.

- Decisions upon motions to reconsider declaration of breach decisions require the use of the appropriate MTR letter and, if the decision requires that the bond be cancelled, an I-391 must be issued in addition to the decision form. Otherwise, if the decision requires reinstatement of the bond, only the MTR letter should be used.

## 20.   Aged Bonds

a) *Aged Bond* Defined – Are defined as a Delivery Bond with a posting date of three years or older or an unbreached Voluntary Departure date beyond the 31 days or more beyond breach event or an expired VD bond not timely breached.

All Aged Bonds files are to be routed to the Bond Backlog Action Team (BBAT) unless:

- A hearing date is scheduled within 180 days
- VD Bond with a pending 9th or 2nd CCA Petition for Review (PFR)
- The last action taken on case was within the last thirty (30) days
- No bond actions are required
- VD Bond with a BIA appeal pending
- Classified

b) Reporting Requirements – An *Aged Bond* monthly report will be submitted to the Bond Management Unit (BMU), reflecting status of all *Aged Bond* cases within each Area of Responsibility (AOR) and the status of each case. This report is due by the 15th of every month.   Management of this report should be assigned to your AOR's Bond Control Specialist (BCS) or Deportation Assistant.

## 21.   Missing or Lost A- files

Upon determination that a file is missing or lost the following actions will be taken:

a. Update the Central Index System (CIS) – The field office must update CIS immediately to reflect that the file is "Lost" which will notify other offices of the file's status.

LAW ENFORCEMENT SENSITIVE – FOR OFFICIAL USE ONLY
www.ice.gov

SUBJECT:  Immigration Bond Policies and Procedures
Page 25

b. <u>Request Copies of Bond Documents</u> - Immediately contact the BFC and request copies of all bond documents.

c. <u>Create a Temporary File (T-file)</u> – Create a T-File using all bond documentation.

d. <u>Update the National File Transfer System (NFTS)</u> – Update the T-file location in NFTS.

e. <u>Copies of Other Documents</u> – The field office must attempt to locate any copies of relevant documents, i.e. Enforce, Ident, NCIC, FD-249, OSUP, etc., for inclusion in the T-file.

f. <u>Bond Action</u> – Upon creation of the T-file, take immediate and appropriate bond actions, demand notices, cancellations, breaches, or continue the bond.

g. <u>DACS CCOM Update</u> – enter "[date], A-file missing/lost, T-file created [initials]."

h. <u>T-File Routing</u> – If it is determined that the bond shall be continued, i.e. the alien is placed on an OREC, OSUP, ongoing legal proceedings or a FugOps case, the field office may hold onto the file.  If however, the bond is cancelled or breached and the case is no longer active, the T-file shall be immediately routed to the National Records Center (NRC).

<u>BBAT A-File Requests</u> - Upon request of the A-file by the BBAT and if the file is determined to be lost/missing the following actions must be taken:

a) <u>Update the Central Index System (CIS)</u> – The field office must update CIS immediately to reflect that the file is "Lost" which will notify other offices of the file's status.

b) <u>Notify BBAT</u> – Notify the BBAT requesting official that the file is missing/lost.

22. **Information Management Systems for Bonds**

a) <u>Burlington Financial Center</u> – The BFC is a sub-office of The Office of Financial Management (OFM), located at 166 Sycamore Street, Williston, VT 05495.  The BFC is responsible for tracking the financial aspect of bonds.  The BFC maintains the bond financial receipts and bond financial data. (http://ofm.ins/exec/BFC/BFC2.asp#bonds).

b) <u>Bond Management Information System (BMIS)</u>. The Burlington Financial Center uses BMIS to control the financial aspects of Immigration-bond administration: processing new bonds, cancellations, and breaches; following-up with DRO officers on bond status; accounts receivable; debt collection, etc.

LAW ENFORCEMENT SENSITIVE – FOR OFFICIAL USE ONLY
www.ice.gov

(The Burlington Financial Center refers delinquent debt to Financial Counsel. If Financial Counsel is unsuccessful, the debt may be referred to Department of Justice for litigation or bond settlement or to the U.S. Treasury for further action.)

c) BMIS Access – To obtain access to the BMIS database, complete the Request for "View-Only" Access form (see http://ofm.ins/static/pdf/BMIS_Request.pdf). Simply provide your office location, PICS user ID, signature, and your supervisor's authorizing signature. Once you have access, refer to *Bond Management Information System: Instructions for Field Users with View-Only Access.*

## 23.  Bond Absconder

(a) Bond Absconder Defined – An alien released on bond, in immigration proceedings and is not subject to a final order of removal, deportation or exclusion and whose bond has been breached.

(b) Warrant of Arrest of Alien, Form I-200 – Upon completion of the Notice of Breached Bond, form I-323 an I-200 will be completed for execution by the non-detained officers.

(c) Apprehension Requirement - Immediately upon completion of the bond breach actions the file is to be routed to the local non-detained docket officers for immediate apprehension of the alien. Update the A- file and DRO databases with information regarding the attempt(s) to locate and apprehend the bond absconder.

(d) Chief Counsel Notification – Upon breaching of the bond notify the Chief Counsel's office with jurisdiction over the immigration case. The immigration case may be impacted by the alien's conditions of release violation. Update DRO databases of this notification accordingly.

(e) Custody Determination – Upon arrest of a Bond Absconder the FOD will make a new custody determination taking into account the alien's breached bond(s).

(f) Bond Absconder Report – All field offices will submit a report to the BMU by the 15th of each month. This report will include apprehended Bond Absconders by Name, A-number, Criminal/non-criminal, and nationality.

## 24.  Fugitive Operations (FUGOPS)

a) Fugitive Alien Defined – National Fugitive Operations Program (NFOP) has defined a fugitive alien as, "An alien who has failed to depart the United States pursuant to a final order of removal, deportation or exclusion; or who has failed to report to a Detention and Removal Officer after receiving notice to do so."

LAW ENFORCEMENT SENSITIVE – FOR OFFICIAL USE ONLY
www.ice.gov

b) <u>Fugitive with an Open Bond</u> – An open bond on an alien subject to a final order of removal, deportation or exclusion does not change an alien's fugitive status.

c) <u>Post Order Custody Determination</u> – Upon issuance of a final order of removal/deportation, and although the alien may have posted a bond prior to issuance of that order, he/she must comply with that order or report to the nearest DRO office to have their post order custody determined. If it is determined that the final order alien is eligible for release pursuant to 8 CFR §1241.4, then pursuant to 8 CFR 241.5(a) he/she *shall* be released pursuant to an order of supervision and may also have the additional compliance tool of an Order of Supervision Bond (OSUP Bond) placed upon him/her. (Any previous outstanding bond will be cancelled once the alien has been taken into ICE custody and a new bond must be posted.)

d) <u>Voluntary Departure Fugitive</u> – Failure to post a VD Bond within five days of the order or failure to depart on or before the date of voluntary departure expires, constitutes a violation of the conditions as set forth upon the granting of voluntary departure. Therefore, the violation results in a breach of the bond and the alien being subject to a final order of removal being the date after day the voluntary departure expired and the alien is now a fugitive alien.

e) <u>Apprehension of bonded alien</u> - An alien may be taken into custody at any time subsequent to bond posting if at anytime it has been determined it is to the agency's interest, or that the alien has violated the conditions of his/her release (8 CFR §241.1(l)(1) & (2)).

f) <u>Demands and Pending Federal Litigation</u> - Federal litigation of immigration proceedings generally involves a petition to review the Immigration Judge's administrative decision for legal sufficiency. This petition may also include a request for a stay of removal, or a petition for a stay of removal may be filed separately. Pursuant to policy established by the NFOP, if an alien has received a final order (8 CFR §1241.1), that alien should be taken into custody. If it is determined that the final order alien is eligible for release pursuant to 8 CFR §1241.4, then pursuant to 8 CFR §241.5(a) he/she *shall* be released pursuant to an order of supervision and may also have the additional compliance tool of an Order of Supervision Bond (OSUP Bond) placed upon him/her. (Any previous outstanding bond will be cancelled once the alien has been taken into ICE custody and a new bond must be posted.)

Those aliens with a delivery bond and subject to a final order, with or without a stay of removal or a petition for review by the CCA, shall have a Notice to Obligor to Deliver Alien, Form I-340, served upon the obligor to present the alien. (The Field Office Director shall have the discretion of the service of the demand notice prior to the FUGOPS Team attempting to locate and apprehend the fugitive alien.) Upon appearance or apprehension of the alien, he/she shall be processed in accordance with previous bond memoranda (See BMU website). Post order custody shall be determined in accordance with the citation

SUBJECT:  Immigration Bond Policies and Procedures
Page 28

above (except those aliens reporting on a current and valid OSUP or as otherwise advised by Chief Counsel).

## 25.   Alternatives to Detention (ATD)

Questions regarding bonds and ATD must be directed to the HQ ATD unit.  (ATD programs are additional compliance tools available to the field.  The bond policies and procedures must be adhered to when used in conjunction with other programs.)

## 26.   Bond Control Specialist duties/responsibilities

a)   General – The mission of a Bond Control Specialist (BCS) is to manage, monitor and overall quality control of bonds in their field offices Area of Responsibility (AOR).  The *AOR will refer to the field office and all offices that are under the jurisdiction of that field office* to which they are assigned.  The BCS will be able to make proper bond determinations such a breach, cancel, or if the bond should continue in place.  To make these determinations the BCS should have a thorough understanding of bond policies and procedures, as well as the laws and regulations that govern them.  They should ensure the completeness and accuracy of all bond actions within their AOR.  The BCS should be the bond subject matter and technical expert.  They are to ensure the timeliness of bond case actions (case call-ups) upon change in alien's status i.e. final order rendered, VD granted, case administratively closed, etc.  (see Position Description, dated March 31, 2005)  The BCS will serve as the liaison to the Headquarters Bond Management Unit (HQBMU), Burlington Finance Center (BFC), and Administrative Appeals Office (AAO).

b)   Case Management – The BCS is responsible for oversight and management of bond cases, which are assigned to their AOR.  These duties can include the review and determination/adjudication on bond cases that present motions; making decisions which involve points of law, regulations, and policy/procedure.  The BCS is responsible to ensure the timeliness of actions of all bond cases within their AOR.  They are to ensure that all adjudications or officer required actions taken when any change in the alien's status, custody conditions, and/or newly gathered information requiring updated bond and custody re-determination.

c)   Liaison Duties – The BCS is the primary contact point on bond issues with the HQBMU, BFC, BBAT and AAO.  (If the office does not have a BCS a Supervisor or manager should make contact with these entities.)  The BCS must ensure that all HQBMU is notified of the office's personnel contact information for those involved in the bond process and the implementation of changes and updates of bond policy/procedures.  It is imperative that the BCS ensure that all HQBMU requests to the field are expeditiously and accurately responded too.

SUBJECT:  Immigration Bond Policies and Procedures
Page 29

    d) <u>Appeals coordinator</u> – The BCS will review for quality control all bond appeals and ROP's, as well as ensure that rebuttals/responses to those appeals (see §12.8(c); (k)) are included and served to the AAO.

    e) <u>Administrative Duties</u> – The BCS will review all incoming and outgoing bond cases to ensure that appropriate bond actions have been taken.  This includes FCO transfers, bond adjudication decisions, appeals, appropriate file routing (Fugitive Operations, Non-detained, NRC, etc.), appropriate service of notices of actions, etc.  The BCS is responsible to ensure all bond logs are complete and accurate.

    f) <u>Report Requirements</u> – The BCS will create monthly reports of all bond actions, activities; to include numbers of breaches, cancellations, continuations, and postings, as well as the dollar amounts involved with each category.  Locally generated error reports should be generated indicating the various types of errors found in the course of his/her bond quality control duties. These reports should help reflect office bond activities, volume and bond activity quality.  The reports are to be forwarded to the Field Office Director or his/her designee and available to HQBMU upon request.

    g) <u>DRO Databases</u> – The BCS is also responsible for the quality control of DACS bond data properly and completely being inputted into the appropriate fields. The BCS is responsible for all outstanding bond cases reflected in DACS in his/her AOR and therefore it is imperative for the BCS to ensure that all bond cases no longer in their AOR are properly transferred out of that FCO and the BFC notified of that change.

(Although this memorandum is not inclusive and does not provide details on each aspect of the posting and management of an immigration bond, it attempts to provide the most current and relevant information available.   The Bond Management Unit (BMU) will continue to provide updates, clarification and guidance. Please direct your questions regarding this guidance via e-mail to Bond Management Unit at HQ DRO BOND@DHS.GOV.)

**U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT**
**Office of the Chief Financial Officer**
**Office of Financial Management**

**Policy Number:** CFO OFM 2014.PD2

## Revenue, Receivables, and Bond Liability Directive

| | |
|---|---|
| **Issue Date:** | March 21, 2014 |
| **Effective Date:** | March 21, 2014 |
| **Superseded:** | This Directive is the originating and establishing policy for U.S. Immigration and Customs Enforcement (ICE), Office of the Chief Financial Officer (OCFO), Office of Financial Management (OFM), regarding recording bonds, revenue, and receivable transactions in the proper accounting periods. This Directive supersedes any previous issuances of guidance, including legacy U.S. Customs Service and U.S. Immigration and Naturalization Service guidance and procedures, that are inconsistent with the policy, guidance, and procedures contained in this Directive. |

1. **Purpose/Background.** The OCFO/Office of Assurance and Compliance has identified a need for internal controls over timely recognition of revenue and receivable transactions. Certain revenue and bond transactions are recorded in the accounting system when invoices are issued or deposits are made, rather than at the time of the underlying financial event as required by the generally accepted accounting principles (GAAP) developed and published by the Federal Accounting Standards Advisory Board (FASAB), and as outlined in the *FASAB Handbook.* This policy will outline the recognition requirements for recording revenue, receivable, and bond liability transactions in ICE's Federal Financial Management System (FFMS), and to identify departures from the prescribed accounting recognition noted in GAAP standards. These departures are related to timing differences and are applicable to the following transactional categories:

   - Bond Deposits (Cash Bond only)
   - Bond Breaches (Cash and Surety Bond)
   - Bond Cancellation (Cash Bond only)
   - Revenue (non-exchange and exchange)
   - Receivables
   - Collections

   To address the timing difference noted between OFM's process of recognizing the financial event and that prescribed by GAAP, OFM developed the Materiality Assessment Analysis. This analysis quantifies the risk of reporting transactions in an improper period and provides a framework for evaluating and appropriately responding to this risk, including consideration of whether to accept or mitigate. Please refer to Bond Liability Business Process Documentation and Revenue and Receivables Business Process Documentation for more information on the Materiality Assessment Analysis.

OFM has identified timing differences between the current FFMS system configuration and the prescribed GAAP standards for recognizing certain types of revenue and receivable transactions.

The table below demonstrates the differences between how financial events are recognized in FFMS and how GAAP defines financial event recognition for these specific transactional categories.

| Transaction Type | FFMS Recognition | GAAP Recognition |
|---|---|---|
| Bond Deposits | Bond Deposits are recorded in FFMS based on the deposit date. | The financial event is the date when the bond amount is accepted by ICE. |
| Bond Cancellation | Bond Cancellations are recorded in FFMS based on the FFMS disbursement date. | The financial event is the date when FinOps-Burlington receives the original I-305 from the Obligor (1-395 if original I-305 is lost). |
| Bond Breaches | For Cash Bonds, the disbursement date is used by FFMS.<br><br>For Surety Bonds, the invoice date generated by FFMS is used. | The financial event is 60 days after the Breach Notice Date on the I-323. |
| Revenue (exchange) | If revenue is linked with a receivable account code, the FFMS invoice date is used. | The financial event is when an entity completes service/good to another entity at a set price. |
| Revenue (non-exchange) | If revenue is linked with a collection account code, the deposit date is used. | The financial event is when an entity has a specific, identifiable, and legally enforceable claim to resources where collection is probable and the amount is reasonable/estimable. |
| Receivables | Receivables are recorded in FFMS based on the invoice date generated by FFMS. | The financial event is when an entity has recognized revenue, but has not received payment yet. |
| Collections | Collections are recorded in FFMS based on the FFMS deposit date. | The financial event is when the entity receives payment from another entity. |

Through detailed research and analysis, OFM determined that the historical impact of such transactions was relatively minimal.

2.    **Policy.** FASAB Handbook of Accounting Standards and Other Pronouncements is the most authoritative source of GAAP for federal reporting entities. Transaction types which fall below the *de minimis* threshold are considered unlikely to produce a material departure from GAAP recognition criteria and do not require further mitigation.

3.    **Definitions.** The following definitions apply for purposes of this directive only:

Revenue, Receivables and Bond Liability Directive

**3.1.** **Collections:** Amounts received by the federal government during the fiscal year.

**3.2.** **De minimis:** A de minimis benefit is one for which, considering its value and the frequency with which it is provided, is so small as to make accounting for it unreasonable or impractical.

**3.3.** **Financial Event:** Financial event is the action that occurs that prompts the accounting recognition for a given financial transaction. The date of the financial event is the date of record for reporting the noted transaction in the financial system.

**3.4.** **I-305 (Receipt of Bond form):** The I-305 is an official receipt provided to the Obligor for the bond amount paid to an ICE office for an Immigration Bond.

**3.5.** **I-395 (Affidavit in Lieu of Lost Receipt form):** The I-395 is filled out by the Obligor to act as the substitute to the I-305 if the original I-305 receipt is lost.

**3.6.** **I-323 (Bond Breach Notice form):** The I-323 is an ICE form that notifies the Obligor of a breach (failure to meet the conditions) of the original bond contract.

**3.7.** **Immigration Bond:** An Immigration Bond is a formal written guarantee by an Obligor (an individual, entity, or Surety company) posted as security for the amount noted on the face of the Immigration Bond. The bond assures ICE that the Alien will fulfill all of the conditions of the Alien's release.

**3.8.** **Materiality:** The magnitude of an omission or misstatement of an item in a financial report that, in light of surrounding circumstances, makes it probable that the judgment of a reasonable person relying on the information would have been changed or influenced by the inclusion or correction of the item.

**3.9.** **Receivables:** The amount ICE claims for payment from other entities that should be established when ICE recognizes revenue but has not yet received payment.

**3.10.** **Recognize:** To determine the amount, timing, classification, and other conditions precedent to the acceptance and entry of a transaction.

**3.11.** **Record:** To give expression to a transaction on (or in) the books of account; to enter.

**3.12.** **Revenue:** An inflow of resources that the Government demands, earns, or receives by donation.

**4.** **Responsibilities.**

**4.1.** All OFM offices are responsible for adhering to this policy.

**4.2** **OFM Financial Controls and Risk Assessment (FCRA) Branch is responsible for:**

   1) Provide training to FinOps-Burlington to perform Materiality Assessment Analysis and any related activities on an as needed basis.

Revenue, Receivables and Bond Liability Directive

2) Providing recommendations and guidance on developing appropriate Quality Assurance activities to FinOps-Burlington to address transaction types that exceed the *de minimis* materiality threshold.

3) Assisting FinOps-Burlington in developing, implementing, and monitoring corrective action activities for financial transaction amounts that exceed the *de minimis* materiality threshold for a given period.

4) Reviewing and confirming that any conclusions made by FinOps-Burlington on specific transaction classes that do not depart materially from GAAP standards based on the results of the Materiality Assessment Analysis are appropriate, properly supported, and documented.

**4.3   OFM Financial Operations-Burlington (FinOps-Burlington)** is responsible for:

1) Recognizing and recording revenue, receivables, and bond liability transactions in FFMS in accordance with this Policy.

2) Gathering population data for specified financial transactions and assessing the results on a quarterly basis.

3) Performing the Materiality Assessment Analysis on an annual basis, including identifying the population of transactions, performing calculations to determine materiality thresholds, and documenting the resulting analysis, including justification and conclusions on transactions determined not to depart materially from GAAP.

4) Determining appropriate Quality Assurance activities to mitigate the risk of financial transactions posted in the improper period for those transaction types that exceed the *de minimis* materiality threshold, evaluating transactional data for materiality impact, and developing recommendations based on the analysis.

5) Collaborating with FCRA on developing recommendations and corrective actions. FinOps-Burlington and FCRA will approve any recommendations prior to implementation.

6) Implementing corrective actions and Quality Assurance activities to mitigate financial risks, as agreed on by FCRA.

**5.    Procedures/Requirements.**

**5.1.   Bond Liability Business Process Documentation**

**5.2.   Revenue and Receivables Business Process Documentation**

**6.     Recordkeeping.** The ICE, OCFO/OFM Executive Director will sign this directive, and it will be retained consistent with the general records schedule for official agency policy.

**7.     Authorities/References.**

Revenue, Receivables and Bond Liability Directive

7.1.   Federal Accounting Standards Advisory Board, Statement of Federal Financial Accounting Standard (SFFAS) 7, *Accounting for Revenue and Other Financing Sources and Concepts for Reconciling Budgetary and Financial Accounting*.

7.2.   DHS CFO Financial Management Policy Manual (FMPM), Chapter 3, Section 3.3, *Revenue, Receivables, and Investments in Federal Securities*.

7.3.   DHS CFO FMPM, Chapter 3, Section 3.9, *Cash Management*.

7.4.   Department of the Treasury's *Treasury Financial Manual*, United States Government Standard General Ledger (USSGL) Supplement.

7.5.   Immigration Reform and Control Act of 1986.

7.6.   Financial Audit Manual (FAM), Section 230, *Determine Planning and Design Materiality and Tolerable Misstatement*.

**8.     Attachments.**

9.     **No Private Right.**  These guidelines and priorities are not intended to, do not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter.

**Mats Persson**
**Executive Director**
**Office of Financial Management**

3/21/14
Date Signed

| Alien Number | I-290B Receipt # | Underlying Benefit Receipt # | AAO Received Date |
|---|---|---|---|
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 8/17/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 8/17/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 8/17/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 8/17/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 8/17/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 8/10/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 8/10/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 8/8/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 8/8/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 8/8/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 8/8/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 8/8/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 8/8/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 8/8/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 8/8/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 8/8/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 8/8/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 8/3/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 8/3/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 8/3/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 8/3/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 8/2/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 8/2/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 7/27/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 7/26/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 7/26/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 7/26/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 7/26/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 7/21/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 7/21/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 7/21/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 7/18/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 7/18/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 7/18/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 7/18/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 7/14/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 7/5/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 6/27/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 6/16/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 6/16/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 6/16/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 6/15/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 6/15/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 6/14/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 6/13/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 6/13/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 6/10/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 6/8/2016 |

| | | | |
|---|---|---|---|
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 5/25/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 5/18/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 5/13/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 5/5/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 5/5/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 5/5/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 5/2/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 5/2/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 5/2/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 5/2/2016 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 4/14/16 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 4/14/16 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 4/14/16 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 4/13/16 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 4/12/16 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 4/8/16 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 4/7/16 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 3/29/16 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 3/25/16 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 3/16/16 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 3/9/16 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 3/7/16 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 3/2/16 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 3/2/16 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 3/2/16 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 3/2/16 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 3/1/16 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 2/17/16 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 2/17/16 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 2/9/16 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 2/5/16 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 2/3/16 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 2/2/16 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 1/20/16 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 1/11/16 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 1/4/16 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 12/18/15 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 12/15/15 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 11/27/15 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 11/10/15 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 11/5/15 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 11/5/15 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 11/2/15 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 10/9/15 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 10/2/15 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 9/18/15 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 9/15/15 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 9/14/15 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 9/10/15 |

| | | | |
|---|---|---|---|
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 8/18/15 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 8/3/15 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 7/23/15 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 7/15/15 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 6/17/15 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 6/8/15 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 5/13/15 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 5/13/15 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 5/5/15 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 5/4/15 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 4/21/15 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 4/16/15 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 4/15/15 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 3/19/15 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 3/10/15 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 2/19/15 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 2/18/15 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 2/13/15 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 2/2/15 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 2/2/15 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 1/16/15 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 1/16/15 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 1/14/15 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 1/13/15 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 1/5/15 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 1/5/15 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 1/5/15 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 12/22/14 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 12/18/14 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 12/15/14 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 12/1/14 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 11/14/14 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 11/3/14 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 10/20/14 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 10/6/14 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 10/1/14 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 9/12/14 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 8/18/14 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 7/11/14 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 7/10/14 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 6/10/14 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 5/19/14 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 5/9/14 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 3/25/14 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 3/4/14 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 1/24/14 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | | 1/15/14 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 12/20/13 |
| (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | (b)(6), (b)(7)(C) | 11/18/13 |

(b)(6), (b)(7)(C)  (b)(6), (b)(7)(C)  (b)(6), (b)(7)(C)  11/1/13